**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
(Northern Division)

| | | |
|---|---|---|
| TIMOTHY R. ELDER | * | |
| 239 Amber Way | | |
| Livermore, California 94550, | * | |
| | | |
| ANNE P. BLACKFIELD | * | |
| 312 S. High St., Apt. 1 | | |
| Baltimore, Maryland 21202, | * | |
| | | |
| MICHAEL B. WITWER | * | |
| 2651 Conquest Place | | |
| Herndon, Virginia 20171, | * | |
| | | |
| Plaintiffs, | * | |
| | | |
| v. | * | Civil Action No.: _____ |
| | | |
| NATIONAL CONFERENCE OF | * | |
| BAR EXAMINERS, INC. | | |
| 302 South Bedford Street | * | |
| Madison, Wisconsin 53703-3622 | | |
| | * | |
| Defendant. | | |
| | * | |

\* \* \* \* ooo0ooo \* \* \* \*

## COMPLAINT

Plaintiffs Timothy R. Elder, Anne P. Blackfield, and Michael B. Witwer, by and through

their attorneys, bring this action against the National Conference of Bar Examiners ("NCBE"),

which develops, offers and disseminates the Multistate Bar Examination under contract with The

Maryland State Board of Law Examiners ("Maryland Board"). Plaintiffs bring this action for

violation of the Americans with Disabilities Act of 1990 ("ADA")), 42 U.S.C.

§ 12101, *et seq.*

## INTRODUCTION

1.     The Maryland Board offers the General Bar Examination twice each year, in July and February.  Recent law school graduates and attorneys licensed elsewhere than Maryland who do not possess the qualifications to take the Out-of-State Attorneys' Bar examination must take and pass the General Bar Examination to qualify to practice law in the State of Maryland.  The General Bar Examination consists of (1) ten essay questions prepared by the Maryland Board, (2) the Multistate Performance Test ("MPT"), and (3) the Multistate Bar Examination ("MBE"), a 200-item, six-hour multiple choice test.  The MBE and MPT are developed, owned and disseminated by NCBE.

2.     Each Plaintiff is a legally blind law school graduate who is registered to take the General Bar Examination in July 2010.  To accommodate their sensory disabilities, each timely asked the Maryland Board to take all parts of the General Bar Examination, including the MBE, on a computer equipped with screen access software.  Screen access software, also called "screen readers," are programs that magnify and/or vocalize text and that offer a variety of keystrokes that allow easy navigation within a text and that allow the speed, volume and timbre of vocalization to be controlled by the user for maximum comprehension and retentive effect.  For blind individuals who did not master Braille from an early age, screen access software is the principal method for gaining access to textual information.  Indeed, the Plaintiffs use this assistive technology as their primary reading method and this auxiliary aid is what they used to complete reading assignments during law school and for their law school examinations.

3.     The Maryland Board granted Plaintiffs' request and will supply Plaintiffs with computers equipped with screen access software to use in taking the Maryland Essay examination and the MPT portions of the July 2010 Bar Examination.  The Maryland Board also

agreed to grant the accommodations with respect to the MBE if NCBE allowed it to do so.

NCBE, however, refuses to allow the requested accommodations with respect to the MBE.

4.      The denial of Plaintiffs' needed accommodations threatens them with irreparable

harm to their respective careers, professional development, and to their right to take the bar

examination without being subjected to unlawful discrimination and the stigma and humiliation

that result from such discrimination.  Without injunctive relief from the Court, Plaintiffs could

only take the examination at a competitive disadvantage to their peers that would unlawfully

burden their attempts to obtain their licenses to practice law.  Plaintiffs have no adequate remedy

at law.

5.      Plaintiffs seek declaratory and injunctive relief to compel NCBE to permit the

Plaintiffs to use appropriate auxiliary aids; to wit, the use of computers equipped with screen

access software to take the MBE.

## JURISDICTION

6.      This is an action for declaratory and injunctive relief brought pursuant to the

Americans with Disabilities Act Title III, 42 U.S.C. §§ 12101, *et seq*.  This Court has subject

matter jurisdiction over this action pursuant to 28 U.S.C. § 1331.

7.      This Court has jurisdiction to issue injunctive relief and a declaratory judgment

pursuant to 28 U.S.C. §§ 2201 and 2202.

## VENUE

8.      Pursuant to 28 U.S.C. §§ 1391(b)(2)  and 1391(c), venue is proper in the District

in which this Complaint is filed because Defendant's discriminatory conduct is taking place

within the District of Maryland and because the events and omissions giving rise to this claim

have occurred and are occurring within the District of Maryland.

## PARTIES

9.      Plaintiff Timothy R. Elder is a 2010 graduate of the University of California, Hastings College of Law and a resident of Palo Alto, California.  He has just completed a full-time internship as a law clerk for the United States District Court, Northern District of California.  In September 2010, Mr. Elder will move to Baltimore, Maryland where he will begin a one-year disability rights law fellowship position with the law firm of Brown, Goldstein & Levy, LLP.  Mr. Elder seeks to take Maryland's General Bar Examination in July 2010.  Mr. Elder is legally blind as a result of Retinitis Pigmentosa or Leber's Congenital Amaurosis.  This condition is degenerative and causes significant decrease in visual acuity. Mr. Elder's medical condition substantially limits his major life activities of seeing, reading, and processing information.  He faces irreparable harm because of Defendant's refusal to administer the MBE in a manner that will ensure that the results accurately reflect his aptitude and achievement level rather than his disability.

10.     Plaintiff Anne P. Blackfield is a 2010 graduate of the University of Maryland School of Law and a resident of Baltimore, Maryland.  She seeks to take Maryland's General Bar Examination in July 2010.  Ms. Blackfield is legally blind as a result of Retinitis Pigmentosa complicated by vasoproliferative tumors and cystoid macular edema.  This condition is degenerative and causes significant decrease and fluctuations in her visual acuity, sensitivity to light, and eye fatigue.  Ms. Blackfield's medical condition substantially limits her major life activities of seeing, reading, and processing information.  She faces irreparable harm because of Defendant's refusal to administer the MBE in a manner that will ensure that the results accurately reflect her aptitude and achievement level rather than her disability.

11.     Plaintiff Michael B. Witwer is a 2010 graduate of the Catholic University of America Columbus School of Law and a resident of Herndon, Virginia.  Mr. Witwer is currently employed as a corporate tax manager at Gannett Company, Inc. and plans to seek employment as a tax attorney once he is licensed to practice law.  Mr. Witwer seeks to take the July 2010 Maryland's General Bar Examination.  Mr. Witwer is legally blind as a result of severe bilateral optic neuropathy, which causes significant vision loss.  His medical condition substantially limits his major life activities of seeing, reading, and processing information.  He faces irreparable harm because of Defendant's refusal to administer the MBE in a manner that will ensure that the results accurately reflect his aptitude and achievement level rather than his disability.

12.     Defendant NCBE is a large corporation that develops and controls various tests relating to the licensing of law school graduates seeking admission to the bar.  Its mission includes assisting bar admission authorities by providing standardized examinations for the testing of applicants for admission to the practice of law.  It is headquartered in Madison, Wisconsin, but controls the administration of the MBE and MPT in most states, including Maryland.  The NCBE disseminates the MBE and MPT to jurisdictions that use the examinations as a component of their bar examinations and determines the formats (print, Braille, electronic form, etc.) in which they are offered.  While NCBE currently permits such entities to administer the MPT in electronic format to students with disabilities, it will not provide an electronic format for the MBE, thus placing a constraint on the types of accommodations that entities such as the Maryland Board can offer to test takers with disabilities who must take the MBE as part of that jurisdiction's bar examination.

## FACTUAL ALLEGATIONS

### Timothy Elder

13.     Plaintiff Timothy Elder was diagnosed with Retinitis Pigmentosa or Leber's Congenital Amaurosis in 1984, when he was four years old.  His vision has gradually and progressively deteriorated since then.

14.     In approximately 2002 or 2003, Mr. Elder's vision deteriorated so that he could no longer effectively rely on large print or magnification to read text.  Subsequently, Mr. Elder learned and became proficient in using JAWS software to read.

15.     Since 2004, Mr. Elder has used JAWS to perform nearly all academic and complex reading tasks.  Mr. Elder began law school at the University of California Hastings College of Law in 2006.  Throughout law school, he relied upon a computer equipped with the JAWS program to perform all law school examinations and nearly all of his reading tasks.  Mr. Elder also used JAWS to conduct nearly all reading tasks while working as a summer associate and law clerk throughout law school.  He most recently used JAWS daily to perform all reading tasks as a full-time legal extern for Judge Marilyn Hall Patel of the United States District Court for the Northern District of California.

16.     JAWS software enables Mr. Elder to read fluently, independently and with automaticity, much as a sighted person reads print.  JAWS, a screen reading program, reads aloud the text of a document while providing audio cues that indicate spatial and navigation elements of the document. The JAWS software enables Mr. Elder to read and navigate independently through a text document, automatically and with ease, much like a sighted person reads.

17.     Mr. Elder has recently begun to learn Braille, but does not yet have the Braille reading skills to take an exam or read complex legal or academic text.  Mr. Elder does not possess enough residual vision to read for extended periods of time using large print or magnification.  Mr. Elder has only limited and occasional experience using a human reader.  He has never used an audio-CD to take an examination.  In addition, using a human reader or audio-CD to read complex text would significantly decrease Mr. Elder's ability to read and comprehend the material because he is unfamiliar with using those methods to read and they do not provide him with the automaticity, independent ability to navigate a document, controlled reading speed, and reading fluency that he relies upon when using JAWS software.

18.     On or about April 28, 2010, Mr. Elder submitted a request for accommodations for the July 2010 administration of the Maryland Bar Examination to the Maryland Board. Among other accommodations, Mr. Elder requested the use of a computer equipped with JAWS screen access software to take all portions of the examination.  Mr. Elder submitted all required documentation supporting his need for these accommodations.

19.     On or about May 6, 2010, the Maryland Board approved Mr. Elder's request for accommodations with respect to the essay and MPT portions of the examination, including the use of JAWS on a computer.  The MPT, which is owned and disseminated by NCBE, is available in electronic format.  Regarding the MBE, the Maryland Board stated the following: "[t]he MBE is not available to the Maryland State Board of Law Examiners in an electronic format from the National Conference of Bar Examiners.  It is available in Braille, larger print (18pt. and 24pt.) and on audio CD."  Letter to Timothy Elder from Barbara Gavin, May 6, 2010.

20.     On or about May 10, 2010, counsel for the Maryland Board indicated the board would permit Mr. Elder to take the MBE on a computer equipped with JAWS if NCBE would

enable it to do so.  With respect to all other portions of the General Bar, the Maryland Board subsequently informed Mr. Elder that it would provide him with a computer equipped with the screen access software he requires and a proctor trained in administering this accommodation for all portions of the examination.

21.     On or about April 28, 2010, counsel for Mr. Elder contacted counsel for NCBE and requested that NCBE permit Mr. Elder to take the MBE in electronic format on a computer equipped with JAWS.

22.     On or about May 18, 2010, counsel for NCBE denied Mr. Elder's request.

23.     Mr. Elder is and will continue to be significantly harmed by NCBE's denial.

### Anne Blackfield

24.     Plaintiff Anne Blackfield was diagnosed in 2004 with a form of Retinitis Pigmentosa complicated by vasoproliferative tumors and cystoid macular edema.  This condition causes significant and progressive decrease in her visual acuity, along with fluctuations in her visual acuity, light sensitivity, and eye fatigue.

25.     Since her initial diagnosis in 2004, Ms. Blackfield's vision loss has accelerated significantly.  When Ms. Blackfield started at the University of Maryland School of Law in 2007, she was able with difficulty to read large print or use a magnifier to enlarge standard print but was using a screen access software called ZoomText to read electronic text.  Around the same time, however, Ms. Blackfield's vision loss deteriorated so that she could no longer rely on large or magnified print to read a significant amount of text.

26.     In 2008, following her first year of law school, Ms. Blackfield's assistive technology specialist advised her to transition to also use JAWS, for complex and academic reading tasks.  Since then, Ms. Blackfield has relied on ZoomText or JAWS software to

complete nearly all legal and academic reading tasks and to take all of her law school examinations.  While in law school, Ms. Blackfield also relied upon JAWS or ZoomText software to perform her reading tasks as a law clerk for a solo practitioner and a research assistant for a professor.

27.     ZoomText, like JAWS, is assistive software that works on a computer. ZoomText, a magnification program, reads the text aloud while it simultaneously enlarges the text on the screen so that Ms. Blackfield can use her remaining vision to take in spatial and visual information.  Ms. Blackfield uses ZoomText for tasks that require both reading and writing and editing.  JAWS, a screen reading program, reads aloud the text of a document while providing audio cues that indicate spatial and navigation elements of the document. The JAWS software enables Ms. Blackfield to read and navigate independently through a text document, automatically and with ease, much like a sighted person reads.  Ms. Blackfield uses JAWS for material which requires reading, but not writing.  JAWS, a screen reading program, reads aloud the text of a document while providing audio cues that indicate spatial and navigation elements of the document.  JAWS and ZoomText enable Ms. Blackfield to read and navigate independently through text documents, automatically and with ease, much like a sighted person reads.

28.     Ms. Blackfield cannot read Braille.  She cannot read large print or use a magnifier for extended periods of time without suffering severe eye fatigue.  Ms. Blackfield has no experience using a human reader or audio-CD to read complex text or take examinations.  In addition, using a human reader or audio-CD to read complex text would significantly decrease Ms. Blackfield's ability to read and comprehend the material because she is unfamiliar with using those methods to read and they do not provide her with the automaticity, independent

ability to navigate a document, controlled reading speed, and reading fluency that she relies upon when she reads using JAWS or ZoomText screen access software.

29.     On or about April 28, 2010, Ms. Blackfield submitted a request for accommodations for the July 2010 administration of the Maryland Bar Examination to the Maryland Board.  Among other accommodations, Ms. Blackfield requested the use of a computer equipped with ZoomText screen magnification software to take the essay portions of the examination, including the MPT, and the use of a computer equipped with JAWS screen access software to take the MBE portion of the examination.  Ms. Blackfield submitted all required documentation supporting her need for these accommodations.

30.     On or about May 6, 2010, the Maryland Board approved Ms. Blackfield's request for accommodations with respect to the essay and MPT portions of the examination, including the use of ZoomText software on a computer.  The MPT, which is owned and disseminated by NCBE, is available in electronic format.  Regarding the MBE, the Maryland Board of Law Examiners provided the following: "[t]he MBE is not available to the Maryland State Board of Law Examiners in an electronic format from the National Conference of Bar Examiners.  It is available in Braille, larger print (18pt. and 24pt.) and on audio CD."  Letter to Anne Blackfield from Barbara Gavin, May 6, 2010.

31.     On or about May 10, 2010, counsel for the Maryland Board indicated it would permit Ms. Blackfield to take the MBE on a computer equipped with JAWS software if NCBE would enable it to do so.  With respect to all other portions of the General Bar, the Maryland Board subsequently informed Ms. Blackfield that it would provide her with a computer equipped with the screen access software she requires and a proctor trained in administering this accommodation for all portions of the examination.

32.     On or about April 28, 2010, counsel for Ms. Blackfield contacted counsel for NCBE and requested that NCBE permit Ms. Blackfield to take the MBE in electronic format on a computer equipped with JAWS.

33.     On or about May 18, 2010, counsel for NCBE denied Ms. Blackfield's request.

34.     Ms. Blackfield is and will continue to be significantly harmed by NCBE's denial.

**Michael Witwer**

35.     Plaintiff Michael Witwer has severe bilateral optic neuropathy.  Though he first began to experience vision problems in the mid-1980s, as a teenager, his vision did not begin to deteriorate significantly until 1993.  His medical condition is progressive and causes a significant decrease in his visual fields and acuity.

36.     Until approximately 2006, Mr. Witwer used ZoomText to read, but also with difficulty, he could read large print.  Subsequently his vision significantly deteriorated and he can now no longer read large print.  Mr. Witwer now uses ZoomText almost exclusively to read. ZoomText magnifies the text and images so that Mr. Witwer can use his residual vision to navigate through a document and to process visual information.  Mr. Witwer also relies upon ZoomText's text-to-speech function, which reads aloud the content in a manner that is synchronized with the visual feedback Mr. Witwer receives.  ZoomText also enables Mr. Witwer to reverse polarity to minimize problems with glare, and to navigate throughout a document much like a sighted person reads.

37.     Mr. Witwer, who began law school in 2007, has relied on a computer equipped with ZoomText to perform all of his law school reading assignments and to take all of his law school examinations.  Mr. Witwer also worked full-time during law school as a corporate tax

manager and relied on ZoomText to perform work-related reading tasks.

38.     ZoomText enables Mr. Witwer to read independently, automatically and with ease.  Mr. Witwer does not know how to read Braille and cannot read for extended periods of time using large print or a magnifier.  Mr. Witwer has only used a reader once on an examination.  That experience was disastrous.  He has never used an audio-CD to take an examination.  Using a human reader or audio-CD to read complex text would significantly decrease Mr. Witwer's ability to read and comprehend the material because he is unfamiliar with using those methods to read and they do not provide him with the automaticity, independent ability to navigate a document, controlled reading speed, synchronized visual input, and reading fluency that he relies upon when using the ZoomText program.

39.     On or about April 28, 2010, Mr. Witwer submitted a request for accommodations for the July 2010 administration of the Maryland Bar Examination to the Maryland Board.  Among other accommodations, Mr. Witwer requested the use of a computer equipped with ZoomText screen magnification software to take all portions of the examination.  Mr. Witwer submitted all required documentation supporting his need for these accommodations.

40.     On or about May 6, 2010, the Maryland Board approved Mr. Witwer's request for accommodations with respect to the essay and MPT portions of the examination, including the use of ZoomText on a computer.  The MPT, which is owned and disseminated by NCBE, is available in electronic format.  Regarding the MBE, the Maryland Board stated the following: "[t]he MBE is not available to the Maryland State Board of Law Examiners in an electronic format from the National Conference of Bar Examiners.  It is available in Braille, larger print (18pt. and 24pt.) and on audio CD."  Letter to Michael Witwer from Barbara Gavin, May 6, 2010.

41.     On or about April 28, 2010, counsel for the Maryland Board stated that it would permit Mr. Witwer to take the MBE on a computer equipped with ZoomText if NCBE would enable it to do so.  The Maryland Board subsequently informed Mr. Witwer that it would provide him with a computer equipped with the screen access software he requires and a proctor trained in administering this accommodation for all other portions of the examination.

42.     On or about May 10, 2010, counsel for Mr. Witwer contacted counsel for NCBE and requested that NCBE permit Mr. Witwer to take the MBE in electronic format on a computer equipped with ZoomText.

43.     On or about May 18, 2010, counsel for NCBE denied Mr. Witwer's request.

44.     Mr. Witwer is and will continue to be significantly harmed by NCBE's denial.

## FIRST CAUSE OF ACTION

### VIOLATION OF TITLE III OF THE ADA

45.     Plaintiffs re-allege and incorporate herein all previously alleged paragraphs of the complaint.

46.     Title III of the ADA prohibits discrimination by private entities, including those that offer professional licensing examinations, such as NCBE.

47.     The term "disability" includes, with respect to an individual, a physical or mental impairment that substantially limits one or more of the major life activities of such individual. 42 U.S.C. §12102(2)(A).  Plaintiffs Anne Blackfield, Timothy Elder, and Michael Witwer are qualified individuals with disabilities within the meaning of 42 U.S.C. § 12102(2) and 28 C.F.R. §36.104.

48.     The ADA requires private entities that administer standardized examinations "related to . . . applications, licensing, certification, or credentialing for . . . postsecondary

education [or] professional . . . purposes" to do so in a "place and manner accessible to persons with disabilities or offer alternative accessible arrangements for such individuals."  42 U.S.C. § 12189.

49.     The regulations that implement this section of the ADA provide that a private entity that offers such examinations must "assure that . . . [t]he examination is selected and administered so as to best ensure that, when the examination is administered to an individual with a disability that impairs sensory, manual, or speaking skills, the examination results accurately reflect the individual's aptitude or achievement level or whatever other factor the examination purports to measure, rather than reflecting the individual's impaired sensory, manual, or speaking skills . . . ." 28 C.F.R. § 36.309(b)(1)(i).

50.     The modifications required under the ADA to examinations such as the MBE include "changes in the length of time permitted for completion of the examination and adaptation of the manner in which the examination is given."  28 C.F.R. 309(b)(2)-(3).  In addition, the entity offering the examination must "provide appropriate auxiliary aids" unless the entity "can demonstrate offering a particular auxiliary aid would fundamentally alter the measurement of the skills or knowledge the examination is intended to test or would result in an undue burden."  28 C.F.R. § 36.309(b)(3).

51.     Plaintiffs require the accommodations they have requested on the Maryland Bar Examination, including the MBE, as an alternative accessible arrangement.  Without these accommodations, the results will not accurately reflect what the examination purports to measure, but will instead reflect Plaintiffs' impaired sensory skills.

52.     Defendant's conduct constitutes an ongoing and continuous violation of Title III of the ADA and its supporting regulations.  Unless restrained from doing so, Defendant will

continue to violate the ADA.  Unless enjoined, Defendant's conduct will continue to inflict injuries for which Plaintiffs have no adequate remedy at law.

53.     Unless the requested relief is granted, Plaintiffs will suffer irreparable harm in that they will be discriminated against and denied equal access to the Maryland Bar Examination, and be unlawfully burdened in seeking admission to the legal profession.

54.     The ADA authorizes injunctive relief as appropriate to remedy acts of discrimination against persons with disabilities.  42 U.S.C. § 12188(a)(1).

55.     Plaintiffs are entitled to injunctive relief, as well as reasonable attorney's fees and costs.

## SECOND CAUSE OF ACTION

## DECLARATORY RELIEF

56.     Plaintiffs re-allege and incorporate herein all previously alleged paragraphs of the complaint.  Plaintiffs contend that Plaintiffs are entitled to accommodations on the MBE that include the ability to use a computer equipped with screen access software in order to demonstrate what the examination purports to measure and to obtain full and equal access to the MBE.  Plaintiffs further contend that Defendant is administering the MBE in a manner that discriminates against Plaintiffs as persons with disabilities by denying these accommodations.

57.     Defendant disagrees with Plaintiffs' contention.

58.     A judicial declaration is necessary and appropriate at this time in order that each of the parties may know their respective rights and duties and act accordingly.

**WHEREFORE,** Plaintiffs request relief as set forth below.

## RELIEF REQUESTED

Plaintiffs pray for judgment as follows:

1.     A declaration that Plaintiffs are entitled to accommodations on the MBE that include the ability to use a computer equipped with screen access software and that Defendant administers the MBE in a manner that discriminates against Plaintiffs as persons with disabilities by denying these accommodations.

2.     Preliminary and final injunctive relief requiring Defendant to provide Plaintiffs with the accommodations they have requested and to which they are entitled.

3.     An award of Plaintiffs' reasonable attorneys' fees and costs; and

4.     Such other and further relief as the Court deems just and proper.

Dated: June 2, 2010

Respectfully submitted,


_____/s/_____
Daniel F. Goldstein (Fed. Bar No. 01036)
Mehgan Sidhu (Fed. Bar No. 28173)
BROWN, GOLDSTEIN & LEVY, LLP
120 E. Baltimore Street
Suite 1700
Baltimore, MD 21202
Telephone :     (410) 962-1030
Facsimile :     (410) 385-0869
dfg@browngold.com
ms@browngold.com

Laurence W. Paradis
(*to seek admission pro hac vice*)
Anna Levine *(to seek admission pro hac vice)*
Karla Gilbride *(to seek admission pro hac vice)*
DISABILITY RIGHTS ADVOCATES
2001 Center Street, Third Floor
Berkeley, CA  94704
Telephone:     (510) 665-8644
Facsimile:     (510) 665-8511
TTY:          (510) 665-8716
lparadis@dralegal.org
alevine@dralegal.org
kgilbride@dralegal.org

Scott C. LaBarre
*(to seek admission pro hac vice)*
LABARRE LAW OFFICES, P.C.
1660 S. Albion Street, Ste 918
Denver, CO  80222
Telephone:     (303) 504-5979
Fax:               (303) 757-3640
slabarre@labarrelaw.com

*Attorneys for Plaintiffs*