1                     UNITED STATES DISTRICT COURT
                       FOR THE DISTRICT OF MARYLAND
2                           NORTHERN DIVISION

3     _____

4     TIMOTHY R. ELDER, *et al.*,

5                          Plaintiffs,

6          v.                              Case No. JFM 10-CV-1418

7     NATIONAL CONFERENCE OF BAR
      EXAMINERS,
8
                             Defendant.
9     _____

10

11              MOTION FOR PRELIMINARY INJUNCTION and MOTION TO

12    DISMISS in the above matter, held on Thursday, July 13, 2010,

13    commencing at 2:17 p.m., before the HONORABLE J. FREDERICK MOTZ,

14    in the United States Courthouse, 101 West Lombard Street,

15    Baltimore, Maryland 21201.

16

17    APPEARANCES:

18                    DANIEL FRANK GOLDSTEIN, Esq.,
                      MEHGAN SIDHU, Esq.,
19                    SCOTT CHARLES LaBARRE, Esq.,
                          Appearing on behalf of the Plaintiffs;
20
                      ROBERT A. BURGOYNE, Esq.,
21                        Appearing on behalf of the Defendant;

22                    MAZEN M. BASRAWI, Esq.,
                          Appearing on behalf of the U.S. Assistant
23                            Attorney General, Civil Rights Division.

24
      Reported by:
25    Julie A. Wycoff, RPR
      Official U.S. Court Reporter

1          (Proceedings commenced at 2:17 p.m.)

2          DEPUTY CLERK:  This Court resumes in session.  The

3   Honorable J. Frederick Motz presiding.

4          THE COURT:  Motion for Preliminary Injunction in the

5   case of Elder versus National Conference of Bar Examiners, JFM

6   10-1418.

7          You all may be seated.

8          Counsel, identify yourselves for the record.

9          MR. GOLDSTEIN:  Good morning, Your Honor.  Daniel

10  Goldstein of Brown Goldstein Levy on behalf of the plaintiffs.

11          With me today is Meghan Sidhu, also of Brown Goldstein

12  Levy; Scott LaBarre of the LaBarre Law Firm, he is admitted pro

13  hac vice; next to him is Michael Witwer, one of plaintiffs; and

14  next to him, Tim Elder, another one of the plaintiffs.

15          Anne Blackfield, who is another plaintiff had

16  emergency eye surgery and could not make it today and so is not

17  in the courtroom.

18          And Scott Curtis who's the assistant attorney general

19  for the Maryland Bar of Law Examiners asked me to tell you he's

20  in the courtroom if the Court had any questions for him, and

21  he's at the back.

22          THE COURT:  All right.

23          MR. BURGOYNE:  Good afternoon, Your Honor.  Robert

24  Burgoyne of Fulbright and Jaworski, appearing on behalf of the

25  National Conference of Bar Examiners.

1              MR. BASRAWI:  Good afternoon, Your Honor.  Mazen

2     Basrawi, counsel for the Assistant Attorney General for the

3     Civil Rights Division, on behalf of the United States.

4              THE COURT:  Thank you.

5              All right.  We have obviously two motions, but it

6     seems to me, the motion to dismiss can get -- for the issues can

7     be discussed in the context of the motion for preliminary

8     injunction.  So why don't I have the plaintiffs go first.  Tell

9     me why I should grant a preliminary injunction.

10             MR. GOLDSTEIN:  Thank you, Your Honor.

11             THE COURT:  Belinda, you're free to --

12             Does anybody have any exhibits or anything?  This is

13    all legal argument, isn't it?

14             MR. GOLDSTEIN:  Well, we had mentioned, Your Honor,

15    that we ask want to demonstrate for the Court --

16             THE COURT:  I don't think I need to see that.  Then

17    I'd have to hear a reader and all kinds of things, so I don't

18    think I need that.

19             Belinda, you're free to stay, you're free to go.

20             MR. GOLDSTEIN:  May I make a proffer with respect to

21    what this demonstration --

22             THE COURT:  Of course.

23             MR. GOLDSTEIN:   -- would involve?

24             Your Honor, what the demonstration of JAWS, which is

25    the screen-access software that Mr. Elder uses, would reflect is

1    that he can, as he goes through a question, navigate within the

2    question.  He can set a default speed beforehand that's

3    considerably faster than most human speakers can speak

4    intelligibly.  He can set it so that, for example, if something

5    is in quotation marks, it is read in a different voice to signal

6    to him that that language is in quotation marks.

7          He can choose to have exclamation points actually

8    verbalized so that if something is an a excited utterance, he's

9    going to know it because he has preset the JAWS software to give

10   him that punctuation mark.  He could choose also, for example,

11   as a contextual matter, to have it vocalize open and close

12   parentheses.  But given that each of the answers are in

13   parentheses, he might choose to change that setting as he goes

14   forward.

15         He can have it set so that it will pause where there

16   are commas and pause where there are paragraphs.  And, of

17   course, he can instantly choose to navigate not only word by

18   word, but letter by letter if, for example, there were a Latin

19   phrase or something whose pronunciation was not familiar to him,

20   to enable him to know immediately what he was hearing.  And so

21   it's quite an agile software.

22         With respect to Mr. Witwer, he's a ZoomText user.

23   What you would have seen with ZoomText is that the cursor is a

24   large yellow cursor, perhaps an inch and a half in size.

25         THE COURT:  Excuse me, this is probably -- do you want

1   to sit in the back?  You can come around.

2          MR. GOLDSTEIN:  Perhaps an inch and a half in size,

3   and there is a bright red horizontal line and a bright red

4   vertical line.  And as the text is vocalized, that moves.  So it

5   allows someone with residual vision who, like Mr. Witwer, is not

6   actually reading visually, but needs it to orient and navigate

7   to be able to see where the location of cursor is at all times.

8          It is also has the same -- not the same, but

9   similar -- text-to-speech software to that in JAWS so that he is

10  principally taking in the information in a oral fashion but it's

11  supplemented by the fact that he can orient himself.  It makes

12  it easier to go to Question 2 or to toggle back and forth

13  between Choices B and C, and so on, because as his affidavit

14  establishes, he is a visual learner.

15         The other thing I think you would have seen with this

16  demonstration but may be familiar to you if you've used Word, is

17  that the saving of a file that's contained on a thumb drive or a

18  CD cannot be inadvertently done.  And anybody who was proctoring

19  the exam or watching the screen would see the same thing you and

20  I see when we try to save a file, which is that we're asked if

21  we -- we have to do -- first take the step of asking to save a

22  file, and then we're given a choice about where to locate it,

23  and then we have to select that.  It's a four- or five-level

24  step.

25         So this is what we believe you would have seen had we

1   made that demonstration.

2          THE COURT:  Very effective proffer, thank you.

3          MR. GOLDSTEIN:  Turning to the -- this case, what it

4   is about, as you know, from our perspective is ensuring that the

5   plaintiffs are afforded an equal opportunity to compete in

6   securing the requirements to pursue their chosen profession, a

7   rights that's guaranteed by federal law.  Not being able to see

8   is a nuisance, Your Honor; not being able to compete on a equal

9   basis is a handicapped, and that's the handicap we seek to

10  overcome.

11         In its motion to dismiss or for summary judgment, NCBE

12  asserts that this Court has no jurisdiction to rule on the

13  assertion of a deprivation of a federally guaranteed civil

14  right, even where -- as here -- there is no adverse state ruling

15  of the kind that could raise a jurisdictional barrier.

16         It also asserts that it doesn't offer this exam,

17  though it develops it, disseminates it, controls the format, and

18  controls the circumstances under which the examination is

19  offered.  It makes that argument, I submit, by reading language

20  into the statute; that is to say, language that it must offer it

21  directly to an examinee, that is simply not there and would make

22  the statute at odds with the congressional intent to fill the

23  gap after Title II and 504 already applied to licensing exams

24  given by the State and by other governmental entities.

25         It also asserts that just as a book store need not

1  alter its inventory to provide Braille books, so, too, it need

2  not alter it's pencil-and-paper test to provide an accessible

3  version, be that Braille or electronic.  Despite the fact that

4  there's a specific regulatory command that requires it to do

5  just that, a command that does not apply to or find any parallel

6  for book stores or other places of public accommodation.

7          In doing so, it makes repeated references to Title III

8  cases that have no application to testing agencies, and we've

9  cited to Your Honor *Doe* and *Breimhorst* that make it very clear

10 that when plaintiffs want to use other parts of Title III for

11 other testing entities, they may not, and the same is true for

12 the defense.  And for good reason.

13         If I can just give an example, *Dobard* is cited by

14 defense counsel, the *BART* case, where the Court said, you know,

15 if you pick an effective accommodation, the fact that it may not

16 work for this particular plaintiff doesn't alter the fact that

17 *BART* has made -- met its obligations under Title II.

18         Well, under that way of thinking, what the NCBE could

19 do is offer only a Braille test, and the fact that only

20 10 percent of the blind population today reads Braille would

21 just be too bad for that other 90 percent.

22         In fact, what the law commands -- and I say this

23 regardless of whether you look at the regulation as we believe

24 you should or a reasonable accommodation as the NCBE asserts,

25 what the law commands is an equal opportunity to compete.

1          And what the record here shows, very powerfully, I

2     submit, is the following:  You know from the affidavits of

3     Mr. Witwer, Mr. Elder, and Ms. Blackfield that their primary

4     reading method is the use of screen-access software.  It's the

5     way they succeeded academically.  It's the way they've learned

6     their legal materials.  That's the -- that this is their

7     primarily reading method is not in dispute.

8          You have three uncontroverted medical experts --

9     excuse me, three uncontroverted experts.  Dr. Malkin from the

10    Wilmer clinic, who's explained not only why screen-access

11    software allows Mr. Witwer to compete on an equal basis, but she

12    also explains why the alternatives offered by the NCBE, the

13    alternative accommodations, are inferior and would not allow

14    competition on an equal basis.  That testimony is not

15    contradicted in this record.

16         Similarly, Mr. Smith, the vocational rehabilitation

17    specialist who's worked for many years for the Department of

18    Rehabilitative Services has explained why for Ms. Blackfield the

19    use of JAWS is, indeed, the only thing that puts her on an equal

20    footing and gives her an equal opportunity to compete.  And he,

21    too, explain why the other alternatives are inferior.

22         And finally, Dr. Stimson, on a behalf of Mr. Elder,

23    establishes the same thing.  Dr. Stimson's affidavit is

24    particularly helpful, because as a cognitive psychologist with a

25    doctorate in -- sorry, someone with a doctorate in cognitive

1  psychology, he explains the reading process and how while we

2  think we read linearly, in fact, we constantly, and without

3  thinking about it, move back and forth within the text, speeding

4  up and slowing down, and how the screen-access software

5  essentially allows the same thing to be done orally that we do

6  visually.

7         All of that testimony is uncontradicted, as is the

8  testimony of Dr. Schroeder, who explains that one's primary

9  reading method is the one that allows someone to focus on

10  content and not the process of reading, and that's critical.  If

11  you're going to focus on the test itself, you can't be stopping

12  to think about how you're taking the content in or taking it in

13  in an unfamiliar manner or method.

14         And finally, Dr. Schroeder explains that today

15  screen-access software has become common and that it is

16  recognized by schools and by employers as a reasonable

17  accommodation.

18         None of that is disputed.

19         The NCBE does suggest that the plaintiffs are simply

20  asking for their preferred accommodation.  If that is what our

21  pleadings appear to say, then I have not done a very good job of

22  expressing the plaintiffs' point of view.  We don't seek any

23  kind of preferential treatment.  We don't seek a preferred

24  accommodation.  We seek an appropriate accommodation that will

25  allow the plaintiffs to be tested so that the test results will

1    reflect their skills and their knowledge and their capabilities

2    and not their disabilities, and that's what we're seeking.

3           The NCBE has not offered any evidence that the

4    accommodations it offers would provide a quality of

5    opportunities to these plaintiffs, provide an opportunity to

6    compete with their sighted peers on equal basis.  I have not

7    seen any claim in their papers that the accommodations they

8    proposed to offer do so.

9           Rather, they make the argument that if they offer

10   certain accommodations that may convey materially -- material

11   nonvisually, then that suffices, whether it is the suitable

12   accommodation or not.  We believe that -- and I'll turn in a

13   second to which standard -- that under any standard the Court

14   might apply that this makes it likely that we will prevail on

15   the merits of our claim.

16          The standard that is urged by the NCBE is that of

17   reasonable accommodations.  I'm not going to repeat what I've

18   put in our pleadings, but I think what is critical to understand

19   is that while that standard is not in the statute and not in the

20   regulations, that what it has in common with the standard is

21   what this Court said in the *Talbot* case, which is that a

22   reasonable accommodation is an accommodation that provides a

23   quality of opportunity.

24          What the Court said there was:  "Accordingly, the

25   reasonable-accommodation question asks whether the

1    accommodation, one, would be effective -- that is, would it

2    address job-related difficulties presented by the employee's

3    disability -- I'm skipping the cite -- and, two, allow the

4    employee to attain an equal level of achievement, opportunity,

5    and participation that a nondisabled individual in the same

6    position would be able to achieve.

7            That language --

8            THE COURT:  I think she went on to say you don't have

9    to use the best method, but I could be wrong.

10           MR. GOLDSTEIN:  What she went on to say was that it's

11   the employer's choice, but I would submit to you that the

12   difference between an employment situation and this is the

13   employee -- it's a long-term situation where the employer has

14   many tools.

15           It can -- I don't know how you talk about the best or

16   not the best if the choices are, well, we could change the job

17   duties, we could transfer, we could provide some software that

18   might solve the problem.

19           When you have that -- and it's a symbiotic

20   relationship.  You've got the employer's interest and the

21   employee's interest at work that need to work out over the long

22   term.  And it makes a lot of sense to talk about that in that

23   context, about what an employer can do and so the employer's

24   hands aren't tied.  And that may be why the word "reasonable

25   accommodation" and the whole interactive process that's

1  described in Reasonable Accommodation is Title I and it's not in

2  Title III.

3         So I think -- I think you're right, Your Honor, that

4  there is a difference here.  And in any event, we're looking at

5  a statute that -- rather, a regulation that does talk about

6  "best ensure" and that is parallel to the Title I requirement

7  that's in the statute for "most effective," and that is in the

8  504 regulation, essentially follows this same language.

9         So the -- there has been no claim at any time by the

10  NCBE that anything they offer would best ensure that the results

11  for these plaintiffs would reflect their abilities rather than

12  their disabilities.  And so if you apply the regulatory

13  standard, it's very clear that we succeed.

14         The argument is offered that this regulation is

15  somehow defective and an overreach under *Sandoval* and *Harris*,

16  and that argument is both wrong and proves too much.  We cited

17  to the Court the Supreme Court decision in *Morton*.

18         *Morton* makes very clear that when there is language,

19  as there was in *Morton*, that was ambiguous in the statute -- and

20  the meaning of "accessible" in 12189 is not altogether

21  apparent -- then the regulations can't be contrary to the terms

22  of the statute.  And as long as it is not arbitrary -- and

23  clearly there is sound reasons why the Department of Justice

24  could have used the language it did and so long as the

25  regulation furthers congressional intent -- then it is valid,

1   and the Court must defer to the meaning of the regulation as

2   interpreted by the implementing authority.

3             THE COURT:  I'm sorry, repeat for me again your

4   argument of why the statutory language is ambivalent or unclear.

5             MR. GOLDSTEIN:  Yes, Your Honor, if I can just -- let

6   me get the case.

7             In *United States v. Morton* -- sorry, there are so

8   many -- we've thrown so much paper at you, Your Honor, that I've

9   got a lot of cases in this notebook --

10            THE COURT:  That's fine.

11            MR. GOLDSTEIN:  -- I just need to get to it.

12            In *United States v. Morton*, the statute and

13   regulations dealt with the immunity of suit that some members of

14   armed services received from certain kinds of garnishments and

15   cases of that sort.

16            And in interpreting and giving conclusive effect to

17   the regulation for the implementation, what the Court said at

18   467 U.S. 834 was "because Congress explicitly delegated

19   authority to construe the statute by regulation" -- which is the

20   situation with the ADA -- "in this case, we must give the

21   regulations legislative and, hence, controlling weight, unless

22   they are arbitrary, capricious, or plain contrary to the

23   statute.

24            So the Court then looked at the -- those three

25   standards and said "the regulations" -- and this is at 835 to

1    836 -- "cannot possibly be considered clearly and consistent

2    with the statute or arbitrary, since the terms "legal process"

3    and "court of competent jurisdiction" are, at least, ambiguous.

4           In other words, what the Court said is since the

5    statute isn't completely clear of what is or isn't a court of

6    competent jurisdiction and since the statute doesn't define what

7    was meant there by "legal process," it was appropriate for the

8    regulations to define those terms.

9           And it went on to say that the regulation furthered

10   the congressional intent of facilitating the speedy enforcement

11   of garnishment orders and, therefore, because it, on the one

12   hand, addressed things that weren't clear from the statute alone

13   and, second, furthered the intent, the regulations were valid.

14          And we've cited to the Court a number of cases that

15   have said with respect to the ADA that Congress began with a

16   very broad brush and then left it to the DOJ, in the case of

17   Title II and Title III; EEOC, in the case of Title I --

18          THE COURT:  What is the statutory language that the

19   regulation is trying to interpret?

20          MR. GOLDSTEIN:  The statutory regulation --

21          THE COURT:  Statutory language.

22          MR. GOLDSTEIN:  I'm sorry.

23          Statutory language is 12189.  12189 says that any

24   person that offers examinations or courses related to

25   applications, licensing, certification, or credentialing for

1   secondary or post-secondary education, professional trade

2   purposes, shall offer such examinations or courses in a place or

3   manner accessible to persons with disabilities or offer

4   alternative accessible arrangements for such individuals.

5           THE COURT:  The key word is "accessible," which you

6   say is ambiguous.

7           MR. GOLDSTEIN:  Yes, it is, Your Honor.

8           For example, just to give you another example, if you

9   look at the operative language of Title II, which is designed to

10  give equal access to programs that are operated by the State,

11  121 -- Section 12132 of Title 42, you'll note that -- trying to

12  page through it here -- you'll note that it says nothing about

13  any kind of equal access.

14          It says:  "Subject to the provisions of the

15  subchapter, no qualified individual with a disability shall, by

16  reason of such disability, be excluded from participation in or

17  be denied the benefits of the services, programs, or activities

18  of a public entity."

19          So if you look at that language, then theoretically,

20  as long as Mr. Lang could crawl to the second floor of the

21  Tennessee courthouse, there was no violation of Title II because

22  he wasn't being excluded.  But the regulations that exist

23  pursuant to Title II make it very clear that equal access is

24  what it's all about, and we have cited to you the very clear

25  congressional language, indeed the findings that are in the

1    statute, as to the purpose of the statute that it's to provide

2    equal access.

3            And so I submit to you that it's not contrary to the

4    terms of the statute; it's not outside the scope of the statute

5    to talk here about equal access -- or rather to talk -- those

6    aren't the terms, to talk, as the regulation does, about having

7    the results reflect a person's abilities and not their

8    disabilities.  And I ask you to consider the contrary:  Could

9    you say that an exam was accessible if the results largely

10   reflected a person's sensory impairment?  In what sense would

11   that be so?  I don't think that's at all clear.

12           So I suggest that this regulation is valid, and I

13   further suggest that the passing reference to *Harris* and

14   *Sandoval* that we see falls far short of a serious challenge to

15   the regulations.

16           THE COURT:  This might sound like a very cold

17   question, but what about the issue of overcompensation?  If the

18   computer software is that good, shouldn't the authorities -- or

19   shouldn't there be something in the record to reflect whether

20   double time or time and a half is appropriate, or maybe

21   something less than that is appropriate?

22           MR. GOLDSTEIN:  It's not a cold --

23           THE COURT:  In other words, you get overcompensation

24   and actually the plaintiffs would benefit.

25           MR. GOLDSTEIN:  It's absolutely not a cold question.

1   It's a very appropriate question.  It's one in which the NCBE

2   chose not to make a record.

3        THE COURT:  But you didn't either, and you're making

4   the motion.

5        MR. GOLDSTEIN:  Well, yes, except than the NCBE has

6   made clear they're prepared to provide the additional time.  Had

7   they said if screen-access software is not granted, we don't

8   think it's appropriate to provide the additional time, then we

9   would have been delighted to put that in the record, but we

10  didn't understand and do not understand it to be in dispute.

11       The process what's called -- I always have trouble

12  pronouncing this -- saccading, the movement of the eye, is, I

13  believe, the fastest human movement there is.  And we are not

14  seeking to get any more advantage than anyone else.  And if

15  it -- less time were appropriate, given the reading speed using

16  the software of these plaintiffs, then we'd be happy to do so.

17       But I believe that -- in fact, I'm certain of it --

18  that what we do have in the record, Your Honor, is the

19  accommodation requests include statements by physicians that

20  cover not only the screen-access software, but the amount of

21  time that would be appropriate to put these plaintiffs on an

22  equal footing using the -- that screen-access software.

23       And perhaps Ms. Sidhu can find the record cites for

24  that while I address other questions from the Court or other

25  matters in this argument.

1          THE COURT:  Well, one of the decisions from the

2   Maryland Board of Examiners about that, because it granted the

3   time and said we can't provide the software.

4          MR. GOLDSTEIN:  Correct.  Well, they have the

5   software; they just can't provide the exam in electronic format.

6          THE COURT:  Can't provide -- that's true.

7          MR. GOLDSTEIN:  And that's a segue, actually, on the

8   question of subject matter jurisdiction which, perhaps, I should

9   turn to next.

10          Ordinarily under Sections 1331 and 1343(4), this Court

11   has jurisdiction over civil rights claims where the claim is one

12   guaranteed by a federal statute.  There are exceptions under a

13   variety of abstention doctrines, and the NCBE has carefully

14   stayed away from discussing any of those abstention doctrines.

15   But the one that applies here, if it were to apply it at all,

16   would be *Rooker-Feldman*.

17          THE COURT:  Actually, you can -- I'll hear from -- the

18   same would apply with Mr. Burgoyne's issue.  It seems to me that

19   that court of appeal's decision has to do with relative --

20   allocating relative responsibilities between the court of

21   appeals and circuit court, and it's got nothing to do with the

22   federal court.  I find it very hard to believe that a federal

23   court can't enforce a federal right if it was being violated,

24   but I'll -- you can say something about how that will apply.

25          MR. GOLDSTEIN:  I will follow Rule 2, then, and pass

1   on then to another issue, Your Honor.

2           Another argument that's offered here is that NCBE does

3   not offer the examination.

4           THE COURT:  Which, again, is a very cold issue, but

5   you better tell me why Mr. Burgoyne is not right on this one,

6   because I don't see them offering a darn thing, except to the

7   Maryland Board of Examiners.  I don't see them offering

8   anything.  If Congress made a mistake, Congress made a mistake,

9   and their argument can be made.

10          MR. GOLDSTEIN:  Well, Your Honor, if you look at

11  12189, I'm looking for that "to" language you're talking about.

12  It doesn't say "offer to" examinees.  It doesn't say "offer to"

13  applicants.  It doesn't say "offer to" -- there's is no privity

14  statement in 12189.  We're not dealing --

15          THE COURT:  But the person has to be controlling the

16  selecting and making it in a place and manner accessible to

17  persons with disabilities.

18          What does the defendant here have to do with

19  placement?  Why did you sue him?  Along with a number of

20  concerns, sue the licensing authority.  And if they want a third

21  party in, the Board, they'll do it.

22          MR. GOLDSTEIN:  Well, we could not sue -- first of

23  all, I think --

24          THE COURT:  You probably couldn't --

25          MR. GOLDSTEIN:  Well --

1            THE COURT:  -- injecting issues into the case.

2            MR. GOLDSTEIN:  And the most obvious of which, we had

3    no adverse decision from the State Board of Law Examiners.

4    There was no -- there was no argument on their part that they --

5    this was not an appropriate accommodation.

6            THE COURT:  If they're the ones offering the exam

7    within the meaning of the statute, then they're the appropriate

8    party.

9            MR. GOLDSTEIN:  Well, first of all, Your Honor, you

10   say if they're "the" party offering the exam.  And I am not

11   clear where you're finding that only one party can offer an

12   exam.  That's not at all clear to me that that's --

13           THE COURT:  They are "a" party.

14           MR. GOLDSTEIN:  Yes, they are "a" party, and they --

15           THE COURT:  And according to Mr. Burgoyne, they are

16   "the" party.

17           MR. GOLDSTEIN:  I'm sorry?

18           THE COURT:  And if the defendant is right, they are

19   "the" party.

20           MR. GOLDSTEIN:  If the defendant is right, but what

21   the defendant has done is to show that the bar administers the

22   exam.  Administers the exam.  And if you go to Webster's and

23   you -- or to Roget's -- and you look for synonyms to "offer,"

24   you will not find "administer" as a synonym, because it's not.

25           I suggest, with all respect, that you're using "offer"

1  in a metaphorical sense.

2         THE COURT:  No.  Forget offer, what about the statute:

3  Applies to any person offering examinations -- ellipsis

4  points -- that offerers shall offer such examinations in a place

5  and manner accessible to persons with disabilities.

6         What authority did the defendant have to select the

7  place?

8         MR. GOLDSTEIN:  The NCBE he has every right to

9  condition, saying if you want to use the MBE, you have to give

10  it in an accessible place.

11        Where is it read that the NCBE cannot impose that

12  condition, Your Honor?  Of course it can.  Just the way it

13  imposes conditions on security, just the way it imposes

14  conditions on the manner in which it is offered.

15        So if it can impose restrictions on the manner in

16  which it's offered, and we're here because it has, then what

17  would keep it from saying either way:  You have to offer it in a

18  five-story building with no elevator and 16 steps in the front,

19  or you have to offer it in a place that's accessible, or we're

20  not going to send you the exam.

21        I mean, you have to understand the practical aspects

22  of this.  If the -- excuse me.  If the NCBE -- excuse me if the

23  Maryland Board of Law Examiners wanted to, they could, without

24  violating copyright, make an electronic copy of this exam.

25  That's a classic definition of Fair Use.  There is only one

1   problem; which is, they'd never be able to offer the multistate

2   again.  The power relationship here is very, very clear.  The

3   NCBE controls the circumstances under which it allows state bars

4   to do so.

5           And we've given you Exhibit A, is the supervisor's

6   manual from the National Conference of Bar Examiners, and it

7   gives, step by step, all of the things that it requires in the

8   manner in which the exam is given as to the scheduling of it;

9   the use, selection, and responsibility of proctors; the seating

10  arrangements; the receipt of materials; the distribution and

11  post-distribution requirements.

12          You know, the National Board of Law Examiners has an

13  independent duty under Title II as to the place where it's

14  given.  I mean, I suggest to you a highly theoretical issue in

15  that regard, but there can be no question after you read this

16  manual who has the true control.  And, again, that's -- that's

17  why we're here.

18          There is no -- in the definition of -- rather, in the

19  use of the word "offer," there's been no definition offered by

20  NCBE, other than:  Whatever it is that we're doing, it's not

21  offering.  And you have to consider this against the landscape

22  that, whether it's optometry or surveyors or engineers or

23  veterinary medicine, it is the case now -- it was the case when

24  the ADA was passed -- that there are national organizations that

25  devise tests for national standards they use --

1           THE COURT:  But they can give them now for anywhere

2    from graduate record exams, the law boards, even the medical

3    examinations.  I understand it is different.  And they actually

4    are offering -- and even the professional responsibility exam --

5    they all are offered by the test maker.

6           MR. GOLDSTEIN:  Well, the -- I think that's true with

7    respect to the MPRE.  I don't think that's necessarily -- and

8    with the GRE, of course, that's not a state licensing exam at

9    all.

10          But to say when they have the degree of control that

11   they do, that that doesn't constitute offering, I suggest, Your

12   Honor, requires really reading in (A) "to whom it's offered,"

13   because it certainly is offered to the Maryland bar; it means

14   reading in that it can't be offered indirectly; it means reading

15   in that there can't be more than one person offering.  And none

16   of that is consistent, I suggest to you, with the broad reading

17   that you're to give the Americans with Disabilities Act.

18          Let me turn, if I might, to the four factors that the

19   NCBE claims are determinative of this case.

20          THE COURT:  Do you disagree?

21          MR. GOLDSTEIN:  Oh, I'm not talking about the four

22   factors for preliminary injunction.

23          THE COURT:  Oh, okay, excuse me.

24          MR. GOLDSTEIN:  No, no.  I don't -- that scenario,

25   we're all on board.  *Winter* is *Winter*.

1            No, page 3 of their opening memo -- and they repeat

2       this in their reply they filed yesterday -- they say there are

3       four factors that resolve the overarching legal issue.   The

4       first is they say they offer the appropriate auxillary aids and

5       services that are listed in the regulation and, therefore, are

6       required to do nothing more.

7            The problem with that argument is the list is

8       explicitly nonexclusive.   And as Judge Breyer explained in his

9       second *Enyart* opinion, the regulation, after listing some

10      auxiliary aids, goes on to say "or other effective methods of

11      making visually delivered materials available."

12           What is the function of that language if it's not

13      meant to indicate that just doing what's on the list may not

14      suffice in the provision of appropriate aids?

15           That language clearly informs the testing agency that

16      the listed regulations are not exclusive.   And NCBE has failed

17      to show that screen-access software is not -- to use that

18      language from the regulation -- "an effective method of making

19      visually developed materials available."

20           Let me just -- the mention of *Enyart* reminds me, going

21      back for a minute to the claim that the -- NCBE doesn't offer

22      this exam.

23           They have said that the reason they didn't say

24      anything about that in the *Enyart* case was the MPRE case was

25      also there.   That, I suggest, is a non sequitur, because if they

1  didn't have to provide the NBE in accessible format because they

2  don't offer it, then that surely would have been a significant

3  win.   Then they would have only had to deal with the MPRE,

4  and --

5          THE COURT:  So that they're judicially estopped

6  from -- what flows from that?  Suppose they made a mistake and

7  didn't raise the issue.  So what?

8          MR. GOLDSTEIN:  I think the -- I think that's a fair

9  rejoinder, Your Honor.

10          THE COURT:  It's not a rejoinder.  It's --

11          MR. GOLDSTEIN:  But I believe it's a fair question at

12  the moment, I'm sure, that tonight I'll realize.

13          THE COURT:  No, no.  They're making a tacit admission

14  that they obviously consider themselves an offerer.

15          MR. GOLDSTEIN:  But it does seem rather surprising

16  to see this raised so late --

17          THE COURT:  It does.  I understand.

18          MR. GOLDSTEIN:  The -- but we haven't raised the

19  factor of judicial estoppel, and I think whatever limit the

20  number of issues are that can be raised in a single case, we're

21  probably close to the limit.

22          The second factor before that they've talked about is

23  that that the menu of accommodations it offers has been twice

24  approved by the DOJ in settlements.  And I have to say for the

25  life of me, I don't understand that argument on several grounds.

1          First of all, the first settlement in Doug Elliott's

2   case involving his complaint that he couldn't -- that his reader

3   wasn't qualified, the social work exam, it's over a decade ago,

4   long before the technological changes we've all come to see take

5   place.  But nothing about that settlement implied anything, one

6   way or the other, about screen-access software.  What prompted

7   that settlement was the fact that the reader wasn't qualified,

8   and the complainant was insisting on some qualifications for

9   readers, which, by the way, don't exist.

10          THE COURT:  All this really means to me -- and,

11  Mr. Burgoyne, but really is to ask you -- you're absolutely

12  right about the language in the statute.  It's not inclusive.

13  The settlements, at least one of them, is, you know --

14  questions.  But the fact of the matter is you have a history of

15  what has been deemed to be an entirely reasonable accommodation.

16  You are here asking for extraordinary relief on a record which

17  has not yet been fully developed.

18          I frankly don't know yet.  I mean, I certainly

19  understand the hardships of not passing the bar examination, you

20  know, the humiliations, concern of that, having to restudy.  But

21  I don't know whether your client is going to pass it or not, so

22  in terms of balancing equities, there's a problem.

23          But the relevance of the history is that there is a

24  demonstrated background that this is a good way to approach the

25  issue, whether you characterize what your clients want as their

1  preferred way or not, you are, in effect, giving to your clients

2  the ability to choose which way they're taking the test.

3          I will certainly ask Mr. Burgoyne.  There must be good

4  reasons why they're resistant to this.  Some may be the security

5  concerns which really aren't fully briefed yet; there may be

6  concerns about -- you know, we just don't know enough yet to

7  know about -- in fact, I'm going to ask him about the test, why

8  for the test they didn't adopt it.

9          But they have concerns.  And to say, wait a minute,

10  let's not do this now, we have a perfectly clear history of --

11  even though it's not inclusive, we have the statute saying this

12  is adequate, we have settlements which say this is adequate, we

13  have a history that thing -- short of what the plaintiffs are

14  asking for -- is adequate.

15          Don't -- Judge, go ahead and issue an extraordinary

16  remedy.  Particularly, we don't know if the case is going to be

17  ripe because we don't know if the plaintiffs were going to fail

18  the board examination.

19          Just leave it alone, let the record be developed, and

20  make your decision.  Then that -- and there are issues that

21  maybe you're not going to win, either because of the outcome

22  of -- after discovery or because they don't offer the exam.

23          So there's a lot to be said for just, you know -- you

24  could very well be right, but let it be decided in due course

25  rather than under an extraordinary remedy.

1              MR. GOLDSTEIN:  Well, I think the problem with that

2     approach is severalfold.

3              First of all, you said they must have good reasons not

4     to want to do this.  I thought the function of briefing, the

5     function of pleading, the function of submitting evidence into a

6     record was to do just that.  And the regulation says that you

7     must offer an appropriate accommodation unless it is unduly

8     burdensome or would fundamentally alter the nature of the test.

9              THE COURT:  They're not briefing the issue of unduly

10    burdensome.

11             MR. GOLDSTEIN:  Nor do they claim this is not a Palmer

12    Writing Method test.  They don't -- although they keep

13    mentioning it's a paper-and-pencil test, they have not briefed

14    either one of the affirmative defenses.  So the only question

15    becomes is it an appropriate accommodation.

16             And there have been noises about the security issues,

17    so we thought that --

18             THE COURT:  The real question is whether -- if they

19    offer it, whether or not it's accessible to your clients.  It's

20    not appropriate examination; it's -- within the statutory

21    language, is it accessible.

22             Now, the regulation says it's got to be the best way

23    to ensure that, and that's a legal issue.

24             MR. GOLDSTEIN:  Well, or a reasonable accommodation

25    has to provide equal opportunity.  And what we have shown and

1   they have not shown and the record is entirely 100 percent

2   one-sided on this --

3          THE COURT:  No, it's not.  You've got -- that's why I

4   raised in the context of the history of what they're offering:

5   more time, the reader, everything else.  There's a history that

6   this is perfectly all right.

7          MR. GOLDSTEIN:  If that is the case, Your Honor, and

8   they don't have to offer what best ensures but merely have to

9   offer reasonable accommodation -- it doesn't have to be equal

10  opportunity but can be a menu -- then they can offer just

11  Braille, or just Braille and large print.

12         THE COURT:  No, they can't.

13         MR. GOLDSTEIN:  Well --

14         THE COURT:  They wouldn't then be able to rely on the

15  history of the various things that they offer.  I mean -- and

16  they're not taking that position.

17         MR. GOLDSTEIN:  Your Honor.

18         THE COURT:  In fact, they couldn't offer just Braille

19  because the record reflects that a lot of people don't know

20  Braille, including your clients, I think, but --

21         MR. GOLDSTEIN:  That's -- that is correct, but you've

22  got to make this work with some legal standard.  And it doesn't

23  work with the reasonable accommodation legal standard because

24  you've got nothing in this record to show that a reader provides

25  equal access, and you have a substantial --

1              THE COURT:  You have a demonstrated history.  That's

2     the point.  You have a long history that this is exactly what

3     is -- now, there may be people who say you need more, and they

4     may very well be right, but it's crazy not to take into account

5     another kind of computer program.

6              And this case may very well be a mechanism for proving

7     that, but you had a long established record of what is offered

8     by the defendant has been deemed and presumably should be

9     considered entirely reasonable, and leave it for the litigation

10    to determine whether it's the best or not.

11             MR. GOLDSTEIN:  Your Honor, I wouldn't dispute, for

12    example, that there's a long history that large print is an

13    effective accommodation.  Not at all.  But for whom?

14             The one thing I know this Court has said before over

15    and over again is that the question of what's a reasonable

16    accommodation is an individualized inquiry.  An individualized

17    inquiry.

18             You do not have in this record that these

19    accommodations are suitable for all blind people.  That's not in

20    any of settlements.  That's not in any NFB resolution.  You have

21    no record here, Your Honor, no record here, that these -- this

22    preset menu of accommodations is suitable for all blind people.

23    Just not there.

24             Now, let me turn briefly to this question of

25    irreparable injury, if I might.

1       You have not only the two *Enyard* opinions, *D'Amico*,

2   *Agranoff*, and *Chalk* in the Ninth Circuit, but you have *Jones*

3   that makes it very clear that justice delayed is justice denied.

4       If these plaintiffs have to wait in order to be

5   entitled not to be burdened by discrimination in taking this

6   examination, that's by no means a self-inflicted wound any more

7   than if you said, look, I'm sorry about the steps, but he's just

8   going to have to crawl up, maybe they can give him a wheelchair

9   inside; that no one should have to subject themselves to

10  discrimination as a condition of taking the bar.

11      And no one should have to subject themselves to the

12  delay.  Mr. Elder is going to be the disability rights fellow

13  this year, the second one, at Brown, Goldstein & Levy.  And he

14  wants to take depositions, and he wants to argue in Court.  He

15  wants to do a lot of things as the disabilities rights fellow

16  that, indeed, he should be able to do.

17      But if he has to wait till next February when we have

18  a final ruling -- if we have a final ruling and we can get it up

19  to the Fourth Circuit -- and, of course, it won't be.  It will

20  be 2013, 2014 when will we have this final ruling.  But if he

21  has to wait, of course he's damaged.  He's damaged in ways that

22  can't --

23      THE COURT:  Not sure I accept your premise that it

24  will take that long.  If I ruled your way after a full trial,

25  you'd have to get -- the other side would have to get a stay

1    from the Fourth Circuit to prevent the bar exam from being

2    administered to them, which I hope would not happen, if I ruled

3    your way all along.

4            MR. GOLDSTEIN:  Well, perhaps --

5            THE COURT:  So it may be that long, but it won't

6    definitely be that long.  You can't say definitely that long.

7            MR. GOLDSTEIN:  Right.  And I would suggest, Your

8    Honor, that there is not a one-bite rule in the law here that

9    one has to first take and fail to have been injured.  And, in

10   fact, that's not the law.  Or that you must subject yourself to

11   discrimination in order to be entitled then on the second round

12   to relief.

13           Your Honor, I know the deep respect you have for

14   institutional decision-making, and deservedly so.  And there

15   certainly has been a long history of contentiousness between the

16   disability community as a whole and testing agencies, whether

17   it's about flagging, whether it's about qualifying readers --

18   still an open battle -- whether it's about getting Braille

19   copies -- also still an open battle -- and that the concerns

20   that agencies have that if they give certain accommodations that

21   could affect the validity of their testing if someone got an

22   unfair advantage, for example, by getting more time than they

23   were entitled to.  And those are legitimate concerns.  Like

24   security.

25           But at some point, if the record is clear and clear on

1   a preliminary basis, then it is appropriate to require the

2   relief as is sought here.  And I submit to Your Honor that if we

3   were to go to trial tomorrow on this record, you would be --

4          THE COURT:  But you wouldn't suggest that because you

5   don't think -- you don't think I should consider summary

6   judgment, so I don't think we should be contemplating going to

7   trial on this record tomorrow.

8          MR. GOLDSTEIN:  Contrary.  I didn't move for summary

9   judgment because there are conflicts in the record, and --

10         THE COURT:  No, but you also talk about it being an

11  undeveloped record.  That's one of reasons we shouldn't even

12  proceed to summary judgment.

13         MR. GOLDSTEIN:  It can always be more fully developed.

14  I'm dying to take their deposition on security, but if Your

15  Honor wanted to convert this to a final injunction, I think

16  we've got the record.  Now.  I do.

17         I think that on this record as you face it today, you

18  would be compelled to rule for the plaintiffs.

19         THE COURT:  Thank you very much.

20         Mr. Burgoyne.

21         MR. BURGOYNE:  Thank you very much, Your Honor.

22         I will start on the jurisdiction point, just to get

23  that out of the way.

24         Your Honor, given the important of subject matter

25  jurisdiction and given the extremely strong views expressed by

 1   the Maryland Court of Appeals in the *Kimmer*, decision we thought

 2   it appropriate to call that decision to you.

 3        Obviously, it was not our lead argument.  It was

 4   something that we felt an obligation, just as if there was

 5   precedent that was relevant to call it to your attention.  We

 6   certainly respect whatever ruling you have on that issue.

 7        Moving on then, Your Honor, I'll start with some

 8   introductory comments, and then I guess what I -- probably most

 9   effective is to respond to the concerns you've identified in

10   discussions with Mr. Goldstein.

11        This is certainly an important case, Your Honor.

12   While you've got three individual plaintiffs before you and a

13   single testing organization, there can be no question that the

14   outcome of this case could well affect dozens, if not hundreds,

15   of testing organizations and certainly could extent beyond the

16   scope of individuals with disabilities.

17        Were you to hold, for example, that "best ensure"

18   requires a testing organization to get down into the weeds and

19   do what almost amounts to a psychometric analysis on how well

20   someone will perform various auxillary aids, I can guarantee you

21   that every individual seeking accommodations will take the

22   position that the accommodations they request are the only ones

23   that will best ensure that the accommodations properly address

24   their knowledge and abilities rather than their disabilities.

25        Press releases and rhetorical flourishes aside, Your

1   Honor, there are no villains in this case.  As Your Honor notes

2   what NCBE has offered by way of accommodations to the state

3   boards of bar examiners on the Multistate Bar Exam are precisely

4   those accommodations which the National Federation of the Blind

5   has actively encouraged and, in fact, I think the word they used

6   is "demanded" testing organizations to provide.

7        Likewise, we're making the exam available in exactly

8   the formats that the United States Department of Justice

9   concluded in 2000 would -- in the words of the acting assistant

10  of the Department of Justice for Civil Rights -- "provide a fair

11  opportunity for individuals with visual impairments to

12  demonstrate their knowledge on standardized tests."

13       So as your Honor correctly noted, there is, in fact, a

14  history here against which our arguments are made.

15       In this particular instance, we happen to disagree

16  with the plaintiffs regarding the meaning of Section 12189 of

17  the ADA.  As I tried to convey in our brief, Your Honor, what it

18  all comes down to is there are evolving technologies.

19       They would like to use those evolving technologies

20  immediately in the interest of taking the multistate bar

21  examination.  Our client believes that those technologies are

22  not yet to the point where we have a sufficient comfort level

23  that we should put our secure tests in that format for

24  administration to individuals with visual impairments.

25       Conversely, we do provide that format for an exam

1    which is a nonsecure exam.  To the best of my knowledge, Your

2    Honor, there is no other testing organization which makes its

3    paper-and-pencil exams available in the format that's being

4    requested by the plaintiffs in this case.

5            THE COURT:  And the record doesn't reflect why after

6    the tests you all decided not to adopt, does it?  I mean, it's

7    just reflects that you decided not --

8            MR. BURGOYNE:  There is a declaration in the record,

9    Your Honor, from a Kent Brye, and there's a declaration from the

10   National Conference of Bar Examiners' president.  And what the

11   NCBE president indicates is that while they had hoped that the

12   pilot program would indicate that you could get economies of

13   scale and that doing this in that fashion would be feasible from

14   both a cost-administrative and security perspective.  When all

15   was said and done, they concluded that was not the case.

16           The security issue is still there.  We have -- we

17   walked through the various scenarios from allowing an examinee

18   to put it on his or her own computer to having a state board --

19   in this case as Maryland has offered -- to purchase laptops and

20   provide it that way, to us putting it on our laptop computer.

21   The only one of those three that has given us a semblance of

22   comfort is the last one, and what we found was that it cost

23   approximately $5,000 to administer the exam in that format,

24   would require us to devote additional resources at the staff

25   level, and also doesn't fully remove all of our security

1     concerns.

2             THE COURT:  Well, what about the second option?  It we

3     seem to me that the state bar examiners would have the same

4     incentive, as you all would, to provide security.

5             MR. BURGOYNE:  They certainly, you would think, have

6     the same incentive, Your Honor, but we don't control the staff.

7     We don't know who they identify to come in and train people on

8     how take make sure that when the exam has been administered, it

9     doesn't get left on the laptop.

10            And I don't pretend to be an expert in computers, Your

11    Honor, but we did submit an affidavit --

12            THE COURT:  It's just that you don't control the

13    situation.

14            MR. BURGOYNE:  We don't control the situation is the

15    fundamental problem.  And this case even has an example, Your

16    Honor.  We have the manual that Mr. Goldstein relied upon so

17    heavily as, you know, somehow demonstrating that we offer the

18    exam, is a manual that we don't make available to the general

19    public because it gets into test security issues.

20            On the other hand, the Maryland Board has now made it

21    part of the public record.  We don't control what third parties

22    do, and we certainly don't control what had the Maryland Board

23    does or how it decides to staff or what it does with issue to

24    materials we provide.

25            Ten years ago, Your Honor, I think it's fair to say

1    that National Conference of Bar Examiners would have been

2    congratulated, not criticized, for the manner in which it was

3    approaching the question of making accommodations to individuals

4    with visual impairments.

5          It's also true, however, Your Honor, that when the

6    Department of Justice settlement agreement was entered into and

7    when the National Federation of the Blind called upon other

8    testing organizations to administered their exams using the very

9    formats that we offer, technologies were available then as well.

10   We offered material in our brief, Your Honor, that pointed out

11   that the JAWS and ZoomText technology preceded the settlement

12   agreement and the NFB resolution.

13         So I don't think it's fair to characterize those as

14   suddenly coming on the scene after the Department of Justice

15   entered into its settlement agreement.  And as Your Honor knows,

16   the Department of Justice has filed a statement of interest in

17   this case, and one of the things they say is that this

18   technology -- you know, they suggest that it wasn't around at

19   the time of the settlement agreement, but it clearly was.

20         Your Honor, whether framed in terms of accessibility,

21   appropriate auxillary aids, equal opportunity, or reasonable

22   accommodations, the outcome in this case should be the same.

23   Having done precisely what the Department of Justice and the

24   National Federation of the Blind have encouraged us to do in the

25   manner in which we deliver exams, it would be inappropriate to

1    conclude that we have violated either the letter or the spirit

2    of the Americans with Disabilities Act.

3           On that basis alone, Your Honor, we believe the Court

4    could appropriately conclude that judgment should be entered as

5    a matter of law.  We pointed not only to the DOJ settlement

6    agreement, we pointed to the NFB's own statements regarding

7    appropriate formats for making the exam accessible.  And, again,

8    accessibility is what the case is all about.

9           DOJ have identified -- has identified these formats as

10   formats for making the exam accessible.  The National Federation

11   for the Blind has identified these formats as the suite of

12   formats that will make the exam accessible.  And by

13   "accessible," both the DOJ and NFB surely meant to capture

14   within that concept the notion of equal opportunity.

15          We certainly do not suggest in any way that

16   individuals with visual impairments should not have equal

17   opportunities.  What we do suggest is that in providing the

18   formats that we provide, individuals with visual impairments

19   have equal opportunity.

20          Several courts, Your Honor, in similar cases have

21   concluded as a matter of law that in this situation, summary

22   judgment is warranted.  We pointed the Court's attention --

23          THE COURT:  In this, plaintiffs say that what you

24   offer does not provide equal opportunity because they're used to

25   using what they're requesting.

1          MR. BURGOYNE:  Well, the question -- and similar

2    claims were made in these other cases, Your Honor.

3          For example, in the *Jaramillo* case, the plaintiff said

4    he couldn't use the exam administration formats that were

5    offered on that licensing exam.  What he wanted was ZoomText and

6    JAWS, the same issue here, and the Court said no reasonable jury

7    could conclude that the accommodations offered by the testing

8    organizations were not reasonable as a matter of law.

9          Likewise in the *Fink* case, the Court addressed the

10   undue burden issue and the question of whether someone's

11   entitled to their preferred accommodation and said so long as

12   the accommodations provided ensure an equal opportunity in

13   access, you're entitled to judgment as a matter of law.  And

14   again, the plaintiff was not happy with the accommodations

15   offered and would have preferred others, but the Court said that

16   those that were provided are reasonable as a matter of law.

17         On the question of auxillary aids, Your Honor, we also

18   pointed to the statutory and regulatory language dealing with

19   auxillary aids.  We certainly don't say that that's an

20   exhaustive list.  It obviously isn't, in either the statute or

21   in the regulations.  But I do think it's fair, Your Honor, to

22   say that at a minimum, if a party like the National Conference

23   of Bar Examiners provides its materials in formats which have

24   been identified as, quote, "appropriate auxillary aids," then it

25   is reasonable to say in that situation that access has been

1    provided.

2         If you do what the statute says, if you provide the

3    formats that are included on the list -- it may well be there

4    are others, but if you do what the statute says and include

5    those formats, and if you do what the regulation says and you

6    make those auxillary aids and services available, it is not

7    unreasonable to conclude that you have met your obligations

8    under the statute.  It's what the Court referred to in the

9    *Dobard* case, Your Honor, as ADA-supported auxillary aids or ADA

10   identified.  I'm probably missing the term, but the concept was

11   obviously if Congress and the agency had both identified these

12   sets of auxillary aids as appropriate, then you've met your

13   legal obligation in terms of providing access.

14        Your Honor correctly noted, it isn't a situation where

15   we're only offering Braille or we're only saying you can take it

16   with large print.  We have, in fact, made the exam available in

17   a broad sweep of formats.  And it's free for the state

18   jurisdiction to provide additional accommodations:  extra

19   testing time, a scribe.  Those are all things that, as the

20   entity offering the exam, the state board can do.

21        On the question of offer, Your Honor, and whether or

22   not NCBE offers this exam --

23        THE COURT:  I take it the issue of overcompensation is

24   not one in which you're pursuing, the fact that if they get both

25   what they're asking, maybe they got too much time.  Because you

1  didn't -- among other things, you weren't the one who determined

2  the amount of time.

3         MR. BURGOYNE:  Well, precisely, Your Honor.  We didn't

4  make the decision.  I do think it's fair to ask why -- the

5  affidavit suggests that if the plaintiffs were allowed to take

6  the exam in their requested format, that is equivalent to the

7  manner in which a sighted individual would take the bar exam.  I

8  do think it's fair to ask in that context, then, why an

9  individual would need double time.  There may well be an answer,

10  but it's not --

11         THE COURT:  It's not in the record.

12         MR. BURGOYNE:  It's not in the record, Your Honor, but

13  I do think it raises the question as to whether, in fact, it is

14  equivalent; and what it suggests to me is -- and there could be

15  no question about this -- even taking exam on a computer, you

16  know, it's still -- a computer is reading the exam to you, not a

17  human reader.  And instead of a CD reading the questions, the

18  computer is reading it.  And presumably that's why they

19  requested the extra time.  It is not our decision on whether any

20  extra time is given.  That's made by the entity offering the

21  exam.

22         Likewise, Your Honor, I think Mr. Goldstein made the

23  point that there was record evidence from the healthcare

24  providers that extra testing time was needed.  Not documents we

25  ever saw, because those documents -- that documentation isn't

1   provided to us.  It's provided to the entity that reviews the

2   documentation and administers the exam.

3          On the broader question, Your Honor, of whether or not

4   NCBE offers the exam within the meaning of the statute -- and

5   this is a pure question of law, statutory construction -- I

6   think it is the correct conclusion that NCBE is not the entity

7   that offers this, nor can it be viewed as a co-offerer, which is

8   the fallback position for the plaintiffs.

9          If you look at the language of the statute, it clearly

10  focuses, as Your Honor suggested, on who's administering this

11  exam, who's making the arrangements for where it's going to be

12  administered, et cetera.

13         Likewise, if you look at the regulation which

14  implements 12189, which is 28 C.F.R. 36.309, it speaks in terms

15  of the entity offering the exam having an obligation to make

16  sure the exam is selected and administered so as to best ensure.

17         We've heard about the best ensure part of that

18  language, but you haven't heard the mention "selected and

19  administered" language.  The party that selected the MBE as part

20  of their bar exam was the State Board of Bar Examiners for the

21  State of Maryland.  Likewise, the entity that administers the

22  bar exam is the Maryland Board of Bar Examiners.  That entity is

23  not the National Conference of Bar Examiners.

24         Mr. Goldstein also suggested that if you went to

25  Websters and Roget's, you would find support for their position

1   on a broader meaning of the word "offer."  Our position, Your

2   Honor, is that the place to start is with the statute and the

3   regulation, both of which, in our view, would support the

4   conclusion that NCBE does not offer this examination.

5          THE COURT:  Drawing analogies from the criminal law,

6   isn't either aiding or abetting or -- that's not a good word --

7   but in principal, aren't you, effectively, the principal behind

8   the offering of the exam?

9          MR. BURGOYNE:  We are the principal behind offering an

10  exam generically to state boards of bar examiners, as we offer

11  various exams.  But no given jurisdiction is obligated to

12  purchase our exam.  We developed the Multistate Professional

13  Responsibility Examination.  The State of Maryland has elected

14  not to purchase that exam, not to include it within the scope of

15  its bar examination.

16         We certainly make the exam available to state boards.

17  I don't think that's what the Congress was addressing, nor do I

18  think Your Honor that accepting the proposition that we don't

19  offer the MBE leaves the plaintiffs without a remedy.  As you

20  suggested, there is a remedy, but it's a remedy against the

21  State Board of Bar Examiners for the State of Maryland.

22         THE COURT:  As I understand your reply brief, it ends

23  up -- it doesn't end up with them taking this exam.  The State

24  Board's got to say, forget the money, for you all or everybody

25  or --

1          MR. BURGOYNE:  Well, there are options.  This isn't --

2  the only accommodation isn't for the plaintiffs to take the

3  multistate bar examination on a computer with their requested

4  accommodation.  That's correct, Your Honor.

5          The State of Maryland could say, you know, we've

6  looked at your documentation, and we think there's an

7  alternative approach here.  We will waive the exam for you.  Or

8  it could say we will develop our own exam to test the subjects

9  that are tested on the multistate bar exam, just as it develops

10  its own essay component.

11          None of those obviously are optimal, Your Honor, and

12  I'm sure the State of Maryland would say those aren't realistic

13  options.  But they are options, Your Honor, and it doesn't leave

14  the plaintiffs without a remedy.

15          In fact, Your Honor, the State of Maryland has a

16  specific set of procedures built into their rules specifically

17  to give parties the opportunity to pursue administratively and

18  in front of the Maryland Court of Appeals concerns they have

19  about ADA accommodations.  So there's a remedy there that is

20  available.

21          It isn't correct to say that accepting the proposition

22  that NCBE doesn't offer this exam leaves the plaintiff with no

23  remedy whatsoever.

24          THE COURT:  Just out the curiosity, how many state bar

25  examiners buy your product, use your product?

1          MR. BURGOYNE:  For the MBE, Your Honor, I think it's

2     48.  A smaller number uses the MPRE.  A smaller number uses the

3     multistate performance test.

4          Your Honor, to respond quickly to a few points that

5     Mr. Goldstein made.  Then I'll shift over to the preliminary

6     injunction standards.

7          There was a suggestion, Your Honor, made that

8     screen-access software has been recognized by schools and

9     employers as an appropriate accommodation.  What you didn't hear

10    in that sentence was that it has been recognized as an

11    appropriate accommodation by state or private entities that

12    administer secure examinations, that develop and administer

13    secure examinations.  And, again, I think that's an important

14    distinction here.

15         I don't think it's fair to conclude in any sense that

16    NCBE is being arbitrary by not offering this particular

17    accommodation.  It has very legitimate concerns, and this exam

18    is very different from the other exam which it makes available

19    in the electronic format.

20         There was a suggestion that we haven't offered any

21    evidence or made any claim that the accommodation that's we --

22    or the formats in which we make the exam provide equal

23    opportunity.  I don't think that's a fair characterization of

24    our papers, Your Honor.  And if it is, I didn't do a very good

25    job drafting my brief.

1          If we make the exam available in formats that have

2     been called for by the Department of Justice and the National

3     Federation of the Blind and many others, I don't think there's

4     any other conclusion that can be reached than that we are making

5     our exams available in a format that would provide a fair and

6     equal opportunity.  It is certainly our position that by

7     providing the exam in the formats that we do, we are ensuring

8     equal opportunity within the meaning of the law for individuals

9     with visual impairments.

10          There is a suggestion that we're arguing for some

11    nebulous reasonable accommodation standard.  The standard here,

12    Your Honor, is very straightforward.  Do we offer the

13    examination in a manner that is accessible?  We believe that we

14    do.  That's the standard.  That's the question for the Court,

15    the central ultimate question before the Court.

16          We have used in some of our papers the shorthand

17    "reasonable accommodations."  So does the Department of Justice,

18    Your Honor, when it talks about accommodations in the testing

19    context.

20          The National Federation of the Blind when it entered

21    into a settlement agreement with the Law School Admissions

22    Council spoke in terms of "reasonable accommodations."  That's

23    simply a shorthand consistent with the overarching approach of

24    the Americans with Disabilities Act.

25          It is not inappropriate for the Court to look to

1   precedent in the employment context or under Title II of the

2   ADA, which has emphasized that what the Americans with

3   Disabilities Act requires is reasonable accommodations.

4          There's nothing about the provision in the ADA that

5   deals with standardized testing, which elevates the rights of

6   examinees above the rights of all other individuals under the

7   Americans with Disabilities Act.  All the provisions in that

8   statute are intended to guard against discrimination against

9   individuals with disabilities, and no category of individual is

10  entitled to greater or lesser protections under the statute.

11         The Court has noted in its own decisions, and other

12  courts have noted, that at the end of the day if reasonable

13  accommodations have been provided, the employer or the state

14  entity are entitled to judgment as a matter of law, even if the

15  accommodation they have not provided is not, quote, "ideal," is

16  not the "best," is not the "preferred accommodation."

17  Ultimately, if we have provided reasonable accommodations -- and

18  in our view on this undisputed record, we clearly have -- we

19  should be entitled to judgment.

20         I don't think, Your Honor, there was a discussion of

21  the *United States v. Morton* case.  I don't find the word

22  "accessibility" particularly ambiguous.  I think if you look at

23  that word in the context of the ADA as a whole and in the

24  context of all the history that has gone on in terms of making

25  standardized tests accessible to individuals who are visually

1    impaired, I think we all have a sense of what accessibility

2    means.

3            THE COURT:  Mr. Goldstein says by itself it is

4    ambiguous, that you could -- somebody would have to crawl to get

5    to the exam, you know --

6            MR. BURGOYNE:  I don't think we've asked -- he

7    certainly isn't suggesting that we've asked anybody to crawl to

8    get to the --

9            THE COURT:  No, I understand.  I know.  It was just an

10   abstract interpretation.

11           MR. BURGOYNE:  It was.

12           I think that if you look at what has happened, which

13   is to say that we make the exam available in multiple formats

14   which we have been told are the appropriate formats to make

15   written materials accessible to visual -- individuals with

16   visual impairments --

17           THE COURT:  And I guess your position is that

18   "accessible," in context, means "reasonably accessible;" and in

19   regulation, which says "best" is inconsistent with "reasonable."

20           MR. BURGOYNE:  Well, if you interpreted that -- yes,

21   if you interpret the statute as what they are urging you to do,

22   in the manner they are urging you to do, then "best ensures"

23   means far more than "accessible."

24           And I think, Your Honor, I can safely say that there

25   wasn't a lot that the California Court agreed with the National

1    Conference on in that *Enyard* case, but the one thing it did say

2    was that the plaintiffs appeared to be stretching things a bit

3    when they suggested that their reading of "best ensure" was

4    proper, given the fact that what the statute calls for is

5    "accessibility."

6            It may have been the one bright spot in the decision,

7    Your Honor.

8            THE COURT:  I don't know, your bright spot wouldn't

9    appear in whether you disagreed with them or not.  It was

10   appearing before the Judge.  It was a very delightful thought.

11           MR. BURGOYNE:  Well, I didn't have that pleasure, Your

12   Honor.  I was not lead counsel in that case.

13           Your Honor, no court has interpreted the "best ensure"

14   language in the manner that they are calling for, and there have

15   been dozens -- if not over a hundred -- cases interpreting the

16   ADA's application in the testing context.

17           Your Honor, I'd also note one other thing quickly:

18   The question of whether there's any record evidence on how these

19   plaintiffs would perform via accommodations that we've offered.

20           I'm sure the Court saw this in the record, but the

21   fact is that the National Conference of Bar Examiners on the

22   exam which it does offer and as to which it does evaluate

23   accommodation requests, provided accommodations to two of

24   plaintiffs in this case on the Multistate Professional

25   Responsibility Exam, and both of them did very as well and

1   achieved scores that enabled them to pass in every jurisdiction

2   that uses the MPRE.

3          On the question of preliminary injunction, Your Honor,

4   *Winter* clearly changed the landscape in all courts, including

5   the Fourth Circuit, with its *Blackwelder* standard.  And as the

6   Fourth Circuit noted in the *Obama* decision, the *Blackwelder*

7   standard was much less rigorous than what the Supreme Court has

8   called for in *Winter*.

9          Under *Winter*, there must now be a clear showing that

10  you are likely to succeed on the merits and a clear showing that

11  there would be irreparable harm in addition to the equities

12  favoring you and public interest favoring you.

13         I've already walked through why we believe as a matter

14  of law we should prevail on the merits.  And certainly in the

15  face of all of that, it would be -- obviously, we don't think

16  they're likely to prevail on the merits, Your Honor.  I'll leave

17  it at that.

18         On the question of irreparable harm, Your Honor,

19  they've suggested that the controlling precedent here is a

20  decision from the 1980s involving a student who was kicked out

21  of, I believe, the University of North Carolina for cheating and

22  then went in to get a preliminary injunction that would allow

23  her to continue her education.

24         As we noted in our belief, that's a very different

25  situation, as courts have noted, where somebody is already

1   underway and then comes in to get a preliminary injunction.

2          What that Court decision said, Your Honor, was that

3   having a gap in your resume that you have to explain later,

4   where professional stigma was found in the context of that case

5   to be irreparable harm.  To the extent those concepts are still

6   viable in light of other Fourth Circuit decisions, Your Honor,

7   we certainly suggest here that there has been no showing of

8   actual and imminent irreparable harm by the plaintiffs.

9          We've cited two cases from the Fourth Circuit,

10  district court cases, which have held in directly analogous

11  cases that not being able to take a particular bar examination

12  does not constitute irreparable harm.

13         THE COURT:  It may just be a debater's point, but

14  Mr. Goldstein is right.  Certainly being subjected to a

15  discriminatory practice itself constitutes irreparable harm;

16  and, two, I'm sure when you took the bar exam, you thought

17  yourself irreparably damaged if you were being deprived of a

18  fair opportunity to pass the bar exam at all.

19         MR. BURGOYNE:  I would, Your Honor, but all those

20  assume that there's been discrimination and assume that I was

21  not being given a fair opportunity.  And it gets a bit circular

22  at that point if in every case where someone comes in and says,

23  I think I've been discriminated against, I need a preliminary

24  injunction, if at that point we've already established the

25  public or the -- public interest factor, as they allege, and

1  their argument is, if we sue you under the ADA, then we're

2  pursuing a civil right; and pursuing a civil right is, by

3  definition, pursuing the public interest.  I don't think that

4  should be the standard, Your Honor.  Otherwise, every individual

5  who files a request for preliminary injunction under the ADA and

6  other civil rights laws has, by definition, established the

7  public interest factor.

8          THE COURT:  No, no.  Actually, your response is very

9  interesting.  One could say that if you accept that being

10 subjected to a discriminatory practice itself, ipso facto,

11 constitutes irreparable harm, that becomes an immaterial factor

12 for preliminary injunction in a civil rights case; that, in

13 fact, you only look to the success on the merits and the balance

14 of equities and public interest.

15         MR. BURGOYNE:  Well, I think if I'm understanding you

16 correct, Your Honor, our view is that you can't simply accept

17 the fact that --

18         THE COURT:  No, no.  What I'm saying is if I thought

19 that the plaintiff was likely to succeed, that would mean that

20 he -- they were being subjected to a discriminatory practice;

21 and so, therefore, ipso facto, being subjected to that practice

22 would be -- itself constitute irreparable harm, regardless of

23 the consequences, which is not passing the bar exam.

24         MR. BURGOYNE:  I think at a minimum you would have to

25 have concluded they are likely to succeed on the merits in order

1    to conclude that the public interest is served by -- the public

2    interest factor by granting a preliminary injunction.  I think

3    that's what --

4            THE COURT:  Well, let me ask you about the public.  I

5    don't want to put an argument in without -- that it is the way

6    Mr. Goldstein, as my mind works, in sort of an institutional

7    resolution.

8            Public interest, very often, is a factor which can be

9    argued any way.  You know, the plaintiffs' right is in the

10   public interest to prevent discrimination, it's you're right.

11   It's -- you know, that's not being --

12           I mean, here there is a public interest factor of

13   having institutional resolution by -- I mean, there's no reason

14   to think that your -- anybody is in any way biased, taking into

15   account fairness of others and the state of technology and that

16   it's better to have -- it's in the public interest to have a

17   institutional resolution of this, at least in the first

18   instance, as opposed to plaintiffs choosing their own method of

19   examination.

20           MR. BURGOYNE:  Well, I think you're absolutely right,

21   Your Honor.  There are other interests at stake, and the public

22   interest factor should be broadly construed.  What we do is we

23   provide a product which has been found to be very useful to

24   state boards and to courts which are looking to have competent,

25   capable individuals assisting clients in court.

1          There is an interest at stake if we are told we have

2     to start administering our product in a way that we think raises

3     very legitimate concerns for our institution.

4          I also think, Your Honor, that you are certainly

5     right, there was an alternative vehicle for getting through

6     this, you know, other than a lawsuit.  You know, we had the

7     pilot program.  It may just be we don't move fast enough, you

8     know, in terms of -- or don't have the resources necessary to

9     get to that point.  In all events, we found ourselves in a

10    lawsuit, Your Honor.

11         I also think it's relevant, Your Honor, that what the

12    ADA says is take a balanced approach.  Again, it gets back to

13    the question of what's reasonable, and I believe that what we

14    have done is reasonable.

15         And the last question, Your Honor, of balance of the

16    equities, I think that ties in a little bit.  We got into what

17    the reasons are for the National Conference, including following

18    the pilot program that these particular formats are not viable

19    at the present time.  Those are certainly equities on our side

20    of the case that we think the Court should balance in the

21    preliminary injunction analysis.

22         Ultimately, though, Your Honor, I think this case

23    rises or falls on the likelihood of success on the merits and

24    the question of whether they have made a clear showing that

25    irreparable harm is likely.  We don't believe either of those

1    have been made, and we certainly don't believe that this is a

2    case which justifies a mandatory preliminary injunction which,

3    as the Fourth Circuit has noted, should only be provided in the

4    most extraordinary of circumstances.  We do not believe this

5    case presents such circumstances.

6              Thank you, Your Honor.

7              THE COURT:  Thank you.

8              Mr. Goldstein.

9              MR. GOLDSTEIN:  Your Honor, let me start by addressing

10   this institutional interest question and whether there's an

11   interest in having a predetermined menu of accommodations.

12             As I argued in my initial remarks, the Department of

13   Justice was given the responsibility to implement Title III of

14   the ADA.

15             THE COURT:  I'm glad to see the Civil Rights Division,

16   in some context, isn't interested in enforcing civil rights.

17             MR. GOLDSTEIN:  Well, I can tell you my experience has

18   been in the last year that they seem to be open for business

19   again, so it's been nice to see.

20             But the implementing regulation chose a different

21   approach than what you're proposing.  The implementing

22   regulation, which is not that unusual when compared to the

23   similar implementing regulations elsewhere in the statute, did

24   not make an unbounded promise that people with disabilities

25   could have whatever accommodations they wanted.

1            But in addition to the fairness requirement, which is

2    very much there in terms of the results, how the results

3    reflect, they also set two other boundaries:   The undue burden

4    boundary and the fundamental alteration boundary.   And so as a

5    matter of law in construing regulations, if a plaintiff shows

6    the accommodation is appropriate and it is not one that is

7    unduly burdensome or fundamentally alters the nature of the

8    test, then however sound your approach might have been to the

9    regulation, the regulation provides otherwise.

10            And entitles the plaintiff to the appropriate -- the

11   accommodation if they can show the following:   It will produce a

12   result that leaves them with the test reflecting their abilities

13   and not their disabilities, which means no helpful advantage

14   either.   It doesn't go -- you know, it goes in both directions,

15   it's symmetrical, and unduly burden and fundamentally alter.

16            So maybe it would be better as a matter of social

17   policy for the regulation to say, each institution should have a

18   prefixed menu and decide this is what's going to be there and

19   nothing's a la cart.   But that's not what the regulatory

20   language is.

21            I think it was very critical to hear from Mr. Burgoyne

22   that the MPT, the other exam that they offer -- which is not

23   repeated and, therefore, not secure -- is one that they offer in

24   electronic format and allow the bar to give.   And indeed that's

25   the case.   These clients, if they take the bar at the end of

1    July, will be able to take the MPT using their screen-access

2    software.

3              That's helpful because it helps put in focus that the

4    distinguishing factor is security.  And we have a very clear

5    statement in the record that's not contradicted.  And that is

6    Mr. Brye, who is the director of security for the National

7    Conference of Bar Examiners, in Exhibit C to the Opposition to

8    our Motion for Preliminary Injunction.

9              In describing the protocol that they developed for the

10   pilot program -- and that protocol, by the way, is all we're

11   asking for here -- said:  This protocol has been tested and in

12   the view of the NCBE, is the appropriate means of sufficiently

13   protecting the security of the NBE.

14             That is a statement under oath by the head of

15   security, a very important adverb, I suggest, of "sufficiently

16   protecting the security of the NBE."

17             We've also submitted to you --

18             THE COURT:  Let me ask, Mr. Burgoyne, what do you have

19   to about that?

20             MR. BURGOYNE:  Your Honor, the issue's never been

21   whether it's a theoretical matter.  The issue is whether as a

22   legal matter we have an obligation to do that, even in the face

23   of the administrative security and cost.

24             THE COURT:  But if the concern is security and your

25   own person says it's sufficiently secure --

1                    MR. BURGOYNE:  Right.

2                    THE COURT:  -- what's the issue?

3                    MR. BURGOYNE:  Your Honor, that's why we developed the

4      protocol in the first place as part of pilot program.  But what

5      we learned from that is that simply getting the exam to the

6      point where you have a greater sense of comfort on exam security

7      does not resolve all your concerns, Your Honor.

8                    THE COURT:  Okay.

9                    MR. BURGOYNE:  Your Honor, 90, 70 -- 80,000 people,

10     whatever the number is, in that ballpark.  70,000 people take

11     the multistate bar exam every year.  Out of that number -- we

12     don't know the exact number because we don't handle

13     accommodations, we don't offer that exam, but some number, large

14     number, significant number request accommodations.  If we had to

15     do for every examinee -- if suddenly --

16                    THE COURT:  No, I understand.

17                    MR. BURGOYNE:  It's just institutionally, it doesn't

18     work.  We have eight IT people.  If we had to start --

19                    THE COURT:  That's fine.

20                    MR. BURGOYNE:  -- loading laptop computers around the

21     country, it's not a viable option, Your Honor.

22                    THE COURT:  Mr. Goldstein, excuse me, I'm sorry.  I

23     didn't mean to interrupt.

24                    MR. GOLDSTEIN:  Not at all, Your Honor.  I appreciate

25     the interruption.  I wish that there was some record basis for

1   what Mr. Burgoyne just said so we could deal with it.

2         It's pretty obvious that once you make one copy of an

3   electronic version off your mainframe, you can make 20 copies

4   and you can buy 20 laptops, and you can ship 20 laptops the way

5   you can ship one.  And fortunately, there's no cost, because as

6   you know from the Elder -- exhibits to Mr. Elder's deposition,

7   Erica Moeser sent a memorandum after we filed this case to every

8   state bar in the country saying if we're required by a court to

9   do this, each time a state bar gives the exam in accessible

10  format, we're charging five grand to that state bar.

11        And the Maryland Board of Law Examiners has agreed to

12  pony up $15,000 instead of using the laptops that they've got in

13  the JAWS and ZoomText software they've got.  They're prepared to

14  pony up the $15,000 which is represented in Ms. Moeser's

15  memorandum as covering the cost of doing this.

16        So from the point of view of institutional concerns

17  and the balance of equities, two things are absolutely clear on

18  this record:  One, is it's not going to cost the NCBE is a penny

19  now; and, number two, they have a system which sufficiently

20  protects the security which they would follow if they did this.

21  And that was testimony under oath from them.

22        So we're trying to grapple here with fog when there's

23  simply no substance to support this concern.

24        Now, the question was raised, and I think it's a

25  legitimate question.  What if the person that is hired by the

1   board of law examiners can't be trusted?  Just like what if the

2   ACT, which administers the MPRE for the NCBE, should hire

3   somebody who's not qualified or, goodness gracious, hires

4   somebody who's a reader who wasn't qualified?  That would be a

5   bad thing too.

6           What if they hired somebody who was bad?  Well, the

7   fact is, from a security standpoint, there is no security

8   against the dishonest proctor.  There is such a thing as Xerox

9   machines.  There is such a thing as tape recorders.  If that's

10  the problem, it doesn't matter what the security is.

11          If there's a quality issue whether it's a reader or a

12  somebody who advertently saves a copy of the file or makes a

13  photocopy, that's just a problem.

14          THE COURT:  But you can understand wanting to have

15  control?

16          MR. GOLDSTEIN:  Very much.  Your Honor, I'm a trial

17  lawyer.

18          THE COURT:  Also by definition you're a control freak.

19          MR. GOLDSTEIN:  Exactly.  But, as my wife would say

20  undoubtedly -- and I hope she doesn't stand up --

21          THE COURT:  Counsel, we don't have to go there.

22          MR. GOLDSTEIN:  -- there are limits to how much you

23  can and should control.  And the same is true for the NCBE when

24  balance it again the rights of people with disabilities.

25          So it's not that I dismiss their concerns.  What I'm

1    saying to you is that here they are too insubstantial in the

2    face of what else is there.

3         And moving along, the next point I wanted to make is

4    that Mr. Burgoyne pointed to *Fink* and *Jaramillo*, two cases that

5    were decided under 504.  And in their reply, they point out that

6    you said that the operative language of the two statutes would

7    lead one to look to other authority.

8         The problem is the other statute you were referring to

9    was Title II of the ADA.  If you compare the 43 words in Section

10   12189 to the language of 504, you will find that the words "in,"

11   "shall," "with" -- and I think there's one other preposition --

12   are in common in the two statutes.  You weren't talking about

13   whether 12189 should look to 504 for authority.  You were

14   talking about Title II, which reads almost verbatim like Section

15   504, the Rehabilitation Act.

16        And the thing is that *Fink* and *Jaramillo* are no

17   authority for your decision because they were decided under a

18   completely different statute.

19        The *Dobard* case -- and if I could just take a moment

20   to reach it.

21        *Dobard* -- I'm fascinated to hear them cite that in

22   argument, because *Dobard* said it was okay to provide an

23   accommodation that wasn't effective for that particular

24   plaintiff and ruled on that basis.  And that probably is right

25   under Title II, but it's not right here.  You, yourself, said it

1  wouldn't be right if they offered a Braille exam to someone who

2  doesn't read Braille.

3        And the problem is that we are -- for the NCBE is we

4  are under a specific statute.  They talk about having to get

5  down in the weeds if they had to administer the "best ensure"

6  standard, but the fact is, Your Honor, if you look at Section --

7  42 U.S.C. Section 121127 -- excuse me, (b)(7), which is part of

8  Title I, what you see as the standard for exams for employment

9  is exactly the same language we're talking about here, except

10  that the words "best ensure" are placed with "most effective."

11  And I can't parse "best ensure" as meaning anything different

12  than "most effective."

13        Why if this is reasonable to impose on employers for

14  testing, the language is that it's discrimination to fail to

15  select and administer tests concerning employment in the most

16  effective manner to ensure that when such test is administered

17  to a job applicant or employee who has a disability that impairs

18  sensory, manual, or speaking skills, such test accurately

19  reflect the skills, aptitude, or whatever other factor of such

20  applicant or employee that such test purports to measure, rather

21  than reflecting the impaired sensory, manual, or speaking skills

22  of such employee or applicant.

23        "Most effective," "best ensured," nothing to pick with

24  there.  This is an appropriate standard under the ADA.  If

25  that's discrimination, than the DOJ acted appropriately in

1  making the "best ensure" standard define discrimination.

2          I am very intrigued to hear, on the one hand,

3  Mr. Burgoyne say, Well, you know, maybe it is an unfair

4  advantage to give them extra time.  Why would that be a concern

5  of an entity that doesn't offer an examination?  I mean --

6          THE COURT:  Of course it would be.  I mean, if it's

7  the one who professionally designs it.  I mean, obviously he

8  didn't say -- he said they wouldn't make the decision, but I

9  would think they would be -- I think there would be a concern to

10  any fair-minded person, particularly if you're responsible for

11  creating it.

12          MR. GOLDSTEIN:  Well, yes, it is -- I would agree it

13  certainly -- on the other hand, they seem perfectly comfortable

14  with the idea -- extremely offensive idea of having the bar say

15  to the blind, Well, you don't have to stay the multistate; you

16  can be a member of the bar without it.  We're not really that

17  serious about the qualifications we expect our lawyers to make,

18  or We don't think you'll be a success in the law.  Who knows?

19          But I was just appalled by the suggestion that, gee,

20  there's a remedy here because the state can simply waive the

21  blind taking the multistate.

22          But I agree with you that apart from any fair-minded

23  person, the folks that offer the exam that develop it, that want

24  to make sure it's fair, that want to protect its security, that

25  want to make sure that it's comparable year from year, so if

1   that means reusing questions, need to be concerned about things

2   like whether the amount of time is appropriate.  And that's

3   why -- by the way, I pulled --

4        We do have for each one of these, Dr. Miller

5   explaining, for one, that testing is required time and a half

6   for doing -- taking a test with assistive technology using

7   electronic materials.  And that was with respect to Michael

8   Witwer.  We have the same thing for each of plaintiffs

9   explaining why.  So, again, it's a question of documentation

10   versus speculation.

11        Mr. Burgoyne said that we could have pursued this with

12   the state.  If you look at the state rules, we could have

13   pursued an adverse decision by the board, Maryland Board of Law

14   Examiners to the Court of Appeals -- actually to another

15   committee and then a magistrate with the Court of Appeals.  If

16   only we had had an adverse decision.

17        There is no provision, sadly, when the Maryland Board

18   of Law Examiners says, We agree with you completely but we can't

19   do it.  That's why we're here.  I mean, pretty clear where the

20   realm of the Court of Appeals comes out on this issue, but there

21   was no road from A to B.

22        One of the other things that Mr. Burgoyne talked about

23   was effective communications, that these were effective

24   accommodations.  There are two points I'd make there.

25        One is effective communications is a term that's in

1   the regulations in Title III.  It's not a term in the statute.

2   It's one we all accept; it's one we all work with; it's one that

3   makes a lot of sense because the Department of Justice put it in

4   there as the way of implementing the statute.

5          But the other thing is that the record is one-sided

6   here on what's an effective communication; that is to say, you

7   have three uncontested affidavits that for these individuals, a

8   reader is not an effective accommodation; that for these three

9   individuals, Braille is not an effective accommodation, nor is

10  large print, nor is a CCTV.  None of these are effective

11  accommodations, and that expert testimony is uncontradicted on

12  this record.

13         Now, with respect to the issue of irreparable harm,

14  the fact is you only get to it if you're likely to prevail on

15  the merits.  And there's no question that if we're not likely to

16  prevail on the merits, you never have to consider the issue of

17  irreparable harm.  But if we are likely to prevail on the

18  merits, then you look to see how likely the harm is to occur,

19  and sometimes that's tenuous.

20         But here, as a factual matter, there's not much

21  question about it.  If they're forced to take the exam under

22  discriminatory conditions, which is what would happen if they

23  choose to take the exam if you deny the preliminary injunction,

24  that's certain to occur.  Or having to take it later is certain

25  to occur.  But it's always circular.  You always first have to

1   establish you'd like to prevail on the merits because,

2   otherwise, there's not the a harm that's likely to occur.

3           And finally -- and I'm sure, you're glad to hear me

4   say the word "finally."  And, Your Honor, I appreciate your

5   forbearance and the time and attention that you're giving this

6   matter.

7           But, in terms of the balance of the equities, the fact

8   that the NCBE has developed a protocol it finds sufficiently

9   protects the security, coupled with the fact that it can and

10  will recover the cost and administrative time from the Maryland

11  Bar means that the balance of equities tips entirely in favor of

12  the plaintiffs to take the exam with the appropriate

13  accommodation.

14          And, Your Honor, Mr. Burgoyne said maybe the NCBE is

15  not moving fast enough for the plaintiffs.  Mr. Elder didn't

16  choose when he was going to be born and when he was going to

17  finish law school, but he has succeeded in finishing law school

18  and he is entitled now to take the exam under fair conditions.

19  And the -- if the merits are there, if it's warranted, then the

20  NCBE does not have all the time in the world.

21          They have pointed out how long screen-access software

22  has been around.  I think they say it's been around 20 years.

23  Isn't that long enough to figure out whether you can do this or

24  not, and if you can't, to offer a court sound reasons?

25          Unless the Court has further questions, that would be

1  our submission.  Thank you.

2       THE COURT:  Thank you.

3       I'll rule, because I have to, given the time frame,

4  and I am going deny the motion for preliminary injunction.

5  Under Fourth Circuit law to consider four factors, of course,

6  the first of which is whether the party seeking preliminary

7  injunction have established that they are likely to succeed on

8  the merits; secondly, that they are likely to suffer irreparable

9  harm in the absence of preliminary relief; third, that the

10  balance of equities tip in their favor; and, four, that an

11  injunction is in the public interest.

12       I am not -- I cannot find that the plaintiffs have

13  established that they are likely to succeed on the merits.  I

14  agree with them on the subject matter jurisdiction issue, as I

15  indicated earlier in the hearing, and I appreciate

16  Mr. Burgoyne's response to that.

17       And I understand it was appropriate for them to raise

18  a subject -- for the defendant to raise a subject matter

19  jurisdiction issue, but I am persuaded that the *Kimmer* case had

20  to do with allocation of responsibility within and around the

21  court system for matters relating to the bar examinations do not

22  intend to deprive a federal court if they felt that federal

23  rights were being interfered with from issuing an appropriate

24  order.

25       But there are two grounds on which I have concerns;

1   although, I am not certainly not making any final ruling on this

2   at this stage, as to whether had the plaintiffs will succeed on

3   the merits.

4        First, although it as a practice seems

5   counterintuitive and, as I said, cold, I am not persuaded that

6   the defendant offers the examinations in question within the

7   meaning of the statute.  This may very well be an congressional

8   oversight, because certainly there's nothing in the statutes to

9   state that Congress would not have wanted the defendant covered.

10  But the language used is that - U.S.C. Section 12189 is that,

11  quote, "Any person that offers examinations related to licensing

12  for professional purposes shall offer such examinations or

13  courses in a place and manner accessible to persons with

14  disabilities.

15       It is the Maryland Board of Examiners which determines

16  the place and, to some extent, the manner -- although the manner

17  here is in dispute -- but the place of the examination.  And

18  frankly, it seems to me, under Section 12189 is directed not to

19  the test maker but to the person who is actually giving the

20  exam, which in other contexts, in the professional

21  responsibility context, the defendant does, but that is not a

22  test here at issue.

23       I find further support for the concern about whether

24  or not the defendant is an offerer within the meaning of

25  regulations 28 C.F.R. Section 36.309 which requires, quote:  Any

1    private entity offering an examination to be sure, quote, a

2    examination is selected and administered as to best ensure the

3    person's with disabilities are not a disadvantage.

4         That, to me, is not what is involved here.  There is

5    not a selection or administration of this test in any way about

6    a defendant which is a private nonprofit entity.

7         Secondly, even if the defendant does offer the

8    examination within the meaning of the statute, I am not

9    persuaded on the present record that the examination is offered

10   under with the conditions that the defendant is willing to make,

11   renders the -- makes the examination inaccessible.  It is not

12   inaccessible to defendants.

13        Their technical arguments about how -- what other

14   statutes you should look to and it's a little odd to incorporate

15   into a statute language, but I think in context, "accessible"

16   clearly means "reasonably accessible."

17        But in any event, I don't find the term ambiguous; so,

18   therefore, I don't think one turns to implementing regulation.

19   And, frankly, implementing regulation which talks about best

20   ensuring is, to me, inconsistent with what the statute says.

21   The statute is about making the examination accessible, which I

22   think we all would agree is reasonably accessible but that does

23   not convert into best ensure.

24        The issue of -- next the plaintiffs must establish is

25   that they would likely to be suffered irreparable harm in the

1    absence of a preliminary relief.  Frankly, I am inclined to

2    agree with Mr. Goldstein that -- and if I were persuaded that

3    the plaintiffs proved likelihood of success on the merits, the

4    very fact of being subjected to an examination under

5    discriminatory conditions would constitute irreparable harm,

6    even though we don't know whether or not, as a practical matter,

7    plaintiffs would pass the test, which is maybe a potential issue

8    here, but, frankly, it's one I don't think anybody should be

9    subjected to doing something under discriminatory conditions.

10          The balance of equities and whether the injunction is

11   in the public interest seems to me the merge here.  And

12   effectively, Mr. Goldstein certainly wrote excellent papers and

13   made excellent presentation, but I really do think that here the

14   plaintiffs are asking for their preferred method of taking the

15   test.  I think that is what this, in the final analysis, is all

16   about.

17          They may very well be entitled to after a full record

18   is developed; but, frankly -- it may be a conservative instinct

19   on my part, but I think that having the decision as to whether

20   the test is the appropriate one should be -- is best made

21   institutionally after considering of all relevant factors by a

22   party which -- there's nothing on this record to suggest the

23   defendant is in any way biased.  I think that you have various

24   competing concerns, and -- that the defendant needs to consider.

25   And, it seems to me, that that is best resolved by the

1  defendant, not by the plaintiffs choosing the way they want the

2  test administered to them, or by me saying that sounds like a

3  good idea.  It does sound like a good idea to me.

4        I have no reason to doubt anything about these

5  plaintiffs.  They are admirable people, and I have no real

6  reason to doubt what their experts say, but I am uncomfortable

7  in making determination, and also there is -- although, it may

8  be a minimal risk, there is a risk that -- at least enunciated

9  by the defendant -- about the security of the test.  I would not

10 want to be issuing an order which could result in the whole --

11 in insecurity of the bar examination.  So I'm denying the motion

12 for preliminary relief.

13       Now, I realize this is ironic when I now say this

14 because I think the defendant's position was that they're not

15 going to provide materials absent a court order, and I'm not

16 giving the court order.

17       There's nothing to stop the defendant from going back

18 and considering:  This examination is coming up, the Maryland,

19 we can work out security concerns, we can -- we've had a test,

20 you know, there's a pending litigation, let's expand the test

21 and see -- let these three people take the exam with the

22 enhanced material.

23       There's nothing wrong doing voluntary that which has

24 not been ordered, even if you said I'm going to need an order.

25 I realized I'm probably whistling in the wind, but that makes

1  perfect sense to me in the context of this litigation.  The

2  defendant's going to face litigation expenses.  I'm denying his

3  motion to dismiss -- although I think that there's potential

4  merits to his position.  As matter of litigation management, it

5  makes much more sense to consider that issue in the context of

6  the whole case.  And I want a full record developed on the issue

7  of the appropriateness of the test -- excuse me, of the

8  accommodations which have been offered --

9         Excuse me, I should also say in the background, I do

10  find that the defendant has offered accommodations which are

11  historically sound, and they've been accepted by the Department

12  of Justice in other circumstances; in which, frankly, provide a

13  basis to show that it is acting in entirely reasonably to make

14  the examinations accessible to the plaintiffs.

15        That said, there's not wrong with offering a little

16  bit more in term of these tests if there really is a concern.

17  There's certainly litigation expenses faced by the defendant

18  here; there is the uncertainty of the outcome.  There have been

19  tests conducted in the past about these examinations.  I don't

20  know, there may be other concerns, but I certainly wouldn't want

21  the mere fact that the litigation has been brought to prevent a

22  defendant from considering law.

23        These three people, the bar examination is coming up,

24  let them take the bar examination.  They're qualified people.

25  They have doctors who say they need these things.  We can

1      consider, in due course, whether or not we want to expand what

2      we offer to allow the kind of things they're asking for, the

3      JAWS and the Zoom, whatever.  But we don't have to make that

4      decision now, and we can make an accommodation and we can work

5      out with the bar folk ways to make this secure that we're

6      satisfy.  That's my hope.  I realize it is no more than a hope,

7      and it is one which is contradicted by the fact that hasn't

8      happened so far.

9              So that's my ruling.  I am denying the motion for

10     preliminary injunction for the reasons I've stated.  Thank you.

11             (Proceedings adjourned at 4:16 p.m.)

12

13                         *  *  *  *  *  *

14

15             I certify that the foregoing is a correct transcript
       from the record of proceedings in the above-entitled matter.
16     Any redaction of personal data identifiers pursuant to the
       Judicial Conference Policy on Privacy are noted within the
17     transcript.

18

19                              _____
                                Julie A. Wycoff, RPR
                                Official U.S. Court Reporter
20

21

22

23

24

25

**$**

**$15,000 [2]**   60/12 60/14
**$5,000 [1]**   36/23

**1**

**10 percent [1]**   7/20
**10-1418 [1]**   2/6
**10-CV-1418 [1]**   1/6
**100 percent [1]**   29/1
**101 [1]**   1/14
**121 [1]**   15/11
**121127 [1]**   63/7
**12132 [1]**   15/11
**12189 [11]**   12/20 14/23 14/23
19/11 19/14 35/16 43/14
62/10 62/13 69/10 69/18
**13 [1]**   1/12
**1331 [1]**   18/10
**1343 [1]**   18/10
**1418 [2]**   1/6 2/6
**16 [1]**   21/18
**1980s [1]**   51/20

**2**

**20 [4]**   60/3 60/4 60/4 67/22
**2000 [1]**   35/9
**2010 [1]**   1/12
**2013 [1]**   31/20
**2014 [1]**   31/20
**21201 [1]**   1/15
**28 [2]**   43/14 69/25
**2:17 [2]**   1/13 2/1

**3**

**36.309 [2]**   43/14 69/25

**4**

**42 [2]**   15/11 63/7
**43 [1]**   62/9
**467 [1]**   13/18
**48 [1]**   46/2
**4:16 [1]**   74/11

**5**

**504 [6]**   6/23 12/8 62/5 62/10
62/13 62/15

**7**

**70 [1]**   59/9
**70,000 [1]**   59/10

**8**

**80,000 [1]**   59/9
**834 [1]**   13/18
**835 [1]**   13/25
**836 [1]**   14/1

**9**

**90 [1]**   59/9
**90 percent [1]**   7/21

**A**

**a la [1]**   57/19
**abetting [1]**   44/6
**abilities [4]**   12/11 16/7
34/24 57/12
**ability [1]**   27/2
**able [9]**   5/7 6/7 6/8 11/6
22/1 29/14 31/16 52/11 58/1
**about [58]**   5/22 6/4 9/3 9/12

11/24 18/23 18/24 15/4 15/14
15/24 16/5 16/6 16/17 18/2
18/24 19/11 21/2 23/21 24/24
25/22 26/5 26/6 26/12 27/6
27/7 27/7 28/16 31/7 32/17
32/17 32/18 33/10 37/2 39/8
42/15 43/17 45/19 47/18 48/4
54/4 58/19 62/12 62/14 63/4
63/9 64/17 65/1 65/22 66/21
69/23 70/5 70/13 70/19 70/21
71/16 72/4 72/9 73/19
**above [3]**   1/12 48/6 74/15
**above-entitled [1]**   74/15
**absence [2]**   68/9 71/1
**absent [1]**   72/15
**absolutely [4]**   16/25 26/11
54/20 60/17
**abstention [2]**   18/13 18/14
**abstract [1]**   49/10
**academically [1]**   8/5
**accept [4]**   31/23 53/9 53/16
66/2
**accepted [1]**   73/11
**accepting [2]**   44/18 45/21
**access [22]**   3/25 8/4 8/10 9/4
9/15 15/10 15/13 15/23 16/2
16/5 17/7 17/20 17/22 24/17
26/6 29/25 40/13 40/25 41/13
46/8 58/1 67/21
**accessibility [5]**   38/20 39/8
48/22 49/1 50/5
**accessible [30]**   7/2 12/20
15/3 15/4 15/5 16/9 19/16
21/5 21/10 21/19 25/1 28/19
28/21 39/7 39/10 39/12 39/13
47/13 48/25 49/15 49/18
49/18 49/23 60/9 69/13 70/15
70/16 70/21 70/22 73/14
**accommodation [42]**   7/6 7/15
7/24 9/17 9/20 9/24 9/24
10/12 10/22 10/22 10/25 11/1
11/25 12/1 17/19 20/5 26/15
28/7 28/15 28/24 29/9 29/23
30/13 30/16 40/11 45/2 45/4
46/9 46/11 46/17 46/21 47/11
48/15 48/16 50/23 57/6 57/11
62/23 66/8 66/9 67/13 74/1
**accommodations [37]**   8/13 10/4
10/7 10/10 10/17 25/23 30/19
30/22 32/20 34/21 34/22
34/23 35/2 35/4 38/3 38/22
40/7 40/12 40/14 41/18 45/19
47/17 47/18 47/22 48/3 48/13
48/17 50/19 50/23 56/11
56/25 59/13 59/14 65/24
66/11 73/8 73/10
**according [1]**   20/15
**Accordingly [1]**   10/24
**account [2]**   30/4 54/15
**accurately [1]**   63/18
**achieve [1]**   11/6
**achieved [1]**   51/1
**achievement [1]**   11/4
**Act [7]**   23/17 39/2 47/24
48/3 48/7 61/2 62/15
**acted [1]**   63/25
**acting [2]**   35/9 73/13
**actively [1]**   35/5
**activities [1]**   15/17
**actual [1]**   52/8
**actually [9]**   4/7 5/6 16/24

18/7 40/3 41/7   53/8 65/14
69/19
**ADA [16]**   13/20 14/15 22/24
35/17 41/9 41/9 45/19 48/2
48/4 48/23 53/1 53/5 55/12
56/14 62/9 63/24
**ADA's [1]**   50/16
**ADA-supported [1]**   41/9
**addition [2]**   51/11 57/1
**additional [4]**   17/6 17/8
36/24 41/18
**address [3]**   11/2 17/24 34/23
**addressed [2]**   14/12 40/9
**addressing [2]**   44/17 56/9
**adequate [3]**   27/12 27/12
27/14
**adjourned [1]**   74/11
**administer [6]**   20/24 36/23
46/12 46/12 63/5 63/15
**administered [9]**   32/2 37/8
38/8 43/12 43/16 43/19 63/16
70/2 72/2
**administering [2]**   43/10 55/2
**administers [5]**   20/21 20/22
43/2 43/21 61/2
**administration [3]**   35/24 40/4
70/5
**administrative [3]**   36/14
58/23 67/10
**administratively [1]**   45/17
**admirable [1]**   72/5
**admission [1]**   25/13
**Admissions [1]**   47/21
**admitted [1]**   2/12
**adopt [2]**   27/8 36/6
**advantage [4]**   17/14 32/22
57/13 64/4
**adverb [1]**   58/15
**adverse [4]**   6/14 20/3 65/13
65/16
**advertently [1]**   61/12
**affect [2]**   32/21 34/14
**affidavit [4]**   5/13 8/23 37/11
42/5
**affidavits [2]**   8/2 66/7
**affirmative [1]**   28/14
**afforded [1]**   6/5
**after [10]**   6/23 22/15 24/9
27/22 31/24 36/5 38/14 60/7
71/17 71/21
**afternoon [2]**   2/23 3/1
**again [12]**   13/3 19/4 22/2
22/16 30/15 39/7 40/14 46/13
55/12 56/19 61/24 65/9
**against [7]**   22/21 35/14 44/20
48/8 48/8 52/23 61/8
**agencies [3]**   7/8 32/16 32/20
**agency [2]**   24/15 41/11
**agile [1]**   4/21
**ago [2]**   26/3 37/25
**Agranoff [1]**   31/2
**agree [6]**   64/12 64/22 65/18
68/14 70/22 71/2
**agreed [2]**   49/25 60/11
**agreement [4]**   38/6 38/12
38/15 38/19 39/6 47/21
**ahead [1]**   27/15
**aiding [1]**   44/6
**aids [11]**   24/4 24/10 24/14
34/20 38/21 40/17 40/19
40/24 41/6 41/9 41/12

**A**

al [1]   1/4
all [53]   2/7 2/22 3/5 3/13
3/17 5/7 9/7 15/24 16/11
18/15 19/23 20/9 20/12 20/25
22/7 23/5 23/9 23/25 26/1
26/4 26/10 28/3 29/6 30/13
30/19 30/22 32/3 35/18 36/6
36/14 36/25 37/4 39/8 41/19
44/24 48/6 48/7 48/24 49/1
51/4 51/15 52/18 52/19 55/9
58/10 59/7 59/24 66/2 66/2
67/20 70/22 71/15 71/21
allege [1]   52/25
allocating [1]   18/20
allocation [1]   68/20
allow [6]   8/13 9/25 11/3
51/22 57/24 74/2
allowed [1]   42/5
allowing [1]   36/17
allows [5]   5/5 8/11 9/5 9/9
22/3
allows someone [1]   5/5
almost [2]   34/19 62/14
alone [3]   14/12 27/19 39/3
along [3]   19/1 32/3 62/3
already [4]   6/23 51/13 51/25
52/24
also [21]   2/11 4/10 5/8 6/16
6/25 8/12 24/25 32/19 33/10
36/25 38/5 40/17 43/24 50/17
55/4 55/11 57/3 58/17 61/18
72/7 73/9
alter [5]   7/1 7/2 7/16 28/8
57/15
alteration [1]   57/4
alternative [4]   8/13 15/4
45/7 55/5
alternatives [2]   8/12 8/21
alters [1]   57/7
although [6]   28/12 69/1 69/4
69/16 72/7 73/3
altogether [1]   12/20
always [4]   17/11 33/13 66/25
66/25
am [11]   20/10 64/2 68/4
68/12 68/19 69/1 69/5 70/8
71/1 72/6 74/9
ambiguous [6]   12/19 14/3 15/6
48/22 49/4 70/17
ambivalent [1]   13/4
Americans [5]   23/17 39/2
47/24 48/2 48/7
among [1]   42/1
amount [3]   17/20 42/2 65/2
amounts [1]   34/19
analogies [1]   44/5
analogous [1]   52/10
analysis [3]   34/19 55/21
71/15
Anne [1]   2/15
another [7]   2/14 2/15 15/8
19/1 19/2 30/5 65/14
answer [1]   42/9
answers [1]   4/12
any [35]   2/20 3/12 7/5 9/22
10/3 10/7 10/13 12/4 12/9
14/23 15/13 17/14 18/14 21/3
30/20 30/20 31/6 39/15 42/19
46/15 46/20 46/21 47/4 50/18

69/11 69/25 70/5 70/17 71/23
74/16
anybody [5]   3/12 5/18 49/7
54/14 71/8
anyone [1]   17/14
anything [7]   3/12 12/10 19/8
24/24 26/5 63/11 72/4
anywhere [1]   23/1
apart [1]   64/22
appalled [1]   64/19
apparent [1]   12/21
appeal's [1]   18/19
appeals [6]   18/21 34/1 45/18
65/14 65/15 65/20
appear [2]   9/21 50/9
APPEARANCES [1]   1/17
appeared [1]   50/2
appearing [5]   1/19 1/21 1/22
2/24 50/10
applicant [3]   63/17 63/20
63/22
applicants [1]   19/13
application [2]   7/8 50/16
applications [1]   14/25
applied [1]   6/23
applies [2]   18/15 21/3
apply [6]   7/5 10/14 12/12
18/15 18/18 18/24
appreciate [3]   59/24 67/4
68/15
approach [7]   26/24 28/2 45/7
47/23 55/12 56/21 57/8
approaching [1]   38/3
appropriate [33]   9/24 14/7
16/20 16/21 17/1 17/8 17/15
17/21 20/5 20/7 24/4 24/14
28/7 28/15 28/20 33/1 34/2
38/21 39/7 40/24 41/12 46/9
46/11 49/14 57/6 57/10 58/12
63/24 65/2 67/12 68/17 68/23
71/20
appropriately [2]   39/4 63/25
appropriateness [1]   73/7
approved [1]   25/24
approximately [1]   36/23
aptitude [1]   63/19
arbitrary [4]   12/22 13/22
14/2 46/16
are [90]
are here [1]   26/16
aren't [5]   11/24 16/6 27/5
44/7 45/12
argue [1]   31/14
argued [2]   54/9 56/12
arguing [1]   47/10
argument [16]   3/13 6/19 10/9
12/14 12/16 13/16 17/25 19/2
19/9 20/4 24/7 25/25 34/3
53/1 54/5 62/22
arguments [2]   35/14 70/13
armed [1]   13/14
around [6]   5/1 38/18 59/20
67/22 67/22 68/20
arrangements [3]   15/4 22/10
43/11
as [100]
aside [1]   34/25
ask [9]   3/15 16/8 26/11 27/3
27/7 42/4 42/8 54/4 58/18
asked [4]   2/19 5/20 49/6

asking [8]   5/21 9/20 26/16
27/14 41/25 58/11 71/14 74/2
asks [1]   10/25
aspects [1]   21/21
assertion [1]   6/13
asserts [4]   6/12 6/16 6/25
7/24
assistant [4]   1/22 2/18 3/2
35/9
assisting [1]   54/25
assistive [1]   65/6
assume [2]   52/20 52/20
attain [1]   11/4
attention [3]   34/5 39/22 67/5
attorney [3]   1/23 2/18 3/2
authorities [1]   16/18
authority [7]   13/2 13/19
19/20 21/6 62/7 62/13 62/17
auxillary [10]   24/4 24/10
34/20 38/21 40/17 40/19
40/24 41/6 41/9 41/12
available [14]   24/11 24/19
35/7 36/3 37/18 38/9 41/6
41/16 44/16 45/20 46/18 47/1
47/5 49/13
away [1]   18/14

**B**

back [7]   2/21 5/1 5/12 9/3
24/21 55/12 72/17
background [2]   26/24 73/9
bad [3]   7/21 61/5 61/6
balance [9]   53/13 55/15 55/20
60/17 61/24 67/7 67/11 68/10
71/10
balanced [1]   55/12
balancing [1]   26/22
ballpark [1]   59/10
Baltimore [1]   1/15
bar [49]   1/7 2/5 2/19 2/25
20/21 22/6 23/13 26/19 31/10
32/1 35/3 35/3 35/20 36/10
37/3 38/1 40/23 42/7 43/20
43/20 43/22 43/22 43/23
44/10 44/15 44/21 45/3 45/9
45/24 50/21 52/11 52/16
52/18 53/23 57/24 57/25 58/7
59/11 60/8 60/9 60/10 64/14
64/16 67/11 68/21 72/11
73/23 73/24 74/5
barrier [1]   6/15
bars [1]   22/3
BART [2]   7/14 7/17
basis [9]   6/9 8/11 8/14 10/6
33/1 39/3 59/25 62/24 73/13
BASRAWI [2]   1/22 3/2
battle [2]   32/18 32/19
be [113]
because [35]   4/9 5/13 8/24
13/18 14/11 15/21 18/2 19/6
20/24 21/16 23/13 24/25 25/1
27/17 27/21 27/22 29/19
29/23 33/4 33/9 37/19 39/24
41/25 42/25 58/3 59/12 60/5
62/17 62/22 64/20 66/3 67/1
68/3 69/8 72/14
become [1]   9/15
becomes [2]   28/15 53/11
been [39]   12/9 17/9 22/19
25/2 25/23 26/15 26/17 28/16

**B**

been... **[31]**  30/8 32/9 32/15 37/8 38/1 40/24 40/25 46/8 46/10 47/2 48/13 49/14 50/6 50/15 52/7 52/20 52/23 54/23 56/1 56/18 56/19 57/8 58/11 58/20 67/22 67/22 72/24 73/8 73/11 73/18 73/21
**before [7]**  1/13 25/22 26/4 30/14 34/12 47/15 50/10
**beforehand [1]**  4/2
**began [1]**  14/15
**behalf [7]**  1/19 1/21 1/22 2/10 2/24 3/3 8/22
**behind [2]**  44/7 44/9
**being [18]**  6/7 6/8 15/22 18/23 32/1 33/10 36/3 46/16 52/11 52/14 52/17 52/21 53/9 53/20 53/21 54/11 68/23 71/4
**belief [1]**  51/24
**believe [15]**  5/25 7/23 10/12 17/13 17/17 18/22 25/11 39/3 47/13 51/13 51/21 55/13 55/25 56/1 56/4
**believes [1]**  35/21
**Belinda [2]**  3/11 3/19
**benefit [1]**  16/24
**benefits [1]**  15/17
**best [28]**  11/9 11/15 11/16 12/6 12/10 28/22 29/8 30/10 34/17 34/23 36/1 43/16 43/17 48/16 49/19 49/22 50/3 50/13 63/5 63/10 63/11 63/23 64/1 70/2 70/19 70/23 71/20 71/25
**better [3]**  19/5 54/16 57/16
**between [4]**  5/13 11/12 18/20 32/15
**beyond [1]**  34/15
**biased [2]**  54/14 71/23
**bit [4]**  50/2 52/21 55/16 73/16
**bite [1]**  32/8
**Blackfield [3]**  2/15 8/3 8/18
**Blackwelder [2]**  51/5 51/6
**blind [11]**  7/20 30/19 30/22 35/4 38/7 38/24 39/11 47/3 47/20 64/15 64/21
**board [21]**  18/2 19/7 19/21 20/3 21/23 22/12 23/25 27/18 36/18 37/20 37/22 41/20 43/20 43/22 44/21 60/1 61/1 65/13 65/13 65/17 69/15
**Board's [1]**  44/24
**boards [5]**  23/2 35/3 44/10 44/16 54/24
**book [2]**  6/25 7/6
**books [1]**  7/1
**born [1]**  67/16
**both [8]**  12/16 36/14 39/13 41/11 41/24 44/3 50/25 57/14
**boundaries [1]**  57/3
**boundary [2]**  57/4 57/4
**Braille [13]**  7/1 7/3 7/19 7/20 29/11 29/18 29/18 29/20 32/18 41/15 63/1 63/2 66/9
**Breimhorst [1]**  7/9
**Breyer [1]**  24/8
**brief [4]**  35/17 38/10 44/22 46/25
**briefed [2]**  27/5 28/13

**briefing [1]**  3/4
**briefly [1]**  30/24
**bright [4]**  5/3 5/3 50/6 50/8
**broad [3]**  14/16 23/16 41/17
**broader [2]**  43/3 44/1
**broadly [1]**  54/22
**brought [1]**  73/21
**Brown [3]**  2/10 2/11 31/13
**brush [1]**  14/16
**Brye [2]**  36/9 58/6
**building [1]**  21/18
**built [1]**  45/16
**burden [3]**  40/10 57/3 57/15
**burdened [1]**  31/5
**burdensome [3]**  28/8 28/10 57/7
**BURGOYNE [15]**  1/20 2/24 19/5 20/15 26/11 27/3 33/20 57/21 58/18 60/1 62/4 64/3 65/11 65/22 67/14
**Burgoyne's [2]**  18/18 68/16
**business [1]**  56/18
**buy [2]**  45/25 60/4

**C**

**C.F.R [2]**  43/14 69/25
**California [1]**  49/25
**call [2]**  34/2 34/5
**called [4]**  17/11 38/7 47/2 51/8
**calling [1]**  50/14
**calls [1]**  50/4
**can [55]**  3/6 3/6 4/1 4/2 4/3 4/4 4/7 4/15 4/17 5/1 5/11 7/13 11/15 11/23 13/5 17/23 18/17 18/24 19/9 20/11 21/12 21/15 22/15 23/1 25/20 29/10 29/10 31/8 31/18 33/13 34/13 34/20 41/15 41/20 43/7 47/4 49/24 54/8 56/17 57/11 60/3 60/4 60/4 60/5 61/14 61/23 64/16 64/20 67/9 67/23 72/19 72/19 73/25 74/4 74/4
**can't [16]**  9/11 12/21 18/3 18/5 18/6 18/23 23/14 23/15 29/12 31/22 32/6 53/16 61/1 63/11 65/18 67/24
**cannot [4]**  5/18 14/1 21/11 68/12
**capabilities [1]**  10/1
**capable [1]**  54/25
**capricious [1]**  13/22
**capture [1]**  39/13
**carefully [1]**  18/13
**Carolina [1]**  51/21
**cart [1]**  57/19
**case [49]**  1/6 2/5 6/3 7/14 10/21 13/6 13/20 14/16 14/17 20/1 22/23 22/23 23/19 24/24 24/24 25/20 26/2 27/16 29/7 30/6 34/11 34/14 35/1 36/4 36/15 36/19 37/15 38/17 38/22 39/8 40/3 40/9 41/9 48/21 50/1 50/12 50/24 52/4 52/22 53/12 55/20 55/22 56/2 56/5 57/25 60/7 62/19 68/19 73/6
**cases [11]**  7/8 13/9 13/15 14/14 39/20 40/2 50/15 52/9 52/10 52/11 62/4
**category [1]**  48/9

**CCTV [2]**  56/6 56/16
**CD [2]**  5/18 42/17
**central [1]**  47/15
**certain [6]**  10/10 13/14 17/17 32/20 66/24 66/24
**certainly [26]**  23/13 26/18 27/3 32/15 34/6 34/11 34/15 37/5 37/22 39/15 40/19 44/16 47/6 49/7 51/14 52/7 52/14 55/4 55/19 56/1 64/13 69/1 69/8 71/12 73/17 73/20
**certification [1]**  14/25
**certify [1]**  74/15
**cetera [1]**  43/12
**Chalk [1]**  31/2
**challenge [1]**  16/14
**change [2]**  4/13 11/16
**changed [1]**  51/4
**changes [1]**  26/4
**characterization [1]**  46/23
**characterize [2]**  26/25 38/13
**charging [1]**  60/10
**CHARLES [1]**  1/19
**cheating [1]**  51/21
**choice [2]**  5/22 11/11
**choices [2]**  5/13 11/16
**choose [7]**  4/7 4/10 4/13 4/17 27/2 66/23 67/16
**choosing [2]**  54/18 72/1
**chose [2]**  17/2 56/20
**chosen [1]**  6/6
**circuit [10]**  18/21 31/2 31/19 32/1 51/5 51/6 52/6 52/9 56/3 68/5
**circular [2]**  52/21 66/25
**circumstances [5]**  6/18 22/3 56/4 56/5 73/12
**cite [2]**  11/3 62/21
**cited [6]**  7/9 7/13 12/16 14/14 15/24 52/9
**cites [1]**  17/23
**civil [11]**  1/23 3/3 6/13 18/11 35/10 53/2 53/2 53/6 53/12 56/15 56/16
**claim [7]**  10/7 10/15 12/9 18/11 24/21 28/11 46/21
**claims [3]**  18/11 23/19 40/2
**classic [1]**  21/25
**clear [7]**  7/9 12/13 12/18 14/5 14/12 15/23 15/24 16/11 17/6 20/11 20/12 22/2 27/10 31/3 32/25 32/25 51/9 51/10 55/24 58/4 60/17 65/19
**clearly [8]**  12/23 14/1 24/15 38/19 43/9 48/18 51/4 70/16
**client [2]**  26/21 35/21
**clients [6]**  26/25 27/1 28/19 29/20 54/25 57/25
**clinic [1]**  8/10
**close [2]**  4/11 25/21
**co [1]**  43/7
**co-offerer [1]**  43/7
**cognitive [2]**  8/24 8/25
**cold [5]**  16/16 16/22 16/25 19/4 69/5
**come [3]**  5/1 26/4 37/7
**comes [4]**  35/18 52/1 52/22 65/20
**comfort [3]**  35/22 36/22 59/6
**comfortable [1]**  64/13
**coming [3]**  38/14 72/18 73/23

## C

**command [2]** 7/4 7/5
**commands [2]** 7/22 7/25
**commas [1]** 4/16
**commenced [1]** 2/1
**commencing [1]** 1/13
**comments [1]** 34/8
**committee [1]** 65/15
**common [3]** 9/15 10/20 62/12
**communication [1]** 66/6
**communications [2]** 65/23 65/25
**community [1]** 32/16
**comparable [1]** 64/25
**compare [1]** 62/9
**compared [1]** 56/22
**compelled [1]** 33/18
**compete [6]** 6/5 6/8 7/25 8/11 8/20 10/6
**competent [3]** 14/3 14/6 54/24
**competing [1]** 71/24
**competition [1]** 8/14
**complainant [1]** 26/8
**complaint [1]** 26/2
**completely [3]** 14/5 62/18 65/18
**component [1]** 45/10
**computer [8]** 16/18 30/5 36/18 36/20 42/15 42/16 42/18 45/3
**computers [2]** 37/10 59/20
**concept [2]** 39/14 41/10
**concepts [1]** 52/5
**concern [7]** 26/20 58/24 60/23 64/4 64/9 69/23 73/16
**concerned [1]** 65/1
**concerning [1]** 63/15
**concerns [18]** 19/20 27/5 27/6 27/9 32/19 32/23 34/9 37/1 45/18 46/17 55/3 59/7 60/16 61/25 68/25 71/24 72/19 73/20
**conclude [6]** 39/1 39/4 40/7 41/7 46/15 54/1
**concluded [4]** 35/9 36/15 39/21 53/25
**conclusion [3]** 43/6 44/4 47/4
**conclusive [1]** 13/16
**condition [3]** 21/9 21/12 31/10
**conditions [7]** 21/13 21/14 66/22 67/18 70/10 71/5 71/9
**conducted [1]** 73/19
**CONFERENCE [13]** 1/7 2/5 2/25 22/6 36/10 38/1 40/22 43/23 50/1 50/21 55/17 58/7 74/16
**conflicts [1]** 33/9
**congratulated [1]** 38/2
**Congress [7]** 13/18 14/15 19/8 19/8 41/11 44/17 69/9
**congressional [5]** 6/22 12/25 14/10 15/25 69/7
**consequences [1]** 53/23
**conservative [1]** 71/18
**consider [9]** 16/8 22/21 25/14 33/5 66/16 68/5 71/24 73/5 74/1
**considerably [1]** 4/3
**considered [2]** 14/1 30/9
**considering [3]** 71/21 72/18 73/22

**consistent [3]** 14/2 16/23 47/23
**constantly [1]** 9/2
**constitute [4]** 23/11 52/12 53/22 71/5
**constitutes [2]** 52/15 53/11
**construction [1]** 43/5
**construe [1]** 13/19
**construed [1]** 54/22
**construing [1]** 57/5
**contained [1]** 5/17
**contemplating [1]** 33/6
**content [2]** 9/10 9/12
**contentiousness [1]** 32/15
**context [16]** 3/7 11/23 29/4 42/8 47/19 48/1 48/23 48/24 49/18 50/16 52/4 56/16 69/21 70/15 73/1 73/5
**contexts [1]** 69/20
**contextual [1]** 4/11
**continue [1]** 51/23
**contradicted [3]** 8/15 58/5 74/7
**contrary [5]** 12/21 13/22 16/3 16/8 33/8
**control [10]** 22/16 23/10 37/6 37/12 37/14 37/21 37/22 61/15 61/18 61/23
**controlling [3]** 13/21 19/15 51/19
**controls [3]** 6/17 6/18 22/3
**Conversely [1]** 35/25
**convert [2]** 33/15 70/23
**convey [2]** 10/10 35/17
**copies [2]** 32/19 60/3
**copy [3]** 21/24 60/2 61/12
**copyright [1]** 21/24
**correct [7]** 18/4 29/21 43/6 45/4 45/21 53/16 74/15
**correctly [2]** 35/13 41/14
**cost [7]** 36/14 36/22 58/23 60/5 60/15 60/18 67/10
**cost-administrative [1]** 36/14
**could [31]** 2/16 4/10 6/15 7/18 11/9 11/16 11/17 11/17 12/24 15/20 16/8 19/22 21/23 27/24 32/21 34/14 34/15 36/12 39/4 40/7 42/14 45/5 45/8 49/4 53/9 56/25 60/1 62/19 65/11 65/12 72/10
**couldn't [4]** 19/24 26/2 29/18 40/4
**Council [1]** 47/22
**counsel [4]** 2/8 3/2 7/14 50/12 61/21
**counterintuitive [1]** 69/5
**country [2]** 59/21 60/8
**coupled [1]** 67/9
**course [10]** 3/22 4/17 21/12 23/8 27/24 31/19 31/21 64/6 68/5 74/1
**courses [3]** 14/24 15/2 69/13
**court [58]** 1/1 1/25 2/2 2/20 3/15 6/12 7/14 10/13 10/21 10/24 12/17 12/17 13/11 13/17 13/24 14/3 14/4 14/5 14/14 17/24 18/10 18/19 18/20 18/21 18/22 18/23 30/14 31/14 34/1 39/3 40/6 40/9 40/15 41/8 45/18 47/14 47/15 47/25 48/11 49/25 50/13

**court's [4]** 48/21 52/10 54/25 55/20 60/8 65/14 65/15 65/20 67/24 67/25 68/21 68/22 72/15 72/16 74/19
**Court's [1]** 39/22
**Court's attention [1]** 39/22
**courthouse [2]** 1/14 15/21
**courtroom [2]** 2/17 2/20
**courts [5]** 39/20 48/12 51/4 51/25 54/24
**cover [1]** 17/20
**covered [1]** 69/9
**covering [1]** 60/15
**crawl [4]** 15/20 31/8 49/4 49/7
**crazy [1]** 30/4
**creating [1]** 64/11
**credentialing [1]** 14/25
**criminal [1]** 44/5
**critical [3]** 9/10 10/18 57/21
**criticized [1]** 38/2
**curiosity [1]** 45/24
**cursor [3]** 4/23 4/24 5/7
**Curtis [1]** 2/18
**CV [1]** 1/6

## D

**D'Amico [1]** 31/1
**damaged [3]** 31/21 31/21 52/17
**DANIEL [2]** 1/18 2/9
**darn [1]** 19/6
**data [1]** 74/16
**day [1]** 48/12
**deal [2]** 25/3 60/1
**dealing [2]** 19/14 40/18
**deals [1]** 48/5
**dealt [1]** 13/13
**debater's [1]** 52/13
**decade [1]** 26/3
**decide [1]** 57/18
**decided [5]** 27/24 36/6 36/7 62/5 62/17
**decides [1]** 37/23
**decision [19]** 12/17 18/19 20/3 27/20 32/14 34/1 34/2 42/4 42/19 50/6 51/6 51/20 52/2 62/17 64/8 65/13 65/16 71/19 74/4
**decision-making [1]** 32/14
**decisions [3]** 18/1 48/11 52/6
**declaration [2]** 36/8 36/9
**deemed [2]** 26/15 30/8
**deep [1]** 32/13
**default [1]** 4/2
**defective [1]** 12/15
**defendant [24]** 1/8 1/21 19/18 20/18 20/20 20/21 21/6 30/8 68/18 69/6 69/9 69/21 70/6 70/6 70/7 70/10 71/23 71/24 72/1 72/9 72/17 73/10 73/17 73/22
**defendant's [2]** 72/14 73/2
**defendants [1]** 70/12
**defense [2]** 7/12 7/14
**defenses [1]** 28/14
**defer [1]** 13/1
**define [3]** 14/6 14/8 64/1
**definitely [2]** 32/6 32/6
**definition [6]** 21/25 22/18 22/19 53/3 53/6 61/18
**degree [1]** 23/10

**D**

delay [1]  31/12
delayed [1]  31/3
delegated [1]  13/18
delighted [1]  17/9
delightful [1]  50/10
deliver [1]  38/25
delivered [1]  24/11
demanded [1]  35/6
demonstrate [2]  3/15 35/12
demonstrated [2]  26/24 30/1
demonstrating [1]  37/17
demonstration [4]  3/21 3/24
  5/16 6/1
denied [2]  15/17 31/3
deny [2]  66/23 68/4
denying [3]  72/11 73/2 74/9
Department [13]  8/17 12/23
  35/8 35/10 38/6 38/14 38/16
  38/23 47/2 47/17 56/12 66/3
  73/11
deposition [2]  33/14 60/6
depositions [1]  31/14
deprivation [1]  6/13
deprive [1]  68/22
deprived [1]  52/17
described [1]  12/1
describing [1]  58/9
deservedly [1]  32/14
designed [1]  15/9
designs [1]  64/7
Despite [1]  7/3
determination [1]  72/7
determinative [1]  23/19
determine [1]  30/10
determined [1]  42/1
determines [1]  69/15
develop [3]  45/8 46/12 64/23
developed [10]  24/19 26/17
  27/19 33/13 44/12 58/9 59/3
  67/8 71/18 73/6
develops [2]  6/17 45/9
devise [1]  22/25
devote [1]  36/24
did [8]  12/24 19/19 21/6
  37/11 50/1 50/25 56/23 60/20
didn't [15]  17/3 17/10 24/23
  25/1 25/7 27/8 33/8 42/1
  42/3 46/9 46/24 50/11 59/23
  64/8 67/15
difference [2]  11/12 12/4
different [7]  4/5 23/3 46/18
  51/24 56/20 62/18 63/11
difficulties [1]  11/2
directed [1]  69/18
directions [1]  57/14
directly [2]  6/21 52/10
director [1]  58/6
disabilities [20]  10/2 12/12
  15/3 16/8 19/17 21/5 23/17
  31/15 34/16 34/24 39/2 47/24
  48/3 48/7 48/9 56/24 57/13
  61/24 69/14 70/3
disability [6]  11/3 15/15
  15/16 31/12 32/16 63/17
disadvantage [1]  70/3
disagree [2]  23/20 35/15
disagreed [1]  50/9
discovery [1]  27/22
discriminated [1]  52/23

discrimination [9]  10/12
  32/11 48/8 52/20 54/10 63/14
  63/25 64/1
discriminatory [6]  52/15
  53/10 53/20 66/22 71/5 71/9
discussed [1]  3/7
discussing [1]  18/14
discussion [1]  48/20
discussions [1]  34/10
dishonest [1]  61/8
dismiss [5]  1/12 3/6 6/11
  61/25 73/3
dispute [4]  8/7 17/10 30/11
  69/17
disputed [1]  9/18
disseminates [1]  6/17
distinction [1]  46/14
distinguishing [1]  58/4
distribution [2]  22/10 22/11
district [3]  1/1 1/1 52/10
DIVISION [4]  1/2 1/23 3/3
  56/15
do [60]  4/25 5/21 7/4 7/19
  9/5 10/8 11/23 17/10 17/16
  17/18 18/19 18/21 19/18
  19/21 22/4 23/11 23/20 24/6
  27/10 28/4 28/6 28/11 30/18
  31/15 31/16 33/16 34/19
  35/25 37/22 38/24 39/15
  39/17 40/21 41/2 41/4 41/5
  41/20 42/4 42/8 42/13 44/17
  46/24 47/7 47/12 47/14 49/21
  49/22 54/22 56/4 58/18 58/22
  59/15 60/9 65/4 65/19 67/23
  68/20 68/21 71/13 73/9
Dobard [5]  7/13 41/9 62/19
  62/21 62/22
doctorate [2]  8/25 8/25
doctors [1]  73/25
doctrines [2]  18/13 18/14
documentation [4]  42/25 43/2
  45/6 65/9
documents [2]  42/24 42/25
Doe [1]  7/9
does [24]  3/12 7/5 9/19 12/5
  16/6 19/2 19/18 25/15 25/17
  36/6 37/23 37/23 39/24 44/4
  47/17 50/22 50/22 52/12 59/7
  67/20 69/21 70/7 70/22 72/3
doesn't [22]  6/16 7/16 14/6
  19/12 19/12 19/13 23/11
  24/21 29/9 29/22 36/5 36/25
  37/9 44/23 45/13 45/22 57/14
  59/17 61/10 61/20 63/2 64/5
doing [8]  7/7 22/20 24/13
  36/13 60/15 65/6 71/9 72/23
DOJ [6]  14/16 25/24 39/5
  39/9 39/13 63/25
don't [67]  3/8 3/16 3/17
  9/22 9/23 11/8 11/15 16/11
  17/7 19/6 19/7 23/7 23/24
  25/2 25/25 26/9 26/18 26/21
  27/6 27/15 27/16 27/17 27/22
  28/12 29/8 29/19 33/5 33/5
  33/6 37/6 37/7 37/10 37/12
  37/14 37/18 37/21 37/22
  38/13 40/19 44/17 44/18
  46/15 46/23 47/3 48/20 48/21
  49/6 50/8 51/15 53/3 54/5
  55/7 55/8 55/25 56/1 59/12
  59/12 59/13 61/21 64/15

discrimination [9]  ... 64/7 70/23 71/6 71/6 71/8
  73/19 74/3
done [7]  5/18 9/5 9/21 20/21
  36/15 38/23 55/14
double [2]  16/20 42/9
doubt [2]  72/4 72/6
Doug [1]  26/1
down [4]  9/4 34/18 35/18
  63/5
dozens [2]  34/14 50/15
Dr [2]  9/8 65/4
Dr. [4]  8/9 8/22 8/23 9/14
Dr. Malkin [1]  8/9
Dr. Schroeder [1]  9/14
Dr. Stimson [1]  8/22
Dr. Stimson's [1]  8/23
drafting [1]  46/25
Drawing [1]  44/5
drive [1]  5/17
due [2]  27/24 74/1
duties [1]  11/17
duty [1]  22/13
dying [1]  33/14

**E**

each [5]  4/12 57/17 60/9
  65/4 65/8
earlier [1]  68/15
easier [1]  5/12
economies [1]  36/12
education [2]  15/1 51/23
EEOC [1]  14/17
effect [2]  13/16 27/1
effective [20]  6/2 7/15 11/1
  12/7 24/10 24/18 30/13 34/9
  62/23 63/10 63/12 63/16
  63/23 65/23 65/23 65/25 66/6
  66/8 66/9 66/10
effectively [2]  44/7 71/12
eight [1]  59/18
either [9]  17/3 21/17 27/19
  28/14 39/1 40/20 44/6 55/25
  57/14
ELDER [9]  1/4 2/5 2/14 3/25
  8/3 8/22 31/12 60/6 67/15
Elder's [1]  60/6
elected [1]  44/13
electronic [7]  7/3 18/5 21/24
  46/19 57/24 60/3 65/7
elevates [1]  48/5
elevator [1]  21/18
Elliott's [1]  26/1
ellipsis [1]  21/3
else [3]  17/14 29/5 62/2
elsewhere [1]  56/23
emergency [1]  2/16
emphasized [1]  48/2
employee [5]  11/4 11/13 63/17
  63/20 63/22
employee's [2]  11/2 11/21
employer [3]  11/11 11/23
  48/13
employer's [3]  11/11 11/20
  11/23
employers [3]  9/16 46/9 63/13
employment [4]  11/12 48/1
  63/8 63/15
enable [1]  4/20
enabled [1]  51/1
encouraged [2]  35/5 38/24
end [3]  44/23 48/12 57/25

**E**

ends [1]  44/22
enforce [1]  18/23
enforcement [1]  14/10
enforcing [1]  56/16
engineers [1]  22/22
enhanced [1]  72/22
enough [4]  27/6 55/7 67/15 67/23
ensure [17]  12/6 12/10 28/23 34/17 34/23 40/12 43/16 43/17 50/3 50/13 63/5 63/10 63/11 63/16 64/1 70/2 70/23
ensured [1]  63/23
ensures [2]  29/8 49/22
ensuring [3]  6/4 47/7 70/20
entered [4]  38/6 38/15 39/4 47/20
entirely [5]  26/15 29/1 30/9 67/11 73/13
entities [3]  6/24 7/11 46/11
entitled [11]  31/5 32/11 32/23 40/11 40/13 48/10 48/14 48/19 67/18 71/17 74/15
entitles [1]  57/10
entity [12]  15/18 41/20 42/20 43/1 43/6 43/15 43/21 43/22 48/14 64/5 70/1 70/6
enunciated [1]  72/8
Enyard [2]  31/1 50/1
Enyart [3]  24/9 24/20 24/24
equal [27]  6/5 6/8 7/25 8/11 8/14 8/19 8/20 10/6 11/4 15/10 15/13 15/23 16/2 16/5 17/22 28/25 29/9 29/25 38/21 39/14 39/16 39/19 39/24 40/12 46/22 47/6 47/8
equities [10]  26/22 51/11 53/14 55/16 55/19 60/17 67/7 67/11 68/10 71/10
equivalent [2]  42/6 42/14
Erica [1]  60/7
Esq [5]  1/18 1/18 1/19 1/20 1/22
essay [1]  45/10
essentially [2]  9/5 12/8
establish [2]  67/1 70/24
established [5]  30/7 52/24 53/6 68/7 68/13
establishes [2]  5/14 8/23
estopped [1]  25/5
estoppel [1]  25/19
et [2]  1/4 43/12
evaluate [1]  50/22
even [12]  6/14 23/2 23/4 27/11 33/11 37/15 42/15 48/14 58/22 50/7 71/6 72/24
event [2]  12/4 70/17
events [1]  55/9
ever [1]  42/25
every [8]  21/8 34/21 51/1 52/22 53/4 59/11 59/15 60/7
everybody [1]  44/24
everything [1]  29/5
evidence [5]  10/3 28/5 42/23 46/21 50/18
evolving [2]  35/18 35/19
exact [1]  59/12
exactly [4]  30/2 35/7 61/19

exam [81]
examination [27]  6/18 19/3 26/19 27/18 28/20 31/6 35/21 44/4 44/13 44/15 45/3 47/13 52/11 54/19 64/5 69/17 70/1 70/2 70/8 70/9 70/11 70/21 71/4 72/11 72/18 73/23 73/24
examinations [13]  14/24 15/2 21/3 21/4 23/3 46/12 46/13 68/21 69/6 69/11 69/12 73/14 73/19
examinee [3]  6/21 36/17 59/15
examinees [2]  19/12 48/6
examiners [27]  1/7 2/5 2/19 2/25 18/2 19/7 20/3 21/23 22/6 22/12 35/3 37/3 38/1 40/23 43/20 43/22 43/23 44/10 44/21 45/25 50/21 58/7 60/11 61/1 65/14 65/18 69/15
Examiners' [1]  36/10
example [11]  4/4 4/10 4/18 7/13 15/8 15/8 30/12 32/22 34/17 37/15 40/3
exams [8]  6/23 23/2 36/3 38/8 38/25 44/11 47/5 63/8
excellent [2]  71/12 71/13
except [3]  17/5 19/6 63/9
exceptions [1]  18/12
excited [1]  4/8
exclamation [1]  4/7
excluded [2]  15/16 15/22
exclusive [1]  24/16
excuse [9]  4/25 8/9 21/22 21/22 23/23 59/22 63/7 73/7 73/9
exhaustive [1]  40/20
Exhibit [2]  22/5 58/7
exhibits [2]  3/12 60/6
exist [2]  15/22 26/9
expand [2]  72/20 74/1
expect [1]  64/17
expenses [2]  73/2 73/17
experience [1]  56/17
expert [2]  37/10 66/11
experts [3]  8/8 8/9 72/6
explain [2]  8/21 52/3
explained [3]  8/10 8/18 24/8
explaining [2]  65/5 65/9
explains [4]  8/12 9/1 9/8 9/14
explicitly [2]  13/18 24/8
expressed [1]  33/25
expressing [1]  9/22
extent [3]  34/15 52/5 69/16
extra [5]  41/18 42/19 42/20 42/24 64/4
extraordinary [4]  26/16 27/15 27/25 56/4
extremely [2]  33/25 64/14
eye [2]  2/16 17/12

**F**

face [5]  33/17 51/15 58/22 62/2 73/2
faced [1]  73/17
facilitating [1]  14/10
fact [31]  5/11 7/3 7/15 7/16 7/19 7/22 9/2 17/17 26/7 26/14 27/7 29/18 32/10 35/5 35/13 41/16 41/24 42/13

45/7 45/23 49/9 49/21 53/13 53/17 61/7 63/6 66/14 67/7 67/9 71/4 73/21 74/7
facto [2]  53/10 53/21
factor [11]  25/19 25/22 52/25 53/7 53/11 54/2 54/8 54/12 54/22 58/4 63/19
factors [5]  23/18 23/22 24/3 68/5 71/21
factual [1]  66/20
fail [3]  27/17 32/9 63/14
failed [1]  24/16
fair [18]  21/25 25/8 25/11 35/10 37/25 38/13 40/21 42/4 42/8 46/15 46/23 47/5 52/18 52/21 64/10 64/22 64/24 67/18
fair-minded [2]  64/10 64/22
fairness [2]  54/15 57/1
fallback [1]  43/8
falls [2]  16/14 55/23
familiar [2]  4/19 5/16
far [3]  16/14 49/23 74/8
fascinated [1]  62/21
fashion [2]  5/10 36/13
fast [2]  55/7 67/15
faster [1]  4/3
fastest [1]  17/13
favor [2]  67/11 68/10
favoring [2]  51/12 51/12
feasible [1]  36/13
February [1]  31/17
federal [7]  6/7 18/12 18/22 18/22 18/23 68/22 68/22
federally [1]  6/13
Federation [6]  35/4 38/7 38/24 39/10 47/3 47/20
Feldman [1]  18/16
fellow [2]  31/12 31/15
felt [2]  34/4 68/22
few [1]  46/4
figure [1]  67/23
file [4]  5/17 5/20 5/22 61/12
filed [3]  24/2 38/16 60/7
files [1]  53/5
fill [1]  6/22
final [6]  31/18 31/18 31/20 33/15 69/1 71/15
finally [4]  8/22 9/14 67/3 67/4
find [11]  7/5 17/23 18/22 20/24 43/25 48/21 62/10 68/12 69/23 70/17 73/10
finding [1]  20/11
findings [1]  15/25
finds [1]  67/8
fine [2]  13/10 59/19
finish [1]  67/17
finishing [1]  67/17
Fink [3]  40/9 62/4 62/16
Firm [1]  2/12
first [14]  3/8 5/21 19/22 20/9 24/4 26/1 26/1 28/3 32/9 54/17 59/4 66/25 68/6 69/4
five [5]  5/23 21/18 60/10
five-level [1]  5/23
five-story [1]  21/18
flagging [1]  32/17
floor [1]  15/20

**F**

**flourishes [1]**   34/25
**flows [1]**   25/6
**focus [3]**   9/9 9/11 58/3
**focuses [1]**   43/10
**fog [1]**   60/22
**folk [1]**   74/5
**folks [1]**   64/23
**follow [2]**   18/25 60/20
**following [3]**   8/2 55/17 57/11
**follows [1]**   12/8
**footing [2]**   8/20 17/22
**forbearance [1]**   67/5
**forced [1]**   66/21
**foregoing [1]**   74/15
**forget [2]**   21/2 44/24
**format [12]**   6/17 18/5 25/1
   35/23 35/25 36/3 36/23 42/6
   46/19 47/5 57/24 60/10
**formats [19]**   35/8 38/9 39/7
   39/9 39/10 39/11 39/12 39/18
   40/4 40/23 41/3 41/5 41/17
   46/22 47/1 47/7 49/13 49/14
   55/18
**forth [2]**   5/12 9/3
**fortunately [1]**   60/5
**forward [1]**   4/14
**found [4]**   36/22 52/4 54/23
   55/9
**four [6]**   5/23 23/18 23/21
   24/3 68/5 68/10
**Fourth [8]**   31/19 32/1 51/5
   51/6 52/6 52/9 56/3 68/5
**frame [1]**   68/3
**framed [1]**   38/20
**FRANK [1]**   1/18
**frankly [7]**   26/18 69/18 70/19
   71/1 71/8 71/18 73/10
**freak [1]**   61/18
**FREDERICK [2]**   1/13 2/3
**free [4]**   3/11 3/19 3/19
   41/17
**front [2]**   21/18 45/18
**Fulbright [1]**   2/24
**full [3]**   31/24 71/17 73/6
**fully [4]**   26/17 27/5 33/13
   36/25
**function [4]**   24/12 28/4 28/5
   28/5
**fundamental [2]**   37/15 57/4
**fundamentally [3]**   28/8 57/7
   57/15
**further [3]**   16/13 67/25 69/23
**furthered [2]**   14/9 14/13
**furthers [1]**   12/25

**G**

**gap [2]**   6/23 52/3
**garnishment [1]**   14/11
**garnishments [1]**   13/14
**gee [1]**   64/19
**general [4]**   1/23 2/18 3/2
   37/18
**generically [1]**   44/10
**get [20]**   3/6 13/6 13/11
   16/23 17/14 31/18 31/25
   31/25 33/22 34/18 36/12 37/9
   41/24 49/4 49/8 51/22 52/1
   55/9 63/4 66/14
**gets [3]**   37/19 52/21 55/12

getting [4]   18/18 21/14 57/14
   59/5
**give [13]**   4/9 7/13 13/20
   15/8 15/10 21/9 23/1 23/17
   31/8 32/20 45/17 57/24 64/4
**given [16]**   4/12 5/22 6/24
   17/15 22/5 22/8 22/14 33/24
   33/25 36/21 42/20 44/11 50/4
   52/21 56/13 68/3
**gives [3]**   8/20 22/7 60/9
**giving [5]**   13/16 27/1 67/5
   69/19 72/16
**glad [2]**   56/15 67/3
**go [8]**   3/8 3/19 5/12 20/22
   27/15 33/3 57/14 61/21
**goes [4]**   4/1 4/13 24/10
   57/14
**going [23]**   4/9 9/11 10/17
   21/20 24/20 26/21 27/7 27/16
   27/17 27/21 31/8 31/12 33/6
   43/11 57/18 60/18 67/16
   67/16 68/4 72/15 72/17 72/24
   73/2
**GOLDSTEIN [17]**   1/18 2/10 2/10
   2/11 31/13 34/10 37/16 42/22
   43/24 46/5 49/3 52/14 54/6
   56/8 59/22 71/2 71/12
**gone [1]**   48/24
**good [13]**   2/9 2/23 3/1 7/12
   9/21 16/18 26/24 27/3 28/3
   44/6 46/24 72/3 72/3
**goodness [1]**   61/3
**got [15]**   11/20 13/9 18/21
   28/22 29/3 29/22 29/24 32/21
   33/16 34/12 41/25 44/24
   55/16 60/12 60/13
**governmental [1]**   6/24
**gracious [1]**   61/3
**graduate [1]**   23/2
**grand [1]**   60/10
**grant [1]**   3/9
**granted [2]**   17/7 18/2
**granting [1]**   54/2
**grapple [1]**   60/22
**GRE [1]**   23/8
**greater [2]**   48/10 59/6
**grounds [2]**   25/25 68/25
**guarantee [1]**   34/20
**guaranteed [3]**   6/7 6/13 18/12
**guard [1]**   48/8
**guess [2]**   34/8 49/17

**H**

**hac [1]**   2/13
**had [20]**   2/15 2/20 3/14 5/25
   17/6 20/2 25/3 30/7 36/11
   37/22 41/11 55/6 59/14 59/18
   63/5 65/16 65/16 68/19 69/2
   72/19
**half [4]**   4/24 5/2 16/20 65/5
**hand [4]**   14/12 37/20 64/2
   64/13
**handicap [1]**   6/9
**handicapped [1]**   6/9
**handle [1]**   59/12
**hands [1]**   11/24
**happen [2]**   32/2 35/15 66/22
**happened [2]**   49/12 74/8
**happy [2]**   17/16 40/14
**hard [1]**   18/22
**hardships [1]**   26/19

harm [6]   3/6 5/7 51/18 52/5
   52/8 52/12 52/15 53/11 53/22
   55/8 66/13 66/17 66/18 67/2
   68/9 70/25 71/5
**Harris [1]**   12/15 16/13
**has [68]**   4/9 5/8 6/12 7/17
   8/18 9/15 10/3 10/20 11/13
   12/9 17/5 18/11 18/13 18/19
   19/15 20/21 21/8 21/16 22/12
   22/16 24/16 25/23 26/15
   26/17 28/25 30/8 30/14 31/17
   31/21 32/9 32/15 35/2 35/5
   36/19 36/21 37/8 37/15 37/20
   38/16 39/9 39/11 40/25 44/13
   45/15 46/8 46/10 46/17 48/2
   48/11 48/24 49/12 50/13 51/7
   52/7 53/6 54/23 56/3 56/17
   58/11 60/11 63/17 67/8 67/17
   67/22 67/25 72/23 73/10
**hasn't [1]**   74/7
**have [148]**
**haven't [3]**   25/18 43/18 46/20
**having [12]**   16/6 26/20 36/18
   38/23 43/15 52/3 54/13 56/11
   63/4 64/14 66/24 71/19
**he [37]**   2/12 4/1 4/1 4/2 4/4
   4/7 4/9 4/10 4/13 4/13 4/15
   4/17 4/20 5/9 5/11 5/14 8/20
   9/1 15/22 21/8 26/2 31/13
   31/14 31/14 31/16 31/17
   31/20 40/4 40/5 49/6 53/20
   64/7 64/8 67/16 67/16 67/17
   67/18
**he's [7]**   2/19 2/21 4/8 4/22
   31/7 31/21 31/21
**head [1]**   58/14
**healthcare [1]**   42/23
**hear [7]**   3/17 18/17 46/9
   57/21 62/21 64/2 67/3
**heard [2]**   43/17 43/18
**hearing [2]**   4/20 68/15
**heavily [1]**   37/17
**held [2]**   1/12 52/10
**helpful [3]**   8/24 57/13 58/3
**helps [1]**   58/3
**hence [1]**   13/21
**her [5]**   8/19 8/20 36/18
   51/23 51/23
**here [40]**   6/14 8/1 12/4
   15/12 16/5 18/15 19/2 19/18
   21/16 22/2 22/17 26/16 30/21
   30/21 32/8 33/2 35/14 40/6
   45/7 46/14 47/11 51/19 52/7
   54/12 58/11 60/22 62/1 62/25
   63/9 64/20 65/19 66/6 66/20
   69/17 69/22 70/4 71/8 71/11
   71/13 73/18
**highly [1]**   22/14
**him [10]**   2/13 2/14 2/20 4/6
   4/10 4/19 4/20 19/19 27/7
   31/8
**himself [1]**   5/11
**hire [1]**   61/2
**hired [2]**   60/25 61/6
**hires [1]**   61/3
**his [7]**   5/13 24/8 26/2 26/2
   36/18 73/2 73/4
**historically [1]**   73/11
**history [13]**   26/14 26/23
   27/10 27/13 29/4 29/5 29/15

## H

**history... [6]**  30/1 30/2
30/12 32/15 35/14 48/24
**hold [1]**  34/17
**Honor [102]**
**HONORABLE [2]**  1/13 2/3
**hope [4]**  32/2 61/20 74/6
74/6
**hoped [1]**  36/11
**horizontal [1]**  5/3
**how [15]**  9/1 9/4 9/12 11/15
18/24 34/19 37/8 37/23 45/24
50/18 57/2 61/22 66/18 67/21
70/13
**however [2]**  38/5 57/8
**human [3]**  4/3 17/13 42/17
**humiliations [1]**  26/20
**hundred [1]**  50/15
**hundreds [1]**  34/14

## I

**I'd [3]**  3/17 50/17 65/24
**I'll [8]**  10/12 18/17 18/24
25/12 34/7 46/5 51/16 68/3
**I'm [29]**  10/17 11/3 13/3
14/22 17/17 19/11 20/17
23/21 25/12 27/7 31/7 33/14
41/10 45/12 50/20 52/16
53/15 53/18 56/15 59/22
61/16 61/25 62/21 67/3 72/11
72/15 72/24 72/25 73/2
**I've [5]**  10/17 13/8 51/13
52/23 74/10
**idea [4]**  64/14 64/14 72/3
72/3
**ideal [1]**  48/15
**identified [7]**  34/9 39/9 39/9
39/11 40/24 41/10 41/11
**identifiers [1]**  74/16
**identify [2]**  2/8 37/7
**II [11]**  6/23 7/17 14/17 15/9
15/21 15/23 22/13 48/1 62/9
62/14 62/25
**III [6]**  7/7 7/10 12/2 14/17
56/13 66/1
**immaterial [1]**  53/11
**immediately [2]**  4/20 35/20
**imminent [1]**  52/8
**immunity [1]**  13/13
**impaired [2]**  49/1 63/21
**impairment [1]**  16/10
**impairments [7]**  35/11 35/24
38/4 39/16 39/18 47/9 49/16
**impairs [1]**  63/17
**implement [1]**  56/13
**implementation [1]**  13/17
**implementing [7]**  13/2 56/20
56/21 56/23 66/4 70/18 70/19
**implements [1]**  43/14
**implied [1]**  26/5
**important [4]**  33/24 34/11
46/13 58/15
**impose [3]**  21/11 21/15 63/13
**imposes [2]**  21/13 21/13
**inaccessible [2]**  70/11 70/12
**inadvertently [1]**  5/18
**inappropriate [2]**  38/25 47/25
**incentive [2]**  37/4 37/6
**inch [2]**  4/24 5/2
**inclined [1]**  71/1

**include [3]**  16/19 40/24 66/19
**included [1]**  41/3
**including [3]**  29/20 51/4
55/17
**inclusive [1]**  26/12 27/11
**inconsistent [2]**  49/19 70/20
**incorporate [1]**  70/14
**indeed [4]**  8/19 15/25 31/16
57/24
**independent [1]**  22/13
**indicate [2]**  24/13 36/12
**indicated [1]**  68/15
**indicates [1]**  36/11
**indirectly [1]**  23/14
**individual [8]**  11/5 15/15
34/12 34/21 42/7 42/9 48/9
53/4
**individualized [2]**  30/16
30/16
**individuals [15]**  15/4 34/16
35/11 35/24 38/3 39/16 39/18
47/8 48/6 48/9 48/25 49/15
54/25 66/7 66/9
**inferior [2]**  8/13 8/21
**inflicted [1]**  31/6
**information [1]**  5/10
**informs [1]**  24/15
**initial [1]**  56/12
**injecting [1]**  20/1
**injunction [23]**  1/11 2/4 3/8
3/9 23/22 33/15 46/6 51/3
51/22 52/1 52/24 53/5 53/12
54/2 55/21 56/2 58/8 66/23
68/4 68/7 68/11 71/10 74/10
**injured [1]**  32/9
**injury [1]**  30/25
**inquiry [2]**  30/16 30/17
**insecurity [1]**  72/11
**inside [1]**  31/9
**insisting [1]**  26/8
**instance [2]**  35/15 54/18
**instantly [1]**  4/17
**instead [2]**  42/17 60/12
**instinct [1]**  71/18
**institution [2]**  55/3 57/17
**institutional [6]**  32/14 54/6
54/13 54/17 56/10 60/16
**institutionally [2]**  59/17
71/21
**insubstantial [1]**  62/1
**intelligibly [1]**  4/4
**intend [1]**  68/22
**intended [1]**  48/8
**intent [4]**  6/22 12/25 14/10
14/13
**interactive [1]**  11/25
**interest [21]**  11/20 11/21
35/20 38/16 51/12 52/25 53/3
53/7 53/14 54/1 54/2 54/8
54/10 54/12 54/16 54/22 55/1
56/10 56/11 68/11 71/11
**interested [1]**  56/16
**interesting [1]**  53/9
**interests [1]**  54/21
**interfered [1]**  68/23
**interpret [2]**  14/19 49/21
**interpretation [1]**  49/10
**interpreted [3]**  13/2 49/20
50/13
**interpreting [2]**  13/16 50/15
**interrupt [1]**  59/23

**interruption [1]**  59/25
**intrigued [1]**  64/2
**introductory [1]**  34/8
**inventory [1]**  7/1
**involve [1]**  3/23
**involved [1]**  70/4
**involving [2]**  26/2 51/20
**ipso [2]**  53/10 53/21
**ironic [1]**  72/13
**irreparable [15]**  30/25 51/11
51/18 52/5 52/8 52/12 52/15
53/11 53/22 55/25 66/13
66/17 68/8 70/25 71/5
**irreparably [1]**  52/17
**is [346]**
**isn't [13]**  3/13 14/5 14/5
40/20 41/14 42/25 44/6 45/1
45/2 45/21 49/7 56/16 67/23
**issue [30]**  16/17 18/18 19/1
19/4 22/14 24/3 25/7 26/25
27/15 28/9 28/23 34/6 36/16
37/23 40/6 40/10 41/23 58/21
59/2 61/11 65/20 66/13 66/16
68/14 68/19 69/22 70/24 71/7
73/5 73/6
**issue's [1]**  58/20
**issues [6]**  3/6 20/1 25/20
27/20 28/16 37/19
**issuing [2]**  68/23 72/10
**it [226]**
**it's [95]**
**its [11]**  6/11 7/1 7/17 36/2
38/15 40/23 44/15 45/10
48/11 51/5 64/24
**itself [5]**  9/11 49/3 52/15
53/10 53/22

## J

**Jaramillo [3]**  40/3 62/4 62/16
**Jaworski [1]**  2/24
**JAWS [8]**  3/24 4/9 5/9 8/19
38/11 40/6 60/13 74/3
**JFM [2]**  1/6 2/5
**job [5]**  9/21 11/2 11/16
46/25 63/17
**job-related [1]**  11/2
**Jones [1]**  31/2
**Judge [3]**  24/8 27/15 50/10
**judgment [9]**  6/11 33/6 33/9
33/12 39/4 39/22 40/13 48/14
48/19
**judicial [2]**  25/19 74/16
**judicially [1]**  25/5
**Julie [2]**  1/25 74/19
**July [2]**  1/12 58/1
**jurisdiction [12]**  6/12 14/3
14/6 18/8 18/11 33/22 33/25
41/18 44/11 51/1 68/14 68/19
**jurisdictional [1]**  6/15
**jury [1]**  40/6
**just [36]**  6/25 7/5 7/13 7/21
13/5 13/11 15/8 18/5 21/12
21/13 24/13 24/20 27/6 27/19
27/23 28/6 29/10 29/11 29/18
30/23 31/7 33/22 34/4 36/7
37/12 45/9 45/24 49/9 52/13
55/7 59/17 60/1 61/1 61/13
62/19 64/19
**justice [14]**  12/23 31/3 31/3
38/5 35/10 38/6 38/14 38/16
38/23 47/2 47/17 56/13 66/3

**J**

**justice... [1]**   73/12
**justifies [1]**   56/2

**K**

**keep [2]**   21/17 28/12
**Kent [1]**   36/9
**key [1]**   15/5
**kicked [1]**   51/20
**Kimmer [2]**   34/1 68/19
**kind [5]**   6/15 9/23 15/13
  30/5 74/2
**kinds [2]**   3/17 13/14
**know [40]**   4/9 4/20 6/4 7/14
  8/2 1/15 22/12 26/13 26/18
  26/20 26/21 27/6 27/6 27/7
  27/16 27/17 27/23 29/19
  30/14 32/13 37/7 37/17 38/18
  42/16 45/5 49/5 49/9 50/8
  54/9 54/11 55/6 55/6 55/8
  57/14 59/12 60/6 64/3 71/6
  72/20 73/20
**knowledge [4]**   10/1 34/24
  35/12 36/1
**knows [2]**   38/15 64/18

**L**

**la [1]**   57/19
**LaBARRE [3]**   1/19 2/12 2/12
**landscape [2]**   22/21 51/4
**Lang [1]**   15/20
**language [32]**   4/6 6/19 6/20
  11/7 12/8 12/18 12/24 13/4
  14/18 14/21 14/23 15/9 15/19
  15/25 19/11 24/12 24/15
  24/18 26/12 28/21 40/18 43/9
  43/18 43/19 50/14 57/20 62/6
  62/10 63/9 63/14 69/10 70/15
**laptop [3]**   36/20 37/9 59/20
**laptops [4]**   36/19 60/4 60/4
  60/12
**large [6]**   4/24 29/11 30/12
  41/16 59/13 66/10
**largely [1]**   16/9
**last [3]**   36/22 55/15 56/18
**late [1]**   25/16
**later [2]**   52/3 66/24
**Latin [1]**   4/18
**law [32]**   2/12 2/19 6/7 7/22
  7/25 20/3 21/23 22/12 23/2
  32/8 32/10 39/5 39/21 40/8
  40/13 40/16 43/5 44/5 47/8
  47/21 48/14 51/14 57/5 60/11
  61/1 64/18 65/13 65/18 67/17
  67/17 68/5 73/22
**laws [1]**   53/6
**lawsuit [2]**   55/6 55/10
**lawyer [1]**   61/17
**lawyers [1]**   64/17
**lead [3]**   34/3 50/12 62/7
**learned [2]**   8/5 59/5
**learner [1]**   5/14
**least [4]**   14/3 26/13 54/17
  72/8
**leave [4]**   27/19 30/9 45/13
  51/16
**leaves [3]**   44/19 45/22 57/12
**left [2]**   14/16 37/9
**legal [10]**   3/13 8/6 14/2
  14/7 24/3 28/23 29/22 29/23

**legislative [1]**   13/21
**legitimate [4]**   32/23 46/17
  55/3 60/25
**less [3]**   16/21 17/15 51/7
**lesser [1]**   48/10
**let [11]**   13/5 23/18 24/20
  27/19 27/24 30/24 54/4 56/9
  58/18 72/21 73/24
**let's [2]**   27/10 72/20
**letter [3]**   4/18 4/18 39/1
**level [4]**   5/23 11/4 35/22
  36/25
**Levy [3]**   2/10 2/12 31/13
**licensing [6]**   6/23 14/25
  19/20 23/8 40/5 69/11
**life [1]**   25/25
**light [1]**   52/6
**like [11]**   5/5 16/16 32/23
  35/19 40/22 61/1 62/14 65/2
  67/1 72/2 72/3
**likelihood [2]**   55/23 71/3
**likely [15]**   10/14 51/10 51/16
  53/19 53/25 55/25 66/14
  66/15 66/17 66/18 67/2 68/7
  68/8 68/13 70/25
**Likewise [5]**   35/7 40/9 42/22
  43/13 43/21
**limit [2]**   25/19 25/21
**limits [1]**   61/22
**line [2]**   5/3 5/4
**linearly [1]**   9/2
**list [4]**   24/7 24/13 40/20
  41/3
**listed [2]**   24/5 24/16
**listing [1]**   24/9
**litigation [7]**   30/9 72/20
  73/1 73/2 73/4 73/17 73/21
**little [3]**   55/16 70/14 73/15
**loading [1]**   59/20
**locate [1]**   5/22
**location [1]**   5/7
**Lombard [1]**   1/14
**long [17]**   11/13 11/21 12/22
  12/24 15/20 26/4 30/2 30/7
  30/12 31/24 32/5 32/6 32/6
  32/15 40/11 67/21 67/23
**long-term [1]**   11/13
**look [18]**   7/23 15/9 15/19
  19/10 20/23 31/7 43/9 43/13
  47/25 48/22 49/12 53/13 62/7
  62/13 63/6 65/12 66/18 70/14
**looked [2]**   13/24 45/6
**looking [3]**   12/4 19/11 54/24
**lot [7]**   11/22 13/9 27/23
  29/19 31/15 49/25 66/3

**M**

**machines [1]**   61/9
**made [20]**   6/1 7/17 17/6 19/8
  19/8 19/9 25/6 35/14 37/20
  40/2 41/16 42/20 42/22 46/5
  46/7 46/21 55/24 56/1 71/13
  71/20
**magistrate [1]**   65/15
**mainframe [1]**   60/3
**make [35]**   2/16 3/20 6/21 7/9
  10/9 15/23 17/2 21/24 27/20
  29/22 37/8 37/18 39/12 41/6
  42/4 43/15 44/16 46/24 60/2
  49/13 49/14 56/24 60/22 60/3

**maker [2]**   64/24 64/25
  65/24 70/10 73/13 74/3 74/4
  74/5
**maker [2]**   23/5 69/19
**makes [14]**   5/11 6/19 7/7
  10/14 11/22 12/18 31/3 36/2
  46/18 61/12 66/3 70/11 72/25
  73/5
**making [17]**   17/3 19/16 24/11
  24/18 25/13 32/14 35/7 38/3
  39/7 39/10 43/11 47/4 48/24
  64/1 69/1 70/21 72/7
**Malkin [1]**   8/9
**management [1]**   73/4
**mandatory [1]**   56/2
**manner [17]**   9/13 15/3 19/16
  21/5 21/14 21/15 22/8 38/2
  38/25 42/7 47/13 49/22 50/14
  63/16 69/13 69/16 69/16
**manual [6]**   22/6 22/16 37/16
  37/18 63/18 63/21
**many [5]**   8/17 11/14 13/8
  45/24 47/3
**mark [1]**   4/10
**marks [2]**   4/5 4/6
**MARYLAND [25]**   1/1 1/15 2/19
  18/2 19/7 21/23 23/13 34/1
  36/19 37/20 37/22 43/21
  43/22 44/13 44/21 45/5 45/12
  45/15 45/18 60/11 65/13
  65/17 67/10 69/15 72/18
**material [3]**   10/10 38/16
  72/22
**materially [1]**   10/10
**materials [9]**   8/6 22/10 24/11
  24/19 37/24 40/23 49/15 65/7
  72/15
**matter [24]**   1/12 4/11 18/8
  26/14 33/24 39/5 39/21 40/8
  40/13 40/16 48/14 51/13 57/5
  57/16 58/21 58/22 61/10
  66/20 67/6 68/14 68/18 71/6
  73/4 74/15
**matters [2]**   17/25 68/21
**may [24]**   2/7 3/20 5/16 7/11
  7/15 10/10 11/24 24/13 27/4
  27/5 30/3 30/4 30/6 32/5
  41/3 42/9 50/6 52/13 55/7
  69/7 71/17 71/18 72/7 73/20
**maybe [8]**   16/20 27/21 31/8
  41/25 57/16 64/3 67/14 71/7
**MAZEN [2]**   1/22 3/1
**MBE [4]**   21/9 43/19 44/19
  46/1
**me [38]**   2/11 2/19 3/6 3/9
  4/25 8/9 13/3 13/6 18/18
  19/5 20/12 21/22 21/22 23/18
  23/23 24/20 24/20 25/25
  26/10 30/24 37/3 42/14 54/4
  56/9 58/18 59/22 63/7 67/3
  69/18 70/4 70/20 71/11 71/25
  72/2 72/3 73/1 73/7 73/9
**mean [13]**   21/21 22/14 26/18
  29/15 36/6 53/19 54/12 54/13
  59/23 64/5 64/6 64/7 65/19
**meaning [11]**   12/20 13/1 20/7
  35/16 43/4 44/1 47/8 63/11
  69/7 69/24 70/8
**means [12]**   23/13 23/14 26/10
  31/6 49/2 49/18 49/23 57/13
  58/12 65/1 67/11 70/16

**M**

meant [3]  14/7 24/13 39/13
measure [1]  63/20
mechanism [1]  30/6
medical [2]  8/8 23/2
medicine [1]  22/23
Meghan [1]  2/11
MEHGAN [1]  1/18
member [1]  64/16
members [1]  13/13
memo [1]  24/1
memorandum [2]  60/7 60/15
mention [2]  24/20 43/18
mentioned [1]  3/14
mentioning [1]  28/13
menu [5]  25/23 29/10 30/22
56/11 57/18
mere [1]  73/21
merely [1]  29/8
merge [1]  71/11
merits [17]  10/15 51/10 51/14
51/16 53/13 53/25 55/23
66/15 66/16 66/18 67/1 67/19
68/8 68/13 69/3 71/3 73/4
met [3]  7/17 41/7 41/12
metaphorical [1]  21/1
method [9]  8/4 8/7 9/9 9/13
11/9 24/18 28/12 54/18 71/14
methods [1]  24/10
Michael [2]  2/13 65/7
might [7]  4/13 10/14 11/18
16/16 23/18 30/25 57/8
Miller [1]  65/4
mind [1]  54/6
minded [2]  64/10 64/22
minimal [1]  72/8
minimum [2]  40/22 53/24
minute [2]  24/21 27/9
missing [1]  41/10
mistake [3]  19/8 19/8 25/6
Moeser [1]  60/7
Moeser's [1]  60/14
moment [2]  25/12 62/19
money [1]  44/24
more [12]  17/14 23/15 24/6
29/5 30/3 31/6 32/22 33/13
49/23 73/5 73/16 74/6
morning [1]  2/9
Morton [6]  12/17 12/18 12/19
13/7 13/12 48/21
most [9]  4/3 12/7 20/2 34/8
56/4 63/10 63/12 63/15 63/23
motion [12]  1/11 1/11 2/4 3/6
3/7 6/11 17/4 58/8 68/4
72/11 73/3 74/9
motions [1]  3/5
MOTZ [2]  1/13 2/3
move [3]  9/3 33/8 55/7
movement [2]  17/12 17/13
moves [1]  5/4
moving [3]  34/7 62/3 67/15
MPRE [6]  23/7 24/24 25/3
46/2 51/2 61/2
MPT [2]  57/22 58/1
Mr [2]  18/18 20/15
Mr. [38]  3/25 4/22 5/5 8/3
8/3 8/11 8/16 8/22 15/20
19/5 26/11 27/3 31/12 33/20
34/10 37/16 42/22 43/24 46/5
49/3 52/14 54/6 56/8 57/21

62/4 64/3 65/11 65/22 67/14
67/15 68/16 71/2 71/12
Mr. Brye [1]  58/6
Mr. Burgoyne [12]  19/5 26/11
27/3 33/20 57/21 58/18 60/1
62/4 64/3 65/11 65/22 67/14
Mr. Burgoyne's [1]  68/16
Mr. Elder [5]  3/25 8/3 8/22
31/12 67/15
Mr. Elder's [1]  60/6
Mr. Goldstein [12]  34/10
37/16 42/22 43/24 46/5 49/3
52/14 54/6 56/8 59/22 71/2
71/12
Mr. Lang [1]  15/20
Mr. Smith [1]  8/16
Mr. Witwer [4]  4/22 5/5 8/3
8/11
Ms. [4]  8/3 8/18 17/23 60/14
Ms. Blackfield [2]  8/3 8/18
Ms. Moeser's [1]  60/14
Ms. Sidhu [1]  17/23
much [11]  12/16 13/8 33/19
33/21 41/25 51/7 57/2 61/16
61/22 66/20 73/5
multiple [1]  49/13
multistate [11]  22/1 35/3
35/20 44/12 45/3 45/9 46/3
50/24 59/11 64/15 64/21
must [9]  6/20 13/1 13/20
27/3 28/3 28/7 32/10 51/9
70/24
my [9]  36/1 46/25 54/6 56/12
56/17 61/19 71/19 74/6 74/9

**N**

national [21]  1/7 2/5 2/25
22/6 22/12 22/24 22/25 35/4
36/10 38/1 38/7 38/24 39/10
40/22 43/23 47/2 47/20 49/25
50/21 55/17 58/6
nature [2]  28/8 57/7
navigate [3]  4/1 4/17 5/6
NBE [3]  25/1 58/13 58/16
NCBE [36]  6/11 7/18 7/24
8/12 9/19 10/3 10/16 12/10
17/1 17/5 18/13 19/2 21/8
21/11 21/22 22/3 22/20 23/19
24/16 24/21 35/2 36/11 41/22
43/4 43/6 44/4 45/22 46/16
58/12 60/18 61/2 61/23 63/3
67/8 67/14 67/20
nebulous [1]  47/11
necessarily [1]  23/7
necessary [1]  55/8
need [12]  3/16 3/18 6/25 7/1
11/21 13/11 30/3 42/9 52/23
65/1 72/24 73/25
needed [1]  42/24
needs [2]  5/6 71/24
never [3]  22/1 58/20 66/16
next [6]  2/12 2/14 18/9
31/17 62/3 70/24
NFB [3]  30/20 38/12 39/13
NFB's [1]  39/6
nice [1]  56/19
Ninth [1]  31/2
no [57]  1/6 6/12 6/14 7/8
12/9 15/15 15/21 19/13 20/3
20/4 20/4 21/2 21/18 22/15

22/20 22/23 22/23 23/24 24/1
25/13 25/13 29/3 29/12 30/21
30/21 31/6 31/9 31/11 33/10
34/13 35/1 36/2 40/6 42/15
44/11 45/22 48/9 49/9 50/13
52/7 53/8 53/8 53/18 53/18
54/13 57/13 59/16 60/5 60/23
61/7 62/16 65/17 65/21 66/15
72/4 72/5 74/6
noises [1]  28/16
non [1]  24/25
non sequitur [1]  24/25
nondisabled [1]  11/5
none [4]  9/18 23/15 45/11
66/10
nonexclusive [1]  24/8
nonprofit [1]  70/6
nonsecure [1]  36/1
nonvisually [1]  10/11
North [1]  51/21
NORTHERN [1]  1/2
not [182]
note [3]  15/11 15/12 50/17
notebook [1]  13/9
noted [9]  35/13 41/14 48/11
48/12 51/6 51/24 51/25 56/3
74/16
notes [1]  35/1
nothing [11]  15/12 18/21 24/6
26/5 29/24 48/4 63/23 69/8
71/22 72/17 72/23
nothing's [1]  57/19
notion [1]  39/14
now [16]  22/23 23/1 27/10
28/22 30/3 30/24 33/16 37/20
51/9 60/19 60/24 66/13 67/18
72/13 72/13 74/4
nuisance [1]  6/8
number [12]  14/14 19/19 25/20
46/2 46/2 59/10 59/11 59/12
59/13 59/14 59/14 60/19

**O**

oath [2]  58/14 60/21
Obama [1]  51/6
obligated [1]  44/11
obligation [4]  34/4 41/13
43/15 58/22
obligations [2]  7/17 41/7
obvious [2]  20/2 60/2
obviously [8]  3/5 25/14 34/3
40/20 41/11 45/11 51/15 64/7
occur [4]  66/18 66/24 66/25
67/2
odd [1]  70/14
odds [1]  6/22
off [1]  60/3
offensive [1]  64/14
offer [52]  6/16 6/20 7/19
10/8 10/9 12/10 15/2 15/3
19/3 19/12 19/12 19/13 20/11
20/23 20/25 21/2 21/4 21/17
21/19 22/1 22/19 24/4 24/21
25/2 27/22 28/7 28/19 29/8
29/9 29/10 29/15 29/18 37/17
38/9 39/24 41/21 44/1 44/4
44/10 44/19 45/22 47/12
50/22 57/22 57/23 59/13 64/5
64/23 67/14 69/12 70/7 74/2
offered [25]  6/19 8/12 10/3
12/14 19/2 21/14 21/16 22/19

**O**

**offered... [17]**   23/5 23/12 23/13 23/14 30/7 35/2 36/19 38/10 40/5 40/7 40/15 46/20 50/19 63/1 70/9 73/8 73/10
**offerer [3]**   25/14 43/7 69/24
**offerers [1]**   21/4
**offering [19]**   19/6 19/7 20/6 20/10 21/3 22/21 23/4 23/11 23/15 29/4 41/15 41/20 42/20 43/15 44/8 44/9 46/16 70/1 73/15
**offers [8]**   10/4 14/24 25/23 41/22 43/4 43/7 69/6 69/11
**Official [2]**   1/25 74/19
**often [1]**   54/8
**Oh [2]**   23/21 23/23
**okay [3]**   23/23 59/8 62/22
**once [1]**   60/2
**one [54]**   2/13 2/14 9/9 11/1 14/11 17/1 18/1 18/11 18/15 19/5 20/11 21/25 23/15 26/5 26/13 28/14 29/2 30/14 31/9 31/11 31/13 32/8 32/9 33/11 36/21 36/22 38/17 41/24 42/1 50/1 50/6 50/17 53/9 57/6 57/23 60/2 60/5 60/18 62/7 62/11 64/2 64/7 65/4 65/5 65/22 65/25 66/2 66/2 66/2 66/5 70/18 71/8 71/20 74/7
**one's [1]**   9/8
**one-bite [1]**   32/8
**one-sided [2]**   29/2 66/5
**ones [2]**   20/6 34/22
**only [21]**   4/17 7/19 7/19 8/10 8/19 17/20 20/11 21/25 25/3 28/14 31/1 34/22 36/21 39/5 41/15 41/15 45/2 53/13 56/3 65/16 66/14
**open [4]**   4/11 32/18 32/19 56/18
**opening [1]**   24/1
**operated [1]**   15/10
**operative [1]**   15/9 62/6
**opinion [1]**   24/9
**opinions [1]**   31/1
**opportunities [2]**   10/5 39/17
**opportunity [20]**   6/5 7/25 8/20 10/5 10/23 11/4 28/25 29/10 35/11 38/21 39/14 39/19 39/24 40/12 45/17 46/23 47/6 47/8 52/18 52/21
**opposed [1]**   54/18
**Opposition [1]**   58/7
**optimal [1]**   45/11
**option [2]**   37/2 59/21
**options [3]**   45/1 45/13 45/13
**optometry [1]**   22/22
**oral [1]**   5/10
**orally [1]**   9/5
**order [8]**   31/4 32/11 53/25 68/24 72/10 72/15 72/16 72/24
**ordered [1]**   72/24
**orders [1]**   14/11
**Ordinarily [1]**   18/10
**organization [3]**   34/13 34/18 36/2
**organizations [5]**   22/24 34/15 35/6 38/8 40/8

**other [42]**   5/15 6/24 7/6 7/10 7/11 7/21 8/21 14/4 16/23 17/24 17/24 22/20 24/10 26/6 31/25 36/2 37/20 38/7 40/2 42/1 46/18 47/4 48/6 48/11 50/17 52/6 53/6 54/21 55/6 57/3 57/22 62/7 62/8 62/11 63/19 64/13 65/22 66/5 69/20 70/13 73/12 73/20
**others [4]**   40/15 41/4 47/3 54/15
**otherwise [3]**   53/4 57/9 67/2
**our [30]**   6/4 9/20 10/15 10/18 34/3 35/14 35/17 35/21 35/23 36/20 36/25 38/10 42/19 44/1 44/3 44/12 45/8 46/24 47/5 47/6 47/16 48/18 51/24 53/16 55/2 55/3 55/19 58/8 64/17 68/1
**ourselves [1]**   55/9
**out [12]**   11/21 33/23 38/10 45/24 51/20 59/11 62/5 65/20 67/21 67/23 72/19 74/5
**outcome [4]**   27/21 34/14 38/22 73/18
**outside [1]**   16/4
**over [7]**   11/21 18/11 26/3 30/14 30/15 46/5 50/15
**overarching [2]**   24/3 47/23
**overcome [1]**   6/10
**overcompensation [3]**   16/17 16/23 41/23
**overreach [1]**   12/15
**oversight [1]**   69/8
**own [7]**   36/18 39/6 45/8 45/10 48/11 54/18 58/25

**P**

**p.m [3]**   1/13 2/1 74/11
**page [2]**   15/12 24/1
**Palmer [1]**   28/11
**paper [4]**   7/2 13/8 28/13 36/3
**paper-and-pencil [1]**   28/13 36/3
**papers [4]**   10/7 46/24 47/16 71/12
**paragraphs [1]**   4/16
**parallel [2]**   7/5 12/6
**parentheses [2]**   4/12 4/13
**parse [1]**   63/11
**part [7]**   20/4 37/21 43/17 43/19 59/4 63/7 71/19
**participation [2]**   11/5 15/16
**particular [6]**   7/16 35/15 46/16 52/11 55/18 62/23
**particularly [4]**   8/24 27/16 48/22 64/10
**parties [2]**   37/21 45/17
**parts [1]**   7/10
**party [12]**   19/21 20/8 20/10 20/11 20/13 20/14 20/16 20/19 40/22 43/19 68/6 71/22
**pass [5]**   18/25 26/21 51/1 52/18 71/7
**passed [1]**   22/24
**passing [3]**   16/13 26/19 53/23
**past [1]**   73/19
**pause [2]**   4/15 4/16
**peers [1]**   10/6

**pencils [3]**   28/12 28/13 36/3
**pencil-and-paper [1]**   7/2
**pending [1]**   72/20
**penny [1]**   60/18
**people [14]**   29/19 30/3 30/19 30/22 37/7 56/24 59/9 59/10 59/18 61/24 72/5 72/21 73/23 73/24
**percent [3]**   7/20 7/21 29/1
**perfect [1]**   73/1
**perfectly [3]**   27/10 29/6 64/13
**perform [2]**   34/20 50/19
**performance [1]**   46/3
**perhaps [5]**   4/24 5/2 17/23 18/8 32/4
**person [10]**   14/24 19/15 21/3 23/15 58/25 60/25 64/10 64/23 69/11 69/19
**person's [3]**   16/7 16/10 70/3
**personal [1]**   74/16
**persons [4]**   15/3 19/17 21/5 69/13
**perspective [2]**   6/4 36/14
**persuaded [4]**   68/19 69/5 70/9 71/2
**photocopy [1]**   61/13
**phrase [1]**   4/19
**physicians [1]**   17/19
**pick [2]**   7/15 63/23
**pilot [5]**   36/12 55/7 55/18 58/10 59/4
**place [13]**   15/2 19/16 21/4 21/7 21/10 21/19 22/13 26/5 44/2 59/4 69/13 69/16 69/17
**placed [1]**   63/10
**placement [1]**   19/19
**places [1]**   7/6
**plain [1]**   13/22
**plaintiff [9]**   2/15 7/16 40/3 40/14 45/22 53/19 57/5 57/10 62/24
**plaintiffs [45]**   1/5 1/19 2/10 2/13 2/14 3/8 6/5 7/10 9/19 9/25 10/5 12/11 16/24 17/16 17/21 27/13 27/17 31/4 33/18 34/12 35/16 36/4 39/23 42/5 43/8 44/19 45/2 45/14 50/2 50/19 50/24 52/8 54/18 65/8 67/12 67/15 68/12 69/2 70/24 71/3 71/7 71/14 72/1 72/5 73/14
**plaintiffs choosing [1]**   72/1
**plaintiffs' [2]**   9/22 54/9
**pleading [1]**   28/5
**pleadings [2]**   9/21 10/18
**pleasure [1]**   50/11
**point [14]**   9/22 30/2 32/25 33/22 35/22 42/23 52/13 52/22 52/24 55/9 59/6 60/16 62/3 62/5
**pointed [7]**   38/10 39/5 39/6 39/22 40/18 62/4 67/21
**points [4]**   4/7 21/4 46/4 65/24
**policy [2]**   57/17 74/16
**pony [2]**   60/12 60/14
**population [1]**   7/20
**position [10]**   11/6 29/16 34/22 43/8 43/25 44/1 47/6 49/17 72/14 73/4

**P**

possibly [1]   14/1
post [2]   15/1 22/11
post-distribution [1]   22/11
post-secondary [1]   15/1
potential [2]   71/7 73/3
power [1]   22/2
powerfully [1]   8/1
practical [2]   21/21 71/6
practice [5]   52/15 53/10
53/20 53/21 69/4
preceded [1]   38/11
precedent [3]   34/5 48/1 51/19
precisely [3]   35/3 38/23 42/3
predetermined [1]   56/11
preferential [1]   9/23
preferred [7]   9/20 9/23 27/1
40/11 40/15 48/16 71/14
prefixed [1]   57/18
preliminary [24]   1/11 2/4 3/7
3/9 23/22 33/1 46/5 51/3
51/22 52/1 52/23 53/5 53/12
54/2 55/21 56/2 58/8 66/23
68/4 68/6 68/9 71/1 72/12
74/10
premise [1]   31/23
prepared [2]   17/6 60/13
preposition [1]   62/11
present [2]   55/19 70/9
presentation [1]   71/13
presented [1]   11/2
presents [1]   56/5
preset [2]   4/9 30/22
president [2]   36/10 36/11
presiding [1]   2/3
Press [1]   34/25
presumably [2]   30/8 42/18
pretend [1]   37/10
pretty [2]   60/2 65/19
prevail [7]   10/14 51/14 51/16
66/14 66/16 66/17 67/1
prevent [3]   32/1 54/10 73/21
primarily [1]   8/7
primary [2]   8/3 9/8
principal [3]   44/7 44/7 44/9
principally [1]   5/10
print [4]   29/11 30/12 41/16
66/10
Privacy [1]   74/16
private [3]   46/11 70/1 70/6
privity [1]   19/13
pro [1]   2/12
probably [7]   4/25 19/24 25/21
34/8 41/10 62/24 72/25
problem [10]   11/18 22/1 24/7
26/22 28/1 37/15 61/10 61/13
62/8 63/3
procedures [1]   45/16
proceed [1]   33/12
proceedings [3]   2/1 74/11
74/15
process [6]   9/1 9/10 11/25
14/2 14/7 17/11
proctor [1]   61/8
proctoring [1]   5/18
proctors [1]   22/9
produce [1]   57/11
product [4]   45/25 45/25 54/23
55/2
profession [1]   6/6

professional [4]   15/1 21/20
44/12 50/24 52/4 69/12 69/20
professionally [1]   64/7
proffer [2]   3/20 6/2
program [6]   30/5 36/12 55/7
55/18 58/10 59/4
programs [2]   15/10 15/17
promise [1]   56/24
prompted [1]   26/6
pronouncing [1]   17/12
pronunciation [1]   4/19
proper [1]   50/4
properly [1]   34/23
proposed [1]   10/8
proposing [1]   56/21
proposition [2]   44/18 45/21
protect [1]   64/24
protecting [2]   58/13 58/16
protections [1]   48/10
protects [2]   60/20 67/9
protocol [5]   58/9 58/10 58/11
59/4 67/8
proved [1]   71/3
proves [1]   12/16
provide [29]   7/1 7/2 10/4
10/5 11/17 16/1 17/6 17/8
18/3 18/5 18/6 25/1 28/25
35/6 35/10 35/25 36/20 37/4
37/24 39/18 39/24 41/2 41/18
46/22 47/5 54/23 62/22 72/15
73/12
provided [10]   40/12 40/16
41/1 43/1 43/1 48/13 48/15
48/17 50/23 56/3
providers [1]   42/24
provides [4]   10/22 29/24
40/23 57/9
providing [3]   39/17 41/13
47/7
proving [1]   30/6
provision [3]   24/14 48/4
65/17
provisions [2]   15/14 48/7
psychologist [1]   8/24
psychology [1]   9/1
psychometric [1]   34/19
public [20]   7/6 15/18 37/19
37/21 51/12 52/25 52/25 53/3
53/7 53/14 54/1 54/1 54/4
54/8 54/10 54/12 54/16 54/21
68/11 71/11
pulled [1]   65/3
punctuation [1]   4/10
purchase [3]   36/19 44/12
44/14
pure [1]   43/5
purports [1]   63/20
purpose [1]   16/1
purposes [2]   15/2 69/12
pursuant [2]   15/23 74/16
pursue [2]   6/6 45/17
pursued [2]   65/11 65/13
pursuing [4]   41/24 53/2 53/2
53/3
put [8]   10/18 17/9 17/21
35/23 36/18 54/5 58/3 66/3
puts [1]   8/19
putting [1]   36/20

**Q**

qualifications [2]   26/8 64/17

qualified [6]   7/15 26/3 26/7
61/3 61/4 73/24
qualifying [1]   32/17
quality [3]   10/4 10/23 61/11
question [39]   4/1 4/2 5/12
10/25 16/17 16/25 17/1 18/8
22/15 25/11 28/14 28/18
30/15 30/24 34/13 38/3 40/1
40/10 40/17 41/21 42/13
42/15 43/3 43/5 47/14 47/15
50/18 51/3 51/18 55/13 55/15
55/24 56/10 60/24 60/25 65/9
66/15 66/21 69/6
questions [6]   2/20 17/24
26/14 42/17 65/1 67/2
quickly [2]   46/4 50/17
quotation [2]   4/5 4/6
quote [5]   40/24 48/15 69/11
69/25 70/1

**R**

raise [4]   6/15 25/7 68/17
68/18
raised [5]   25/16 25/18 25/20
29/4 60/24
raises [2]   42/13 55/2
rather [9]   10/9 12/5 12/11
16/5 22/18 25/15 27/25 34/24
63/20
reach [1]   62/20
reached [1]   47/4
read [5]   4/5 9/2 21/11 22/15
63/2
reader [9]   3/17 26/2 26/7
29/5 29/24 42/17 61/4 61/11
66/8
readers [2]   26/9 32/17
reading [16]   5/6 6/19 8/4 8/7
9/1 9/9 9/10 17/15 23/12
23/14 23/14 23/16 42/16
42/17 42/18 50/3
reads [2]   7/20 62/14
real [2]   28/18 72/5
realistic [1]   45/12
realize [3]   25/12 72/13 74/6
realized [1]   72/25
really [7]   23/12 26/10 26/11
27/5 64/16 71/13 73/16
realm [1]   65/20
reason [6]   7/12 15/16 24/23
54/13 72/4 72/6
reasonable [28]   7/24 9/16
10/17 10/22 10/25 11/24 12/1
26/15 28/24 29/9 29/23 30/9
30/15 38/21 40/6 40/8 40/16
40/25 47/11 47/17 47/22 48/3
48/12 48/17 49/19 55/13
55/14 63/13
reasonable-accommodation [1]
10/25
reasonably [4]   49/18 70/16
70/22 73/13
reasons [7]   12/23 27/4 28/3
33/11 55/17 67/24 74/10
receipt [1]   22/10
received [1]   13/14
recognized [3]   9/16 46/8
46/10
record [45]   2/8 8/1 8/15
16/19 17/2 17/9 17/18 17/23

# R

**record... [37]**   23/2 26/16
27/19 28/6 29/1 29/19 29/24
30/7 30/18 30/21 30/21 32/25
33/3 33/7 33/9 33/11 33/16
33/17 36/5 36/8 37/21 42/11
42/12 42/23 48/18 50/18
50/20 58/5 59/25 60/18 66/5
66/12 70/9 71/17 71/22 73/6
74/15
**recorders [1]**   61/9
**recover [1]**   67/10
**red [2]**   5/3 5/3
**redaction [1]**   74/16
**reference [1]**   16/13
**references [1]**   7/7
**referred [1]**   41/8
**referring [1]**   62/8
**reflect [8]**   3/25 10/1 12/11
16/7 16/19 36/5 57/3 63/19
**reflected [1]**   16/10
**reflecting [2]**   57/12 63/21
**reflects [2]**   29/19 36/7
**regard [1]**   22/15
**regarding [2]**   35/16 39/6
**regardless [2]**   7/23 53/22
**regulation [29]**   7/23 12/5
12/8 12/14 12/25 13/1 13/17
13/19 14/9 14/19 14/20 16/6
16/12 24/5 24/9 24/18 28/6
28/22 41/5 43/13 44/3 49/19
56/20 56/22 57/9 57/9 57/17
70/18 70/19
**regulations [15]**   10/20 12/21
13/13 13/21 13/25 14/8 14/13
15/22 16/15 24/16 40/21
56/23 57/5 66/1 69/25
**regulatory [4]**   7/4 12/12
40/18 57/19
**rehabilitation [2]**   8/16 62/15
**Rehabilitative [1]**   8/18
**rejoinder [2]**   25/9 25/10
**related [3]**   11/2 14/24 69/11
**relating [1]**   68/21
**relationship [2]**   11/20 22/2
**relative [2]**   18/19 18/20
**releases [1]**   34/25
**relevance [1]**   26/23
**relevant [3]**   34/5 55/11 71/21
**relied [1]**   37/16
**relief [6]**   26/16 32/12 33/2
68/9 71/1 72/12
**rely [1]**   29/14
**remarks [1]**   56/12
**remedy [9]**   27/16 27/25 44/19
44/20 44/20 45/14 45/19
45/23 64/20
**reminds [1]**   24/20
**remove [1]**   36/25
**renders [1]**   70/11
**repeat [3]**   10/17 13/3 24/1
**repeated [2]**   7/7 57/23
**reply [3]**   24/2 44/22 62/5
**Reported [1]**   1/24
**Reporter [2]**   1/25 74/19
**represented [1]**   60/14
**request [3]**   34/22 53/5 59/14
**requested [4]**   36/4 42/6 42/19
45/3
**requesting [1]**   39/25

**request... [2]**   42/19 45/20
**require [2]**   33/1 36/24
**required [3]**   24/6 60/8 65/5
**requirement [2]**   12/6 57/1
**requirements [2]**   6/6 22/11
**requires [6]**   7/4 22/7 23/12
34/18 48/3 69/25
**residual [1]**   5/5
**resistant [1]**   27/4
**resolution [5]**   30/20 38/12
54/7 54/13 54/17
**resolve [2]**   24/3 59/7
**resolved [1]**   71/25
**resources [2]**   36/24 55/8
**respect [9]**   3/20 4/22 14/15
20/25 23/7 32/13 34/6 65/7
66/13
**respond [2]**   34/9 46/4
**response [2]**   53/8 68/16
**responsibilities [1]**   18/20
**responsibility [7]**   22/9 23/4
44/13 50/25 56/13 68/20
69/21
**responsible [1]**   64/10
**restrictions [1]**   21/15
**restudy [1]**   26/20
**result [2]**   57/12 72/10
**results [6]**   9/25 12/10 16/7
16/9 57/2 57/2
**resume [1]**   52/3
**resumes [1]**   2/2
**reusing [1]**   65/1
**reviews [1]**   43/1
**rhetorical [1]**   34/25
**right [25]**   2/2 3/5 6/14
12/3 18/23 19/5 20/18 20/20
21/8 26/12 27/24 29/6 30/4
32/7 52/14 53/2 53/2 54/9
54/10 54/20 55/5 59/1 62/24
62/25 63/1
**rights [15]**   1/23 3/3 6/7
18/11 31/12 31/15 35/10 48/5
48/6 53/6 53/12 56/15 56/16
61/24 68/23
**rigorous [1]**   51/7
**ripe [1]**   27/17
**rises [1]**   55/23
**risk [2]**   72/8 72/8
**road [1]**   65/21
**ROBERT [2]**   1/20 2/23
**Roget's [2]**   20/23 43/25
**Rooker [1]**   18/16
**Rooker-Feldman [1]**   18/16
**round [1]**   74/16
**RPR [2]**   1/25 74/19
**rule [5]**   6/12 18/25 32/8
33/18 68/3
**ruled [3]**   31/24 32/2 62/24
**rules [2]**   45/16 65/12
**ruling [7]**   6/14 31/18 31/18
31/20 34/6 69/1 74/9

# S

**saccading [1]**   17/12
**sadly [1]**   65/17
**safely [1]**   49/24
**said [31]**   7/14 10/21 10/24
13/17 13/25 14/4 14/15 17/7
18/3 24/23 27/23 28/3 30/14
31/7 36/15 40/3 40/6 40/11
40/15 52/2 58/11 60/1 62/6

62/7 62/9 64/9 64/18 65/11 67/14
69/5 72/24 73/15
**same [16]**   5/8 5/8 5/19 7/11
8/23 9/5 11/5 12/8 18/18
37/3 37/6 38/22 40/6 61/23
63/9 65/8
**Sandoval [2]**   12/15 16/14
**satisfy [1]**   74/6
**save [2]**   5/20 5/21
**saves [1]**   61/12
**saving [1]**   5/17
**saw [2]**   42/25 50/20
**say [50]**   6/20 7/22 9/21 11/8
11/10 14/9 15/6 16/9 18/24
19/12 19/12 19/13 20/10
23/10 24/2 24/4 24/10 24/23
25/24 27/9 27/12 30/3 32/6
37/25 38/17 39/23 40/19
40/22 40/25 44/24 45/5 45/8
45/12 45/21 49/13 49/24 50/1
53/9 57/17 61/19 64/3 64/8
64/14 66/6 67/4 67/22 72/6
72/13 73/9 73/25
**saying [8]**   21/9 21/17 27/11
41/15 53/18 60/8 62/1 72/2
**saying either [1]**   21/17
**says [15]**   14/23 15/12 15/14
28/6 28/22 41/2 41/4 41/5
49/3 49/19 52/22 55/12 58/25
65/18 70/20
**scale [1]**   36/13
**scenario [1]**   23/24
**scenarios [1]**   36/17
**scene [1]**   38/14
**scheduling [1]**   22/8
**school [3]**   47/21 67/17 67/17
**schools [2]**   9/16 46/8
**Schroeder [2]**   9/8 9/14
**scope [3]**   16/4 34/16 44/14
**scores [1]**   51/1
**SCOTT [3]**   1/19 2/12 2/18
**screen [14]**   3/25 5/19 8/4
8/10 9/4 9/15 17/7 17/20
17/22 24/17 26/6 46/8 58/1
67/21
**screen-access [13]**   3/25 8/4
8/10 9/4 9/15 17/7 17/20
17/22 24/17 26/6 46/8 58/1
67/21
**scribe [1]**   41/19
**seated [1]**   2/7
**seating [1]**   22/9
**second [8]**   10/13 14/13 15/20
24/9 25/22 31/13 32/11 37/2
**secondary [2]**   15/1 15/1
**secondly [2]**   68/8 70/7
**Section [9]**   15/11 35/16 62/9
62/14 63/6 63/7 69/10 69/18
69/25
**Section 121127 [1]**   63/7
**Section 36.309 [1]**   69/25
**Sections [1]**   18/10
**secure [3]**   35/23 46/12 46/13
57/23 58/25 74/5
**securing [1]**   6/6
**security [26]**   21/13 27/4
28/16 32/24 33/14 36/14
36/16 36/25 37/4 37/19 58/4
58/6 58/13 58/15 58/16 58/23
58/24 59/6 60/20 61/7 61/7
61/10 64/24 67/9 72/9 72/19

**see [15]** 3/16 5/7 5/19 5/20 6/7 16/14 19/6 19/7 25/16 26/4 56/15 56/19 63/8 66/18 72/21
**seek [4]** 6/9 9/22 9/23 9/24
**seeking [4]** 10/2 17/14 34/21 68/6
**seem [4]** 25/15 37/3 56/18 64/13
**seems [6]** 3/6 18/18 69/4 69/18 71/11 71/25
**seen [4]** 4/23 5/15 5/25 10/7
**segue [1]** 18/7
**select [3]** 5/23 21/6 63/15
**selected [4]** 43/16 43/18 43/19 70/2
**selecting [1]** 19/16
**selection [2]** 22/9 70/5
**self [1]** 31/6
**self-inflicted [1]** 31/6
**semblance [1]** 36/21
**send [1]** 21/20
**sense [9]** 11/22 16/10 21/1 46/15 49/1 59/6 66/3 73/1 73/5
**sensory [3]** 16/10 63/18 63/21
**sent [1]** 60/7
**sentence [1]** 46/10
**sequitur [1]** 24/25
**serious [2]** 16/14 64/17
**served [1]** 54/1
**services [5]** 8/18 13/14 15/17 24/5 41/6
**session [1]** 2/2
**set [5]** 4/2 4/4 4/15 45/16 57/3
**sets [1]** 41/12
**setting [1]** 4/13
**settlement [9]** 26/1 26/5 26/7 38/6 38/11 38/15 38/19 39/5 47/21
**settlements [4]** 25/24 26/13 27/12 30/20
**several [2]** 25/25 39/20
**severalfold [1]** 28/2
**shall [5]** 15/2 15/15 21/4 62/11 69/12
**she [4]** 8/11 11/8 11/10 61/20
**shift [1]** 46/5
**ship [2]** 60/4 60/5
**short [2]** 16/14 27/13
**shorthand [2]** 47/16 47/23
**should [27]** 3/9 7/24 18/8 30/8 31/9 31/11 31/16 33/5 33/6 35/23 38/22 39/4 39/16 48/19 51/14 53/4 54/22 55/20 56/3 57/17 61/2 61/23 62/13 70/14 71/8 71/20 73/9
**should be [1]** 30/8
**shouldn't [3]** 16/18 16/19 33/11
**show [5]** 20/21 24/17 29/24 57/11 73/13
**showing [4]** 51/9 51/10 52/7 55/24
**shown [2]** 28/25 29/1
**shows [2]** 8/1 57/5
**side [2]** 31/25 55/19

**SIDHU [3]** 1/18 2/11 17/23
**sighted [2]** 10/6 42/7
**signal [1]** 4/5
**significant [2]** 25/2 59/14
**similar [4]** 5/9 39/20 40/1 56/23
**Similarly [1]** 8/16
**simply [7]** 6/21 9/19 47/23 53/16 59/5 60/23 64/20
**since [3]** 14/2 14/4 14/6
**single [2]** 25/20 34/13
**sit [1]** 5/1
**situation [9]** 11/12 11/13 13/20 37/13 37/14 39/21 40/25 41/14 51/25
**size [2]** 4/24 5/2
**skills [4]** 10/1 63/18 63/19 63/21
**skipping [1]** 11/3
**slowing [1]** 9/4
**smaller [2]** 46/2 46/2
**Smith [1]** 8/16
**so [61]** 2/16 3/8 3/17 4/4 4/8 4/15 4/20 5/4 5/9 5/13 5/25 7/1 7/7 9/25 10/8 11/23 12/3 12/9 12/12 12/24 13/7 13/8 13/24 15/19 16/3 16/11 16/12 17/16 21/15 22/4 25/5 25/7 25/16 26/21 27/23 28/14 28/17 32/5 32/14 33/6 35/13 37/16 38/13 40/11 43/16 45/19 47/17 53/21 56/19 57/4 57/16 60/1 60/16 60/22 61/25 64/25 65/9 70/17 72/11 74/8 74/9
**social [2]** 26/3 57/16
**software [22]** 3/25 4/9 4/21 5/9 8/4 8/11 9/4 9/15 11/17 16/18 17/7 17/16 17/20 17/22 18/3 18/5 24/17 26/6 46/8 58/2 60/13 67/21
**solve [1]** 11/18
**some [14]** 11/17 13/13 24/9 26/8 27/4 29/22 32/25 34/7 47/10 47/16 56/16 59/13 59/25 69/16
**somebody [6]** 49/4 51/25 61/3 61/4 61/6 61/12
**somehow [2]** 12/15 37/17
**someone [7]** 5/5 8/25 9/9 32/21 34/20 52/22 63/1
**someone's [1]** 40/10
**something [8]** 4/4 4/8 4/19 16/19 16/21 18/24 34/4 71/9
**sometimes [1]** 66/19
**sorry [7]** 8/25 13/3 13/7 14/22 20/17 31/7 59/22
**sort [2]** 13/15 54/6
**sought [1]** 33/2
**sound [6]** 12/23 16/16 57/8 67/24 72/3 73/11
**sounds [1]** 72/2
**speak [1]** 4/3
**speakers [1]** 4/3
**speaking [2]** 63/18 63/21
**speaks [1]** 43/14
**specialist [1]** 8/17
**specific [3]** 7/4 45/16 63/4
**specifically [1]** 45/16
**speculation [1]** 65/10

**speed [2]** 4/2 17/15
**speeding [1]** 9/3
**speedy [1]** 14/10
**spirit [1]** 39/1
**spoke [1]** 47/22
**spot [2]** 50/6 50/8
**staff [3]** 36/24 37/6 37/23
**stage [1]** 69/2
**stake [2]** 54/21 55/1
**stand [1]** 61/20
**standard [18]** 10/13 10/13 10/16 10/19 10/20 12/13 29/22 29/23 47/11 47/11 47/14 51/5 51/7 53/4 63/6 63/8 63/24 64/1
**standardized [3]** 35/12 48/5 48/25
**standards [3]** 13/25 22/25 46/6
**standpoint [1]** 61/7
**start [6]** 33/22 34/7 44/2 55/2 56/9 59/18
**state [34]** 6/14 6/24 15/10 20/3 22/3 23/8 35/2 36/18 37/3 41/17 41/20 43/20 43/21 44/10 44/13 44/16 44/21 44/21 44/23 45/5 45/12 45/15 45/24 46/11 48/13 54/15 54/24 60/8 60/9 60/10 64/20 65/12 65/12 69/9
**stated [1]** 74/10
**statement [4]** 19/14 38/16 58/5 58/14
**statements [2]** 17/19 39/6
**STATES [7]** 1/1 1/14 3/3 13/7 13/12 35/8 48/21
**statute [45]** 6/20 6/22 10/19 12/5 12/7 12/19 12/22 13/12 13/19 13/23 14/2 14/5 14/6 14/12 16/1 16/1 16/4 16/4 18/12 20/7 21/2 26/12 27/11 40/20 41/2 41/4 41/8 43/4 43/9 44/2 48/8 48/10 49/21 50/4 56/23 62/8 62/18 63/4 66/1 66/4 69/7 70/8 70/15 70/20 70/21
**statutes [4]** 62/6 62/12 69/8 70/14
**statutory [8]** 13/4 14/18 14/20 14/21 14/23 28/20 40/18 43/5
**stay [3]** 3/19 31/25 64/15
**stayed [1]** 18/14
**step [4]** 5/21 5/24 22/7 22/7
**steps [2]** 21/18 31/7
**stigma [1]** 52/4
**still [5]** 32/18 32/19 36/16 42/16 52/5
**Stimson [1]** 8/22
**Stimson's [1]** 8/23
**stop [1]** 72/17
**stopping [1]** 9/11
**store [1]** 6/25
**stores [1]** 7/6
**story [1]** 21/18
**straightforward [1]** 47/12
**Street [1]** 1/14
**stretching [1]** 50/2
**strong [1]** 33/25
**student [1]** 51/20

**S**

subchapter [1]   15/15
subject [9]   15/14 18/8 31/9
  31/11 32/10 33/24 68/14
  68/18 68/18
subjected [6]   52/14 53/10
  53/20 53/21 71/4 71/9
subjects [1]   45/8
submission [1]   68/1
submit [6]   6/19 8/2 11/11
  16/3 33/2 37/11
submitted [1]   58/17
submitting [1]   28/5
substance [1]   60/23
substantial [1]   29/25
succeed [7]   12/13 51/10 53/19
  53/25 68/7 68/13 69/2
succeeded [2]   8/5 67/17
success [4]   53/13 55/23 64/18
  71/3
such [13]   15/2 15/4 15/16
  21/4 56/5 61/8 61/9 63/16
  63/18 63/19 63/20 63/22
  69/12
suddenly [2]   38/14 59/15
sue [4]   19/19 19/20 19/22
  53/1
suffer [1]   68/8
suffered [1]   70/25
suffice [1]   24/14
suffices [1]   10/11
sufficient [1]   35/22
sufficiently [5]   58/12 58/15
  58/25 60/19 67/8
suggest [16]   9/19 16/12 16/13
  20/25 22/14 23/11 23/16
  24/25 32/7 33/4 38/18 39/15
  39/17 52/7 58/15 71/22
suggested [5]   43/10 43/24
  44/20 50/3 51/19
suggesting [1]   49/7
suggestion [4]   46/7 46/20
  47/10 64/19
suggests [2]   42/5 42/14
suit [1]   13/13
suitable [3]   10/11 30/19
  30/22
suite [1]   39/11
summary [5]   6/11 33/5 33/8
  33/12 39/21
supervisor's [1]   22/5
supplemented [1]   5/11
support [4]   43/25 44/3 60/23
  69/23
supported [1]   41/9
Suppose [1]   25/6
Supreme [2]   12/17 51/7
sure [11]   25/12 31/23 37/8
  43/16 45/12 50/20 52/16
  64/24 64/25 67/3 70/1
surely [2]   25/2 39/13
surgery [1]   2/16
surprising [1]   25/15
surveyors [1]   22/22
sweep [1]   41/17
symbiotic [1]   11/19
symmetrical [1]   57/15
synonym [1]   20/24
synonyms [1]   20/23
system [2]   60/19 68/21

**T**

tacit [1]   25/13
take [27]   5/21 26/4 30/4
  31/14 31/24 32/9 33/14 34/21
  37/8 41/15 41/23 42/5 42/7
  45/2 52/11 55/12 57/25 58/1
  59/10 62/19 66/21 66/23
  66/24 67/12 67/18 72/21
  73/24
taking [14]   5/10 9/12 9/12
  27/2 29/16 31/5 31/10 35/20
  42/15 44/23 54/14 64/21 65/6
  71/14
Talbot [1]   10/21
talk [8]   11/15 11/22 12/5
  16/5 16/5 16/6 33/10 63/4
talked [2]   25/22 65/22
talking [5]   19/11 23/21 62/12
  62/14 63/9
talks [2]   47/18 70/19
tape [1]   61/9
technical [1]   70/13
technological [1]   26/4
technologies [4]   35/18 35/19
  35/21 38/9
technology [4]   38/11 38/18
  54/15 65/6
tell [4]   2/19 3/8 19/5 56/17
Ten [1]   37/25
Tennessee [1]   15/21
tenuous [1]   66/19
term [7]   11/13 11/22 41/10
  65/25 66/1 70/17 73/16
terms [14]   12/21 14/2 14/8
  16/4 16/6 26/22 38/20 41/13
  43/14 47/22 48/24 55/8 57/2
  67/7
test [31]   7/2 7/19 9/11 9/25
  23/5 27/2 27/7 27/8 28/8
  28/12 28/13 37/19 45/8 46/3
  57/8 57/12 63/16 63/18 63/20
  65/6 69/19 69/22 70/5 71/7
  71/15 71/20 72/2 72/9 72/19
  72/20 73/7
tested [3]   9/25 45/9 58/11
testimony [5]   8/14 9/7 9/8
  60/21 66/11
testing [19]   7/8 7/11 24/15
  32/16 32/21 34/13 34/15
  34/18 35/6 36/2 38/8 40/7
  41/19 42/24 47/18 48/5 50/16
  63/14 65/5
tests [8]   22/25 35/12 35/23
  36/6 48/25 63/15 73/16 73/19
text [3]   5/4 5/9 9/3
text-to-speech [1]   5/9
than [20]   4/3 12/11 16/21
  17/5 17/14 22/20 23/15 27/25
  31/7 32/22 34/24 47/4 49/23
  51/7 55/6 56/21 63/12 63/21
  63/25 74/6
thank [10]   3/4 3/10 6/2
  33/19 33/21 56/6 56/7 68/1
  68/2 74/10
that [525]
that's [66]   4/2 5/17 6/7 6/9
  8/6 9/10 10/2 11/25 12/7
  13/10 16/11 18/6 18/7 19/2
  20/12 20/12 21/19 21/25
  22/16 22/16 23/6 23/7 23/8

**T**

25/7 26/9 28/16 29/21 30/1
  30/19 30/20 31/6 32/10 33/11
  36/3 40/19 42/18 42/20 44/6
  44/17 45/4 46/13 46/21 46/23
  47/14 47/14 47/22 51/24 54/3
  54/11 57/19 57/24 58/3 58/5
  59/3 59/19 61/9 61/13 63/25
  65/2 65/19 65/25 66/19 66/24
  67/2 74/6 74/9
their [43]   6/6 8/3 8/6 8/6
  9/20 10/1 10/1 10/1 10/2
  10/6 10/7 12/11 12/12 16/7
  19/9 20/4 24/1 24/2 26/25
  32/21 33/14 34/24 34/24
  35/12 38/8 40/11 42/6 43/20
  43/25 45/3 45/16 50/3 53/1
  54/18 57/12 57/13 58/1 61/25
  62/5 68/10 70/13 71/14 72/6
them [17]   19/6 19/7 23/1
  26/13 32/2 44/23 50/9 50/25
  51/1 57/12 60/21 62/21 64/4
  68/14 68/17 72/2 73/24
themselves [3]   25/14 31/9
  31/11
then [38]   3/16 5/22 5/23
  9/21 10/11 12/21 12/25 13/24
  14/16 15/19 17/8 17/16 18/25
  19/1 20/7 21/16 25/2 25/3
  27/20 29/10 29/14 32/11 33/1
  34/7 34/8 38/9 40/24 41/12
  42/8 46/5 49/22 51/22 52/1
  53/1 57/8 65/15 66/18 67/19
theoretical [2]   22/14 58/21
theoretically [1]   15/19
there [90]
there's [32]   7/4 19/13 22/19
  26/22 27/23 29/5 30/12 36/9
  45/6 45/19 47/3 48/4 50/18
  52/20 54/13 56/10 60/5 60/22
  61/11 62/11 64/20 66/15
  66/20 67/2 69/8 71/22 72/17
  72/20 72/23 73/3 73/15 73/17
therefore [5]   14/11 24/5
  53/21 57/23 70/18
these [25]   10/5 12/11 17/16
  17/21 30/18 30/21 31/4 39/9
  39/11 40/2 41/11 50/18 55/18
  57/25 65/4 65/23 66/7 66/8
  66/10 72/4 72/21 73/16 73/19
  73/23 73/25
they [113]
they'd [1]   22/1
they'll [1]   19/21
they're [20]   17/6 20/6 20/7
  20/10 20/5 25/13 27/2 27/4
  28/9 29/4 29/16 39/24 39/25
  41/25 51/16 60/13 66/21
  72/14 73/24 74/2
they've [6]   8/5 25/22 51/19
  60/12 60/13 73/11
thing [16]   5/15 5/19 8/19
  8/23 9/5 19/6 27/13 30/14
  50/1 50/17 61/5 61/8 61/9
  62/16 65/8 66/5
things [14]   3/17 14/12 22/7
  29/15 31/15 38/17 41/19 42/1
  50/2 60/17 65/1 65/22 73/25
  74/2
think [79]
thinking [2]   7/18 9/3
third [3]   19/20 37/21 68/9

**T**

**this [120]**
**those [21]**  13/24 14/8 16/5
  18/14 32/23 35/4 35/19 35/21
  36/21 38/13 40/16 41/5 41/6
  41/19 42/5 44/11 45/12 52/5
  52/19 55/19 55/25
**though [4]**  6/17 27/11 55/22
  71/6
**thought [6]**  28/4 28/17 34/1
  50/10 52/16 53/18
**three [9]**  8/8 8/9 13/24
  34/12 36/21 66/7 66/8 72/21
  73/23
**through [5]**  4/1 15/12 36/17
  51/13 55/5
**thrown [1]**  13/8
**thumb [1]**  5/17
**Thursday [1]**  1/12
**tied [1]**  11/24
**ties [1]**  55/16
**till [1]**  31/17
**Tim [1]**  2/14
**time [27]**  12/9 16/20 16/20
  17/6 17/8 17/15 17/21 18/3
  29/5 32/22 38/19 41/19 41/25
  42/2 42/9 42/19 42/20 42/24
  55/19 60/9 64/4 65/2 65/5
  67/5 67/10 67/20 68/3
**times [1]**  5/7
**TIMOTHY [1]**  1/4
**tip [1]**  68/10
**tips [1]**  67/11
**Title [22]**  6/23 7/7 7/10
  7/17 12/1 12/2 12/6 14/17
  14/17 14/17 15/9 15/11 15/21
  15/23 22/13 48/1 56/13 62/9
  62/14 62/25 63/6 66/1
**Title I [3]**  12/1 12/6 63/8
**Title II [10]**  6/23 7/17 15/9
  15/21 15/23 22/13 48/1 62/9
  62/14 62/25
**Title III [5]**  7/7 7/10 12/2
  56/13 66/1
**to see [1]**  25/16
**today [5]**  2/11 2/16 7/20
  9/14 33/17
**toggle [1]**  5/12
**told [2]**  49/14 55/1
**tomorrow [2]**  33/3 33/7
**tonight [1]**  25/12
**too [7]**  7/1 7/21 8/21 12/16
  41/25 61/5 62/1
**took [1]**  52/16
**tools [1]**  11/14
**trade [1]**  15/1
**train [1]**  37/7
**transcript [2]**  74/15 74/17
**transfer [1]**  11/17
**treatment [1]**  9/23
**trial [4]**  31/24 33/3 33/7
  61/16
**tried [1]**  35/17
**trouble [1]**  17/11
**true [6]**  7/11 18/6 22/16
  23/6 38/5 61/23
**trusted [1]**  61/1
**try [1]**  5/20
**trying [3]**  14/19 15/11 60/22
**turn [4]**  10/12 18/9 23/18

**Turning [1]**  6/3
**turns [1]**  70/18
**twice [1]**  25/23
**two [14]**  3/5 11/3 31/1 50/23
  52/9 52/16 57/3 60/17 60/19
  62/4 62/6 62/12 65/24 68/25

**U**

**U.S [4]**  1/22 1/25 13/18
  74/19
**U.S.C [2]**  63/7 69/10
**ultimate [1]**  47/15
**Ultimately [2]**  48/17 55/22
**unbounded [1]**  56/24
**uncertainty [1]**  73/18
**unclear [1]**  13/4
**uncomfortable [1]**  72/6
**uncontested [1]**  66/7
**uncontradicted [2]**  9/7 66/11
**uncontroverted [2]**  8/8 8/9
**under [31]**  6/18 7/17 7/18
  10/13 12/15 18/10 18/12 22/3
  22/13 27/25 41/8 48/1 48/6
  48/10 51/9 53/1 53/5 58/14
  60/21 62/5 62/17 62/25 63/4
  63/24 66/21 67/18 68/5 69/18
  70/10 71/4 71/9
**understand [13]**  10/18 17/10
  17/10 21/21 23/3 25/17 25/25
  26/19 44/22 49/9 59/16 61/14
  68/17
**understanding [1]**  53/15
**underway [1]**  52/1
**undeveloped [1]**  33/11
**undisputed [1]**  48/18
**undoubtedly [1]**  61/20
**undue [2]**  40/10 57/3
**unduly [4]**  28/7 28/9 57/7
  57/15
**unfair [2]**  32/22 64/3
**unfamiliar [1]**  9/13
**UNITED [7]**  1/1 1/14 3/3 13/7
  13/12 35/8 48/21
**University [1]**  51/21
**unless [3]**  13/21 28/7 67/25
**unreasonable [1]**  41/7
**unusual [1]**  56/22
**up [10]**  9/4 31/8 31/18 44/23
  44/23 60/12 60/14 61/20
  72/18 73/23
**upon [2]**  37/16 38/7
**urged [1]**  10/16
**urging [2]**  49/21 49/22
**us [5]**  36/20 36/21 36/24
  38/24 43/1
**use [13]**  7/10 8/4 8/19 11/9
  21/9 21/25 22/9 22/19 22/25
  24/17 35/19 40/4 45/25
**used [6]**  5/16 12/24 35/5
  39/24 47/16 69/10
**useful [1]**  54/23
**user [1]**  4/22
**uses [4]**  3/25 46/2 46/2 51/2
**using [8]**  17/15 17/22 20/25
  38/8 39/25 58/1 60/12 65/6
**utterance [1]**  4/8

**V**

**valid [3]**  12/25 14/13 16/12
**validity [1]**  32/21

**various [5]**  29/15 34/20 36/17
  44/11 71/23
**vehicle [1]**  55/5
**verbalized [1]**  4/8
**verbatim [1]**  62/14
**version [2]**  7/3 60/3
**versus [2]**  2/5 65/10
**vertical [1]**  5/4
**very [42]**  6/2 7/9 8/1 9/21
  12/13 12/18 14/16 15/23
  15/24 16/16 17/1 18/22 19/4
  22/2 22/2 27/24 30/4 30/6
  31/3 33/19 33/21 38/8 46/17
  46/18 46/24 47/12 50/10
  50/25 51/24 53/8 54/8 54/23
  55/3 57/2 57/21 58/4 58/15
  61/16 64/2 69/7 71/4 71/17
**veterinary [1]**  22/23
**via [1]**  50/19
**viable [3]**  52/6 55/18 59/21
**vice [1]**  2/13
**view [6]**  9/22 44/3 48/18
  53/16 58/12 60/16
**viewed [1]**  43/7
**views [1]**  33/25
**villains [1]**  35/1
**violated [2]**  18/23 39/1
**violating [1]**  21/24
**violation [1]**  15/21
**vision [1]**  5/5
**visual [9]**  5/14 35/11 35/24
  38/4 39/16 39/18 47/9 49/15
  49/16
**visually [5]**  5/6 9/6 24/11
  24/19 48/25
**vocalize [1]**  4/11
**vocalized [1]**  8/14
**vocational [1]**  8/16
**voice [1]**  4/5
**voluntary [1]**  72/23

**W**

**wait [4]**  27/9 31/4 31/17
  31/21
**waive [2]**  45/7 64/20
**walked [2]**  36/17 51/13
**want [16]**  3/15 4/25 7/10
  19/20 21/9 26/25 28/4 54/5
  64/23 64/24 64/25 72/1 72/10
  73/6 73/20 74/1
**wanted [6]**  21/23 33/15 40/5
  56/25 62/3 69/9
**wanting [1]**  61/14
**wants [3]**  31/14 31/14 31/15
**warranted [2]**  39/22 67/19
**was [74]**  4/19 4/20 5/18
  10/24 11/10 12/19 12/19
  13/18 14/7 14/7 15/21 16/9
  18/23 20/4 20/4 20/5 22/23
  22/24 24/24 24/24 26/7 26/8
  28/6 34/3 34/3 34/4 34/5
  36/15 36/15 36/22 38/2 38/6
  38/19 40/5 40/14 41/10 42/23
  42/24 43/20 44/17 46/7 46/10
  46/20 48/20 49/9 49/11 50/2
  50/3 50/9 50/10 50/12 51/7
  51/20 52/2 52/4 52/20 53/19
  55/5 56/13 57/21 59/25 60/21
  60/24 61/6 62/9 62/22 64/19
  65/7 65/21 65/23 67/16 67/16

**W**

**was... [2]**  68/17 72/14
**wasn't [7]**  15/22 26/3 26/7
38/18 49/25 61/4 62/23
**watching [1]**  5/19
**way [29]**  7/18 8/5 8/5 21/12
21/13 21/17 26/6 26/9 26/24
27/1 27/2 28/22 31/24 32/3
33/23 35/2 36/20 39/15 54/5
54/9 54/14 55/2 58/10 60/4
65/3 66/4 70/5 71/23 72/1
**ways [2]**  31/21 74/5
**we [172]**
**we'd [1]**  17/16
**we're [25]**  5/20 5/22 10/2
12/4 19/14 21/16 21/19 22/17
22/20 23/25 25/20 35/7 41/15
41/15 47/10 53/1 58/10 60/8
60/10 60/22 63/9 64/16 65/19
66/15 74/5
**we've [15]**  7/8 13/8 14/14
22/5 26/4 33/16 43/17 45/5
49/6 49/7 50/19 52/9 52/24
58/17 72/19
**Webster's [1]**  20/22
**Websters [1]**  43/25
**weeds [2]**  34/18 63/5
**weight [1]**  13/21
**well [40]**  3/14 7/18 11/16
17/5 18/1 18/4 19/10 19/22
19/25 20/9 23/6 27/24 28/1
28/24 29/13 30/4 30/6 32/4
34/14 34/19 37/2 38/9 40/1
41/3 42/3 42/9 45/1 49/20
50/11 50/25 53/15 54/4 54/20
56/17 61/6 64/3 64/12 64/15
69/7 71/17
**went [5]**  11/8 11/10 14/9
43/24 51/22
**were [23]**  4/18 14/13 17/15
18/15 27/17 32/23 33/3 34/17
38/9 40/2 40/4 40/8 40/16
42/5 52/17 53/20 62/5 62/8
62/13 62/17 65/23 68/23 71/2
**weren't [3]**  14/12 42/1 62/12
**West [1]**  1/14
**what [101]**
**what's [7]**  17/11 24/13 30/15
55/13 57/18 59/2 66/6
**whatever [7]**  22/20 25/19 34/6
56/25 59/10 63/19 74/3
**whatsoever [1]**  45/23
**wheelchair [1]**  31/8
**when [24]**  5/20 7/10 11/19
12/18 22/23 23/10 31/17
31/20 36/14 37/8 38/5 38/7
47/18 47/20 50/3 52/16 56/22
60/22 61/23 63/16 65/17
67/16 67/16 72/13
**where [19]**  4/15 4/16 5/7
5/22 6/14 7/14 11/13 18/11
20/11 21/11 22/13 35/22
41/14 43/11 51/25 52/4 52/22
59/6 65/19
**whether [36]**  7/23 10/11 10/25
16/19 22/22 26/21 26/25
28/18 28/19 30/10 32/16
32/17 32/19 38/20 40/10
41/21 42/13 42/19 43/3 50/9
50/18 55/24 56/10 58/21

68/6 69/2 69/23 71/6 71/10
71/19 74/1
**which [79]**
**while [5]**  9/1 10/19 17/24
34/12 36/11
**whistling [1]**  72/25
**who [21]**  2/15 5/5 5/18 9/8
22/16 30/3 37/7 42/1 48/25
51/20 53/5 58/6 61/4 61/6
61/12 63/1 63/17 64/7 64/18
69/19 73/25
**who's [7]**  2/18 8/10 8/17
43/10 43/11 61/3 61/4
**whole [5]**  11/25 32/16 48/23
72/10 73/6
**whom [2]**  23/12 30/13
**whose [1]**  4/19
**why [26]**  3/8 3/9 8/10 8/12
8/18 8/21 11/24 12/23 13/4
19/5 19/19 22/17 27/4 27/7
29/3 36/5 42/4 42/8 42/18
51/13 59/3 63/13 64/4 65/3
65/9 65/19
**wife [1]**  61/19
**will [23]**  4/15 9/24 9/25
10/14 18/24 18/25 20/24 27/3
31/19 31/20 31/24 33/22
34/20 34/21 34/23 39/12 45/7
45/8 57/11 58/1 62/10 67/10
69/2
**willing [1]**  70/10
**Wilmer [1]**  8/10
**win [2]**  25/3 27/21
**wind [1]**  72/25
**Winter [5]**  23/25 23/25 51/4
51/8 51/9
**wish [1]**  59/25
**within [13]**  4/1 9/3 20/7
28/20 39/14 43/4 44/14 47/8
68/20 69/6 69/24 70/8 74/16
**without [6]**  9/2 21/23 44/19
45/14 54/5 64/16
**Witwer [6]**  2/13 4/22 5/5 8/3
8/11 65/8
**won't [2]**  31/19 32/5
**word [12]**  4/17 4/18 5/16
11/24 15/5 22/19 35/5 44/1
44/6 48/21 48/23 67/4
**words [6]**  14/4 16/23 35/9
62/9 62/10 63/10
**work [10]**  7/16 11/21 11/21
26/3 29/22 29/23 59/18 66/2
72/19 74/4
**worked [1]**  8/17
**works [1]**  54/6
**world [1]**  67/20
**would [76]**
**would be [1]**  51/15
**wouldn't [7]**  29/14 30/11 33/4
50/8 63/1 64/8 73/20
**wound [1]**  31/6
**Writing [1]**  28/12
**written [1]**  49/15
**wrong [4]**  11/9 12/16 72/23
73/15
**wrote [1]**  71/12
**Wycoff [2]**  1/25 74/19

**X**

**Xerox [1]**  61/8

**Y**

**year [5]**  31/13 56/18 59/11
64/25 64/25
**years [3]**  8/17 37/25 67/22
**yellow [1]**  4/24
**yes [6]**  13/5 15/7 17/5 20/14
49/20 64/12
**yesterday [1]**  24/2
**yet [5]**  26/17 26/18 27/5
27/6 35/22
**you [205]**
**you'd [2]**  31/25 67/1
**you'll [3]**  15/11 15/12 64/18
**you're [23]**  3/11 3/19 3/19
9/11 9/12 12/3 17/3 19/11
20/11 20/25 23/17 26/11
27/21 40/13 41/24 54/10
54/20 56/21 61/18 64/10
66/14 67/3 67/5
**you've [8]**  5/16 11/20 29/3
29/21 29/24 34/9 34/12 41/12
**your [130]**
**yourself [3]**  32/10 52/17
62/25
**yourselves [1]**  2/8

**Z**

**Zoom [1]**  74/3
**ZoomText [5]**  4/22 4/23 38/11
40/5 60/13